UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TODD KELVIN WESSINGER | : | CIVIL ACTION |
| VERSUS | : | NO. 04-637 |
| BURL CAIN, ET AL | : | HON. JAMES J. BRADY |
| | : | APRIL 25, 2012 |

==============================================================

MOTION TO ALTER JUDGMENT AND MOTION TO STAY EXECUTION

==============================================================

A P P E A R A N C E S

FOR THE PETITIONER:

MS. REBECCA L. HUDSMITH, ESQ.
MS. DANALYNN RECER, ESQ.
MR. SOREN E. GISLESON, ESQ.

FOR THE RESPONDENTS:

MR. HILLAR MOORE, ESQ.
MR. DALE R. LEE, ESQ.
MR. JOHN W. SINGQUEFIELD, ESQ.
MS. J. CHRISTINE CHAPMAN

REPORTED BY: SHANNON L. THOMPSON, CCR

---

UNITED STATES COURTHOUSE
777 FLORIDA STREET
BATON ROUGE, LOUISIANA 70801
(225) 389-3567

**04-25-2012 - TODD KELVIN WESSINGER V. BURL CAIN - 04-637**

**REPORTER'S NOTE:** (MS. REBECCA L. HUDSMITH, MS. DANALYNN RECER AND MR. SOREN E. GISLESON, WERE PRESENT IN COURT ON BEHALF OF PETITIONER, TODD KELVIN WESSINGER. MR. HILLAR MOORE, DISTRICT ATTORNEY, MR. JOHN W. SINQUEFIELD, MR. DALE R. LEE AND MS. J. CHRISTINE CHAPMAN, WERE PRESENT IN COURT ON BEHALF OF RESPONDENTS. AT THIS TIME, THIS MATTER WAS BEGUN.)

**THE COURT:** BE SEATED, PLEASE. WHILE WE ARE WAITING FOR THE DEFENDANT TO BE BROUGHT IN, WOULD ALL OF YOU COME FORWARD AND MAKE YOUR APPEARANCES FOR THE RECORD, PLEASE.

**MS. RECER:** DANALYNN RECER FOR TODD WESSINGER, PETITIONER, ALONG WITH REBECCA HUDSMITH, SOREN GISLESON, KRISTIN GIBBENS.

**THE COURT:** ALL RIGHT. GOOD AFTERNOON.

**MR. LEE:** AND, YOUR HONOR, IT'S DALE LEE, CHRISTY CHAPMAN, JOHN SINQUEFIELD AND HILLAR MOORE ON BEHALF OF THE DISTRICT ATTORNEY'S OFFICE.

**THE COURT:** OKAY. MR. MOORE, YOU HAVE BEEN ENROLLED AS THE COUNSEL OF RECORD IN THIS CASE OR HAVE BEEN -- OR ONE OF YOUR ASSISTANTS HAVE SAID THAT YOU ARE IN THIS MATTER, SO YOU CAN SIT UP HERE.

**MR. MOORE:** THANK YOU, YOUR HONOR.

**REPORTER'S NOTE:** (AT THIS TIME, THE PETITIONER, TODD KELVIN WESSINGER, WAS PRESENT IN COURT.)

**THE COURT:** ALL RIGHT. THE COURT IS HERE THIS AFTERNOON ON A MOTION FOR RECONSIDERATION OF MY RULING IN THE MATTER OF STATE OF LOUISIANA VERSUS -- OR NOW IT SAYS WESSINGER VERSUS CAIN ON THE DOCKET OF THIS COURT.

AS I UNDERSTAND YOUR MOTION, IT PRESENTS BASICALLY FIVE ITEMS. THE FIRST IS AN ARGUMENT RELATING TO ARTICLES 928 AND 929 OF THE STATE CODE OF CRIMINAL PROCEDURE. THE SECOND ONE IS THE INEFFECTIVE ASSISTANCE AT TRIAL IN THE PENALTY PHASE, AND THEN THE THIRD IS THE COUNSEL'S INEFFECTIVE ASSISTANCE DURING THE VOIR DIRE. FOURTH RELATES TO *BRADY* CLAIMS, AND THEN THE FIFTH IS *BRADY* CLAIMS RULED PROCEDURALLY BARRED WHICH CONTAINS TWO ISSUES, SO HAVE I MISSED ANYTHING, OR IS THAT BASICALLY WHAT YOU SET OUT?

**MS. RECER:** I BELIEVE THAT'S ACCURATE, YOUR HONOR.

**THE COURT:** ALL RIGHT. THEN I WILL ENTERTAIN THE ARGUMENT FROM THE PETITIONER.

**MS. RECER:** THANK YOU, YOUR HONOR. BEFORE I ADDRESS THE PROCEDURAL ISSUES THAT YOUR HONOR HAS JUST SET OUT, I FIRST WOULD LIKE TO ADDRESS THE QUESTION OF WHY IT MATTERS SO MUCH THAT WE PARSE THESE PROCEDURAL QUESTIONS AND WHY IT MATTERS SO MUCH THAT THESE PROCEDURAL BARS ARE APPLIED APPROPRIATELY IN THIS CASE, AND THAT IS, THAT THE STORY OF -- THE NARRATIVE OF MR. WESSINGER'S LIFE THAT HAS NEVER BEFORE BEEN PRESENTED IN A COURT AND HAS NEVER BEFORE BEEN INVESTIGATED OR DEVELOPED UNTIL THIS COURT PROVIDED

INVESTIGATIVE AND EXPERT RESOURCES -- HAS NOT BEEN HEARD. AND THAT STORY IS VERY DIFFERENT THAN ANYTHING THAT WAS PRESENTED AT TRIAL OR IN STATE POST-CONVICTION.

MR. WESSINGER, FROM HIS EARLIEST DAYS, WAS A CHILD WHO WAS BORN INTO POVERTY. HE WAS BORN INTO A FAMILY WITH A HISTORY OF NEUROLOGICAL AND COGNITIVE DYSFUNCTION. HE EXPERIENCED ABUSE AND NEGLECT. HE EXPERIENCED AN EMOTIONAL ABUSE AS WELL AS PHYSICAL ABUSE. HE HAS SUFFERED SINCE CHILDHOOD FROM SEIZURE DISORDER, AS WELL AS COGNITIVE DYSFUNCTION AND LOW INTELLECTUAL FUNCTIONING THAT WAS NEVER DEVELOPED PRIOR TO THIS COURT AUTHORIZING FUNDING FOR EXPERTS TO DEVELOP THAT EVIDENCE.

THE WESSINGERS, AS I SAID, WAS A FAMILY THAT LIVED IN POVERTY WITH A LONG HISTORY OF MENTAL ILLNESS AND COGNITIVE DYSFUNCTION, AS WELL AS ADDICTION. AND IN TODD'S FAMILY THERE WAS A HISTORY AS WELL OF NEUROLOGICAL DYSFUNCTION. HIS SISTER HAD CEREBRAL PALSY AND THERE'S OTHER MEDICAL RECORDS REGARDING NEUROLOGICAL DEFICITS THAT WERE NEVER DEVELOPED, THAT OUR EXPERTS TELL US IS VERY SIGNIFICANT TO AND UNDERSTANDING OF MR. WESSINGER'S COGNITIVE DEVELOPMENT.

DESPITE THESE HURDLES, MR. WESSINGER DEVELOPED POSITIVE RELATIONSHIPS WITH HIS FAMILY, WITH FRIENDS. HE BECAME A PARENT AND -- BUT HE'S CONTINUED TO STRUGGLE IN SCHOOL. THE EXPERTS FROM THE TRIAL, FOR INSTANCE, WERE UNDER THE IMPRESSION THAT HE HAD GRADUATED FROM HIGH SCHOOL, WHICH

IS INCORRECT. THE EXPERTS FROM TRIAL WERE UNDER THE IMPRESSION BECAUSE THEY HAD NO RECORDS AND THEY HAD DONE NO INVESTIGATION -- THAT HE HAD DONE WELL IN SCHOOL. HIS EDUCATIONAL RECORDS HAVE SINCE BEEN PROVIDED TO THIS COURT, DEMONSTRATE, IN FACT, THAT HE DID NOT, AND THAT HE HAS SUFFERED FROM SIGNIFICANT COGNITIVE AND DEVELOPMENTAL DELAYS.

THIS EVIDENCE WAS NEVER PRESENTED TO -- AT THE TRIAL LEVEL OR AT STATE HABEAS, AND THAT'S WHY IT MATTERS THAT WE ADDRESS THESE PROCEDURAL QUESTIONS. AND I THINK IT'S IMPORTANT TO KEEP THAT IN CONTEXT, AS WELL AT CULPABILITY PHASE, AS SET FORTH IN OUR 59(E) IN RESPONSE TO THE STATE'S OPPOSITION TO OUR 59(E), THE EVIDENCE THAT WAS WITHHELD AND THAT WAS PRESENTED IN OUR *BRADY* CLAIM IS NOT MERELY EVIDENCE THAT CHANGES THE PRESENTATION SLIGHTLY OR THAT IS QUIBBLING OVER DETAILS. IT'S EVIDENCE THAT CHANGES THE WAY ONE UNDERSTANDS THE CASE AS A WHOLE, PARTICULARLY BECAUSE IT'S A CASE --

**THE COURT:** WELL, WHY AM I HEARING ABOUT THIS FOR THE FIRST TIME TODAY? I MEAN, IT -- WHERE HAS THIS BEEN IN THE BRIEFS ALL ALONG? I MEAN --

**MS. RECER:** THE NARRATIVE HISTORY THAT I JUST RELATED HAS BEEN IN THE PROCEEDINGS -- IN THE FEDERAL PETITION SINCE THE SECOND AMENDED PETITION THAT WAS FILED WITH THIS COURT, AND IT WAS IN -- IT WAS SET OUT EXTENSIVELY. THERE WAS A 25-PAGE LIFE HISTORY IN OUR HABEAS PETITION --

**THE COURT:** I SAW THAT.

**MS. RECER:** -- THAT SETS OUT ALL OF THE EVIDENCE THAT WE INTEND TO PRESENT AT AN EVIDENTIARY HEARING. AT THE TIME THAT PETITION WAS FILED, THERE WAS AN EXPECTATION OF AN EVIDENTIARY HEARING THAT HAD BEEN DISCUSSED SEVERAL TIMES IN DISCOVERY HEARINGS AND FUNDING HEARINGS AND, IN FACT, THERE WAS AN EVIDENTIARY HEARING ALREADY SET PENDING ON THE SCHEDULE. AND THERE WAS AN EXPECTATION THAT THAT WOULD BE FURTHER DEVELOPED. .

WHAT WE WERE REQUIRED TO DO IN THAT PETITION AND WHAT WE DID, IN FACT, DO IS ALLEGE THESE FACTS AND WE ALLEGED THE NEUROLOGICAL AND COGNITIVE DEFICITS QUITE CLEARLY AND EXTENSIVELY. WE ALLEGED THE FAMILY HISTORY, WE ALLEGED MR. WESSINGER'S DELAYED DEVELOPMENT AND ABUSE, AND WE ALLEGED THE DIFFERENCES BETWEEN THE WAY IN WHICH WE HAD PRESENTED IT AND THE WAY IN WHICH IT WAS PRESENTED AT TRIAL AND IN STATE HABEAS. IN FACT, WE PROVIDED SO MUCH NEW INFORMATION IN THE FEDERAL PETITION THAT AT THE TIME THE STATE ANSWERED, THE STATE REPLIED OR THE RESPONDENT REPLIED THAT IT WAS AN UNEXHAUSTED CLAIM. AND, IN FACT, AS RECENTLY AS THEIR RESPONSE TO OUR STAY MOTION, THEY HAVE COMPLAINED THAT WE'RE PROVIDING ALL OF THIS NEW INFORMATION AND THEY'RE CORRECT, THIS IS NEW INFORMATION, AND THAT THIS CLAIM IS UNEXHAUSTED. THE REASON IT'S UNEXHAUSTED IS THAT MR. GISLESON WAS FORCED TO BE INEFFECTIVE AT STATE HABEAS BECAUSE HE WAS DENIED THE TIME

AND FUNDS, AND HE FOUGHT FOR TIME AND FUNDS AND MADE AN EXTENSIVE RECORD. IN FACT, THE RECORD OF THE DEFICITS IN THE STATE HABEAS PROCEEDINGS WAS SUCH THAT IT HELPED TO PERSUADE THIS COURT TO GRANT EQUITABLE TOLLING WHEN THIS CASE FIRST BEGAN. THE STATE PROCEEDINGS NOT ONLY WERE -- WAS MR. WESSINGER'S FIRST LAWYER INCOMPETENT AND MENTALLY ILL TO THE POINT WHERE HE STOPPED PRACTICING LAW AND, OF COURSE, OF HIS REPRESENTATION OF MR. WESSINGER, BUT HE DID NO WORK AND MR. GISLESON CAME INTO A CASE THAT WHERE LITERALLY NOTHING HAD BEEN DONE. HE SOUGHT TIME. HE SOUGHT MONEY. HE SOUGHT INVESTIGATIVE RESOURCES. HE SOUGHT EXPERT ASSISTANCE, AND IT WAS DENIED.

**THE COURT:** THIS WAS JUST DENIED SUMMARILY?

**MS. RECER:** IT WAS ALL DENIED SUMMARILY, YES, YOUR HONOR. SO IT HAD NO DEVELOPMENT WHICH IS WHY WHEN WE GOT THE CASE AND CAME TO YOUR HONOR REQUESTING FUNDS AND TIME AND EXPERTS TO DEVELOP IT, IT WAS GRANTED BECAUSE IT HADN'T BEEN DONE, AND IT WOULD NOT BE REPETITIVE AND IT WAS NECESSARY MATERIAL TO THE CASE. SO WE TOOK THOSE FUNDS AND HIRED THOSE EXPERTS AND DID EXTENSIVE INVESTIGATIVE WORK AND ARE PREPARED TO PUT ON AN EVIDENTIARY HEARING WHERE WE WOULD HAVE APPROXIMATELY TWO DOZEN LAY WITNESSES AS WELL AS EXPERTS, MENTAL-HEALTH EXPERTS, DEVELOPMENT EXPERTS, AS WELL AS EXPERTS ON A PREJUDICE PIECE REGARDING WHAT IS REQUIRED OF COUNSEL AND WHAT WOULD MAKE A DIFFERENCE TO A CAPITAL JURY.

**THE COURT:** WHAT DID THE TRIAL COUNSEL -- DID HE ASK FOR FUNDS TO DEVELOP THIS IN THE PENALTY PHASE?

**MS. RECER:** THE TRIAL COUNSEL ASKED FOR SOME FUNDS BUT AS MR. HECKER, WHO WAS RESPONSIBLE FOR THE PENALTY PHASE HAS RELATED TO US IN SEVERAL AFFIDAVITS SUBMITTED WITH THIS COURT, HE WAS REALLY INCAPACITATED AT THE TIME. IN FACT, THE COMMISSIONER FOR THE STATE JUDGE IN HER RECOMMENDATIONS TO JUDGE ANDERSON, INDICATED THAT MR. HECKER -- SHE PERSONALLY KNEW THAT MR. HECKER HAD BEEN DEBILITATED DURING THIS TIME DUE TO EVENTS IN HIS FAMILY, AND THAT SHE THOUGHT THAT PERHAPS HE SHOULD HAVE A HEARING BECAUSE MR. HECKER MIGHT DENY THAT HE HAD BEEN EFFECTIVE. HE MIGHT DENY THAT THESE WERE STRATEGIC CHOICES AND INDEED WHEN WE SPOKE WHIM HIM, THAT'S EXACTLY WHAT HE DID, AND HE PROVIDED US WITH AFFIDAVITS THAT WE'VE SUBMITTED THAT THE CHOICES THAT --

**THE COURT:** DID JUDGE ANDERSON EVER ACT ON HER RECOMMENDATION?

**MS. RECER:** NO. JUDGE ANDERSON DISMISSED ALL OF THE CLAIMS UNDER 928 FOR FAILURE TO STATE A CLAIM THAT, IF PROVEN, WOULD REQUIRE RELIEF. AND THE WAY THAT WE KNOW IT WAS 928 IS IN SEVERAL WAYS. FIRST OF ALL, THAT THE STATE HAS CONCEDED THAT IT IS. IN FACT, THE RESPONDENT'S PLEADINGS SAY, I THINK FOUR OR FIVE TIMES, THAT THIS WAS A 928 DISMISSAL. APART FROM THAT, WE KNOW BECAUSE THE STATUTE REQUIRES THAT THE JUDGE FIRST CONSIDER WHETHER OR NOT THE CLAIMS -- STATE A CLAIM THAT

IF TRUE WOULD REQUIRE RELIEF, AND IF THAT'S THE CASE, THEN IDENTIFY FOR THE RESPONDENT, OR THE STATE IN THAT INSTANCE, WHICH CLAIMS IT HAS DETERMINED ARE STATED CLAIMS THAT WOULD REQUIRE RELIEF AND INVITE THE STATE AND GIVE THEM THIRTY DAYS TO FILE PROCEDURAL DEFENSES AND THEY SHALL ORDER -- IT'S NOT OPTIONAL -- THEY SHALL ORDER THEM TO HAVE PROCEDURAL DEFENSES AND ANY MERITS DEFENSES THAT THEY WISH TO SUBMIT. THEN THE STATUTE REQUIRES THE PROCEDURAL RULING BE MADE FIRST, AND ONCE THERE ARE CLAIMS THAT NOW HAVE PASSED THROUGH THOSE TWO THRESHOLDS, THERE WILL BE A MERITS DETERMINATION. NONE OF THAT HAPPENED.

WHAT HAPPENED WAS IT -- WHEN THE PETITION WAS FILED, THE SECOND AMENDED PETITION, THE PETITION THAT ALLEGED FACTS, THE PETITION UPON WHICH THE STATE COURT RULED, WHEN THAT PETITION WAS FILED, THE COURT HELD A HEARING THAT WAS INITIALLY SUPPOSED TO BE A STATUS HEARING. IT BECAME INSTANTLY A JUDGMENT, A RULING ON THE PETITION, AND THE COURT ADDRESSED ONLY A FEW CLAIMS THAT THE MAGISTRATE HAD POINTED OUT BECAUSE WHAT HAPPENED INITIALLY WAS THERE WAS A FIRST PETITION THAT WAS SORT OF A SHELL PLACEHOLDER PETITION AND THAT WAS AMENDED SLIGHTLY. AFTER THAT WAS AMENDED, THE STATE ANSWERED AND THE MAGISTRATE DID AN EXTENSIVE REPORT RECOMMENDING THAT THE ENTIRE THING BE DISMISSED, AND IT WAS, IN FACT, DISMISSED. SO THE -- BUT IT WAS DISMISSED WITHOUT PREJUDICE AND THE DEFENDANT WAS GIVEN AN OPPORTUNITY TO FILE A

NEW PETITION.

SO THAT SECOND PETITION, THE COMMISSIONER RATHER THAN GOING THROUGH THE ENTIRE THING, THE COMMISSIONER SAID IN HER REPORT WHICH YOUR HONOR HAS IT'S IN THE RECORD THAT THE -- THAT SHE WILL LOOK ONLY AT THOSE CLAIMS THAT AFTER REVIEWING THE NEW EVIDENCE AND THE NEW ALLEGATIONS, SHE THINKS MAY STATE A CLAIM THAT THE COURT WANTS TO LOOK AT AND THAT MAY REQUIRE A HEARING. SO SHE JUST SELECTED A FEW CLAIMS. WHAT THE JUDGE DID AT THE HEARING -- THERE WAS SUPPOSED TO BE A STATUS -- WAS VIRTUALLY READ THE COMMISSIONER'S NOTES. IT TRACKS IT ALMOST PRECISELY. IF YOU TAKE THE -- WHAT THE JUDGE DID AND YOU TAKE THE COMMISSIONER'S NOTES AND PUT THEM SIDE-BY-SIDE IN MANY INSTANCES THERE'S ACTUALLY THE SAME LANGUAGE, AND IT'S STRUCTURED EXACTLY THE SAME.

HOWEVER, THE STATE COURT REJECTED THE RECOMMENDATIONS OF THE COMMISSIONER AS TO ANY HEARINGS AND AS TO FINDING THAT ANY OF THE CLAIMS STATED A CLAIM THAT IF FOUNDED WOULD REQUIRE RELIEF. SO THAT WHAT THE STATE COURT DID WAS NOT REVIEW MOST OF THE CLAIMS HIMSELF. HE DELEGATED THAT TO THE COMMISSIONER, REVIEWED ONLY -- ADDRESSED ONLY THOSE FEW CLAIMS THE COMMISSIONER THOUGHT WERE WORTHWHILE, BUT THEN REJECTED WHAT -- THE COMMISSIONER'S RECOMMENDATION.

NOW, THERE -- WE BELIEVE THAT BECAUSE THE STATE COURT SO CLEARLY STATED ON THE RECORD THAT THIS WAS A DISMISSAL AND STATED IT SEVERAL PLACES THAT IT WAS BECAUSE FOR

FAILURE TO STATE A CLAIM AND ALSO BECAUSE THE RESPONDENT HAS CONCEDED THAT IT WAS A 928 DISMISSAL AND THERE WAS NO ORDER, WE BELIEVE THAT THE COURT HAS TO GO NO FURTHER WITH REGARD TO THE 2254(D), THAT BECAUSE WHAT THE COURT IS LOOKING AT HERE, INSTEAD OF LOOKING AT THE MERITS OF, SAY, MATERIALITY IN *BRADY*, WHAT THE COURT IS LOOKING AT IS THE REASONABLENESS OF THE DECISION, THE REASONABLENESS OF THE CONCLUSION THAT NO CLAIM WAS STATED. BUT IF YOU LOOK AT WHAT THOSE FEW CLAIMS THAT THE STATE COURT DID ADDRESS, EVEN THOSE, THEY ARE CLEAR FACTUAL ERRORS AND MISSTATEMENTS OF THE RECORD. AND THROUGHOUT THE TRANSCRIPT, THE COURT AND THE LAWYERS ALL THREE SAY THEY'RE OPERATING FROM MEMORY. THERE ARE ONLY A COUPLE OF REFERENCES OF THE TRANSCRIPT, AND WHAT'S REALLY GLARING IS THERE'S -- THAT IT'S CLEAR THAT NO ONE OTHER THAN DEFENSE COUNSEL IS FAMILIAR WITH ALL OF THE RECORDS AND EXHIBITS THAT HAVE BEEN PROVIDED.

FOR INSTANCE, WITH REGARD TO A CLAIM THAT ONE OF THE INCENTIVIZED WITNESSES HAD A PENDING PLEA BARGAIN THAT ENCOURAGED COOPERATION, WITH REGARD TO THAT CLAIM, THE DISTRICT COURT -- THE STATE COURT SAID, WELL, WITH REGARD TO THAT CLAIM, YOU DIDN'T ALLEGE THAT THERE ACTUALLY WAS A PLEA BARGAIN, YOUR ALLEGATIONS ARE VAGUE. SO IT WAS CLEARLY A 928 DISMISSAL, BUT IT WAS ALSO FACTUALLY INCORRECT AND NOT ONLY WAS THERE A SPECIFIC ALLEGATION AS TO A PLEA, THE PLEA WAS ATTACHED TO THE DOCUMENT. THE PLEA WAS IN THE RECORD. SO

IT'S NOT AN ACCURATE REFLECTION OF THE RECORD, AND THERE ARE MISSTATEMENTS OF FACT, BUT WE DON'T EVEN NEED TO GO THERE BECAUSE WHAT IS VERY CLEAR IS THAT THE JUDGE TOOK ONLY A FEW OF THOSE CLAIMS THAT THE COMMISSIONER THOUGHT WERE WORTH LOOKING AT, AND IN VERY SHORT ORDER FOUND THAT THEY FAILED TO STATE A CLAIM THAT IF PROVEN WOULD REQUIRE RELIEF.

SO IT'S A 928 DISMISSAL. BECAUSE IT'S A 928 DISMISSAL, THE APPROPRIATE QUESTION FOR THIS COURT IS WHETHER OR NOT IT WAS REASONABLE FOR THE STATE COURT TO CONCLUDE THAT THE PETITIONER HAD FAILED TO STATE A CLAIM AND THAT CONCLUSION CANNOT BE REASONABLE. AND AS THE RESPONDENT HAS ASSERTED BASED ON *CULLEN VERSUS PINHOLSTER*, WHAT THIS COURT DOES FOR THAT PART OF THE ANALYSIS IS LOOK ONLY AT WHAT THE STATE COURT DID AND WHAT THE STATE COURT KNEW. WELL, WE KNOW WHAT THE STATE COURT DID. IT'S THE FACTS AS I JUST DESCRIBED. AND THE MAGISTRATE'S SUPPLEMENTAL REPORT IS IN THE RECORD. WE KNOW THE STATE WAS NEVER ORDERED TO ANSWER. THE STATE HAD SUA SPONTE ANSWERED A PREVIOUS PETITION, BUT IT WAS A COMPLETELY DIFFERENT PETITION AND THAT PETITION HAD BEEN DISMISSED. IT HAD NEVER ANSWERED THE PETITION THAT HAD SPECIFIC FACTS -- CASE SPECIFIC FACTS ALLEGED IN IT, AND IT WAS NEVER ORDERED TO DO SO.

SO WE KNOW THAT THE COURTS -- WE KNOW WHAT THE COURT DID AND WE HAVE EVIDENCE OF IT. THIS IS NOT A SITUATION WHERE THERE'S A ONE-PAGE DENIAL, A POSTCARD DENIAL, WHERE WE JUST

HYPOTHESIZED WHAT THE STATE COURT DID. WE KNOW WHAT THE STATE COURT DID, AND THE STATE COURT ARTICULATED REASONS AND THE REASON WAS THAT THE -- THAT THE CLAIMS WOULD NOT -- WERE NOT STATED IN SUCH A WAY THAT IF THEY WERE TRUE, THEY WOULD GET RELIEF. SO WE LOOK AT EACH OF THEM INDIVIDUALLY THEN AND ASK WHETHER OR NOT THEY PROVIDE THE ELEMENTS OF A CLAIM THAT, IF PROVEN, WOULD REQUIRE RELIEF. AND, IN FACT, EACH ONE OF THEM DOES. EACH OF THESE CLAIMS PRESENTS ALL OF THE ELEMENTS OF A CLAIM, AND AT LEAST FIVE OF THE VERY FACTUALLY AND EVIDENCE RICH CLAIMS VERY CLEARLY RAISED ISSUES THAT REQUIRE EVIDENTIARY RESOLUTION, ISSUES THAT CLEARLY WOULD REQUIRE RELIEF IF THE ALLEGATIONS WERE TRUE.

AND SO THE ANALYSIS IS NOT WHAT HAPPENED INITIALLY IN THIS COURT'S DISPOSAL OF THE PETITION, A QUESTION OF LOOKING AT, FOR INSTANCE, MATERIALITY OR PREJUDICE ON *BRADY* OR AN ISC CLAIM. THE QUESTION IS MERELY ON THE FACE OF IT, LOOKING ONLY AT WHAT THE STATE COURT HAD IN FRONT OF HIM, WAS IT REASONABLE TO CONCLUDE THAT MR. WESSINGER HAD FAILED IN EVERY INSTANCE TO STATE ANY CLAIM THAT, IF TRUE, WOULD REQUIRE RELIEF AND THAT IS NOT TRUE.

SO OUR FIRST ISSUE, AS THE COURT ARTICULATED, IS THIS ISSUE OF FRAMING IT FOR THE APPROPRIATE QUESTION. WE CONCEDE AND AGREE WITH RESPONDENT THAT THAT WAS AN ADJUDICATION ON THE MERITS, BUT THE QUESTION IS WHAT WAS THE ADJUDICATION, WHAT WAS THE NATURE OF IT, WHAT WAS THE QUESTION

THAT WAS ANSWERED THAT WE'RE REVIEWING. WHAT ARE WE REVIEWING FOR REASONABLENESS AND THAT IS A 928 DISMISSAL.

AS REGARD TO THE UNEXHAUSTED PENALTY CLAIM, HOWEVER, WHICH -- THE *WIGGINS* CLAIM.

**MR. LEE:** CAN WE TAKE THEM UP ONE AT A TIME, YOUR HONOR, OR ARE WE JUST GOING TO GO THROUGH --

**THE COURT:** WELL, LET'S TAKE THEM UP ONE AT A TIME. LET ME HEAR THE RESPONSE THEN.

ARE YOU FINISHED WITH THAT PARTICULAR ARGUMENT?

**MS. RECER:** SETTING OUT THAT FIRST PIECE OF IT, YES, YOUR HONOR, I AM.

**THE COURT:** ALL RIGHT. MR. LEE, WE KNOW WHAT THE JUDGE DID, BUT WHAT DID HE -- WHAT DID HE KNOW? HE DIDN'T TRY THIS CASE.

**MR. LEE:** YES, HE DID, YOUR HONOR. JUDGE ANDERSON WAS THE TRIAL JUDGE IN THIS CASE.

**THE COURT:** I THOUGHT JUDGE -- NO. THAT'S RIGHT, HE WAS.

**MR. LEE:** I THINK JUDGE CALLOWAY HAD SOME EARLY INVOLVEMENT BEFORE THE INDICTMENT -- AROUND THE TIME OF THE INDICTMENT, BUT JUDGE ANDERSON WAS THE TRIAL JUDGE IN THIS CASE.

AND JUST TO CLARIFY SOMETHING. LET ME START OFF FROM THE BEGINNING. WE DID NOT CONCEDE AT ANY TIME THAT THIS IS A 928 DISMISSAL. ON THE MOTION TO ALTER JUDGMENT, THE

ARGUMENT WAS THAT THIS WAS A 928 DISMISSAL AND WE RESPONDED BY ARGUING THAT IF IT WAS, IT REALLY WOULDN'T MATTER, BUT THROUGHOUT THESE PROCEEDINGS, WE HAVE ALWAYS MAINTAINED THAT THIS WAS A SUMMARY DENIAL UNDER 929. THE JUDGE REVIEWED NOT ONLY THE PLEADINGS, BUT THE JUDGE REVIEWED THE FACTS, THE TRANSCRIPTS, THE ARGUMENTS THAT WERE MADE, HIS OWN INDEPENDENT RECOLLECTIONS.

**THE COURT:** WHERE IS THAT IN THE RECORD?

**MR. LEE:** WELL, I CAN GIVE YOU SOME EXAMPLES. IF YOU LOOK AT THE STATUS CONFERENCE THAT WAS HELD ON SEPTEMBER OF 2003, JUDGE ANDERSON, WHEN HE WENT THROUGH AND DISCUSSED THE DIFFERENT CLAIMS -- LET ME BACK UP A STEP, YOUR HONOR. THE CLAIMS THAT WE'RE TALKING ABOUT HERE, THERE'S ONLY A COUPLE OF CLAIMS THAT AROSE IN THE POST-CONVICTION THAT ARE STILL BEFORE THE COURT, AND THAT'S PRIMARILY THE *BRADY* CLAIMS AND THE INEFFECTIVE CLAIMS. ALL THE OTHER CLAIMS THAT YOUR HONOR RULED ON WERE APPELLATE CLAIMS THAT WERE BROUGHT UP ON APPEAL, AND THEY WERE RELYING ON THE APPELLATE RECORD. SO MAINLY WE'RE TALKING ABOUT *BRADY* ISSUES AND THE INEFFECTIVENESS ISSUES, BUT THROUGHOUT THE HEARING THAT JUDGE ANDERSON CONDUCTED, AND WHAT HAPPENED IN THAT SITUATION, THE PETITIONER FILED THEIR FIRST PETITION. THE STATE RESPONDED. WE ANSWERED. THERE WAS AN ANSWER IN THIS CASE. SO IT'S NOT A SITUATION -- THE JUDGE DIDN'T ORDER US TO ANSWER BECAUSE ALL THROUGHOUT THE OTHER PROCEEDINGS THAT PRECEDED THAT, WE ALWAYS

HAD DISCUSSIONS THAT WHEN PETITIONER FILES HIS PETITION, THE STATE IS GOING TO HAVE A CERTAIN AMOUNT OF TIME TO RESPOND, AND WE TOLD THEM THROUGHOUT THE PROCEEDINGS, IN STATUS CONFERENCES, IN CHAMBERS, ANY OTHER MEETING THAT WE HAD, THAT AS SOON AS THE PETITION WAS FILED, WE WOULD RESPOND AND THEN WE COULD MOVE ON TO THE NEXT STEP, WHATEVER THAT MAY BE.

**THE COURT:** WELL, YOU FILED A RESPONSE TO THE FIRST PETITION, AND THEN THAT WAS DISMISSED WITHOUT PREJUDICE, AND THEN THERE WAS A NEW PETITION FILED.

**MR. LEE:** YES, SIR.

**THE COURT:** DID YOU RESPOND TO THAT?

**MR. LEE:** NO, NOT DIRECTLY, BUT ALL OF THE CLAIMS THAT WERE RAISED IN THE SECOND PETITION WERE IDENTICAL TO THE CLAIMS THAT WERE RAISED IN THE FIRST PETITION. THEY ARGUED DIFFERENT FACTS PERHAPS, BUT IT WAS THE EXACT SAME CLAIMS, PARTICULARLY THE *BRADY* CLAIMS AND THE INEFFECTIVE CLAIMS. THEY DID ADD AN ADDITIONAL CLAIM UNDER *ERIC RING VERSUS ARIZONA*, WHICH THE COURT DISMISSED AND THIS COURT DISMISSED BECAUSE *RING* WASN'T RETROACTIVE. THAT'S THE ONLY REAL DIFFERENCE BETWEEN THE FIRST PETITION AND THE SECOND PETITION.

SO THERE IS AN ANSWER ON -- IN THE RECORD AS TO THESE CLAIMS. NOW, THAT ANSWER WAS NOT REPACKAGED AND REDONE AS THE SECOND PETITION WAS DONE, BUT IT ADDRESSED ALL OF THE SAME CLAIMS, AND WHAT JUDGE ANDERSON DID AT THE HEARING, HE LOOKED AT ALL OF IT AND I TOOK SOME EXCERPTS OF DIFFERENT

THINGS THAT HE REFERRED TO, AND IT'S CLEAR, IF YOU LOOK AT WHAT HE -- WHAT HE DID, HE WAS REVIEWING THE RECORD. HE WAS REVIEWING --

**THE COURT:** HE WAS REVIEWING THE COMMISSIONER'S NOTES.

**MR. LEE:** NOT ONLY THE COMMISSIONER'S NOTES, YOUR HONOR, THROUGHOUT JUDGE ANDERSON'S DISCUSSION DURING THE -- IF YOU READ THE WHOLE STATUS CONFERENCE, THERE'S DISCUSSION AMONG MR. SINQUEFIELD, MYSELF, MR. GISLESON, THE COURT AND THROUGHOUT ALL OF THAT, THE JUDGE NOTED NUMEROUS TIMES THAT HE WAS RELYING ON THE RECORD IN THIS CASE.

AND THE CASE THAT THEY CITE, LET'S BACK UP TO THAT. THEY WANT TO MAKE AN ARGUMENT THAT THIS IS A 928, THAT IT WAS DISMISSED ON THE PLEADINGS AND THAT BASICALLY THE JUDGE ASSUMED EVERYTHING THAT WAS ALLEGED IN THE PETITION TO BE TRUE AND THEN STILL DISMISSED THE PETITION, AND THAT IS THE *MORRIS VERSUS THALER* CASE THAT THEY CITE, AND THEY SAID THAT IF YOU MAKE -- AND WHAT THE FIFTH CIRCUIT FOUND IN THAT CASE IS THAT IF YOU MAKE THAT TYPE OF RULING AND YOU ASSUME EVERYTHING TO BE TRUE AND YOU DISMISS IT ANYWAY, AND THEN IT TURNS OUT THAT YOU WERE WRONG IN YOUR LEGAL ANALYSIS, THEN A HEARING CAN BE HELD IN FEDERAL COURT. THAT'S THE IMPACT OF *MORRIS V. THALER* THAT PETITIONER CITES. THAT IS NOT WHAT HAPPENED IN THIS CASE. JUDGE ANDERSON DID NOT SAY, "I'M ASSUMING WHAT YOU'RE ALLEGING TO BE TRUE AND I'M GOING TO DENY YOU RELIEF ANYWAY"

THAT WOULD BE A DISMISSAL ON THE PLEADINGS UNDER 928. THAT IS NOT WHAT HAPPENED.

JUDGE ANDERSON QUITE CLEARLY SAID THROUGHOUT THE THING -- THROUGHOUT THE HEARING REFERRING TO DR. SUAREZ'S TESTIMONY AND THE INEFFECTIVE CLAIM RELATED TO THAT. HE GOES, WELL, THAT'S WHAT THE RECORD SAYS I RECALL. I BELIEVE IT WAS EIGHTEEN SECONDS OR THEREABOUT FROM THE TIME OF THE SHOT. IT WAS TWENTY TO THIRTY SECONDS BEFORE SHE BLED TO DEATH. THE RECORD SPEAKS FOR ITSELF. I BELIEVE THE DOCTORS TESTIFIED THAT THEY HAD BEEN ASKED TO REVIEW ALL THE MEDICAL RECORDS. HE, DEFENDANT, ASKED -- I MEAN -- I'M SORRY. THE DOCTOR ASKED TO INTERVIEW THE DEFENDANT AND, IN FACT, HE'S THE ONE THAT INSISTED THAT THEY NOT BE PRESENT, AND I'M PARAPHRASING HIS TESTIMONY. THE JUDGE IS PARAPHRASING TESTIMONY FROM THE TRIAL. HE'S NOT RELYING ON 928 AND SAYING, I'M ONLY LOOKING AT THE PLEADINGS. HE'S SAYING, I'M LOOKING AT THE RECORD. I'M CONSIDERING THESE CLAIMS THAT WERE MADE IN RELATION TO THE RECORD. OKAY. HE GOES ON AND SAYS, I DON'T THINK ANY FURTHER HEARING IS NECESSARY ON THAT AND THAT WILL BE DISMISSED.

ALSO, A CLAIM IN THE SECOND PETITION, ROMAN NUMERAL II, SECTION ONE, WHICH REFERS TO THE FACT THAT MR. HECKER'S FATHER WAS ILL DURING THE PREPARATION FOR THE TRIAL. THE JUDGE SAYS I DON'T THINK ANY HEARING IS REQUIRED FROM THAT.

THE NEXT ONE IS GENERAL --

**THE COURT:** HE JUMPED OVER THE COMMISSIONER ON THAT,

THOUGH.

**MR. LEE:** YES, SIR. BUT SEE WHAT HE -- LET ME BACK UP AND TELL YOU ABOUT THAT. WHAT HE DID WITH THE COMMISSIONER WAS HE ASKED THE COMMISSIONER TO MAKE A RECOMMENDATION ON THE PROCEDURAL QUESTIONS. HE NEVER ASKED THE COMMISSIONER TO GIVE HIM A RECOMMENDATION ON HOW TO HANDLE THE MERITS OF THE PETITION BECAUSE HE WANTED TO MAKE SURE THAT HE WAS FOLLOWING --

**THE COURT:** WASN'T THAT PERTINENT, THOUGH, IF THE COMMISSIONER IN HER DETERMINATION IN THIS MATTER FOUND THAT THE DEFENSE COUNSEL WAS OTHERWISE PREOCCUPIED, SHOULDN'T THE JUDGE HAVE ADDRESSED THAT?

**MR. LEE:** I THINK THE COMMISSIONER -- I'M SORRY.

**THE COURT:** SHOULDN'T THE JUDGE HAVE CONSIDERED THAT AND LOOKED AT IT AS A -- ON A FACTUAL BASIS AS TO WHETHER OR NOT THAT STATED A CLAIM?

**MR. LEE:** I THINK HE DID LOOK AT IT TO SEE WHETHER IT STATED A CLAIM, AND THE CLAIM THAT HE HAD TO CONSIDER WAS AS IT WAS ALLEGED IN THE PETITION. YOU KNOW, HE LOOKS AT THE PETITION AND HE HAS HIS OWN INDEPENDENT RECOLLECTION OF WHAT HAPPENED AT THE TRIAL. AND IF -- AND UNDER AN INEFFECTIVE CLAIM, AS YOUR HONOR IS WELL AWARE, NOT ONLY DO YOU HAVE TO SHOW SOME SORT OF ERROR OR POTENTIAL ERROR, BUT YOU HAVE TO BE ABLE TO SHOW THAT IT WAS PREJUDICIAL. SO THE FACT THAT ANY ATTORNEY MAY HAVE BEEN ILL OR HAD AN ILL FAMILY MEMBER OR

ANYTHING ELSE, YOU KNOW, THAT'S ALL RELATIVE. I MEAN, WE ALL HAVE DIFFICULTIES IN OUR FAMILIES FROM TIME TO TIME, SO JUST SAYING THAT THE ATTORNEY MAY HAVE HAD AN ILL PARENT DOESN'T NECESSARILY EQUATE TO AN INEFFECTIVE CLAIM.

**THE COURT:** WELL, IT DID MORE THAN THAT. I MEAN, THE COMMISSIONER MADE A PARTICULAR POINT IN HER ASSESSMENT TO ADDRESS THIS IN SAYING THAT THAT IS SOMETHING, JUDGE, THAT IS IMPORTANT FOR YOU TO LOOK AT AND TO CONSIDER.

**MR. LEE:** RIGHT.

**THE COURT:** I MEAN, WHAT DID HE HAVE TO LOOK AT OTHER THAN WHAT SHE HAD TOLD HIM?

**MR. LEE:** I DON'T KNOW, YOUR HONOR. ALL I HAVE IS WHAT'S IN THE RECORD. I MEAN, WE CAN'T QUESTION THE JUDGE ABOUT HIS DECISION-MAKING PROCESS. ALL I CAN TELL YOU IS THAT HE CLEARLY CONSIDERED THE RECORD.

**THE COURT:** WHAT'S IN THE RECORD AS TO WHAT MR. HECKER WAS DOING AT THIS TIME?

**MR. LEE:** I DON'T KNOW, YOUR HONOR, OTHER THAN THE JUDGE'S INDEPENDENT RECOLLECTION.

**THE COURT:** ALL RIGHT.

**MR. LEE:** BUT IT'S NOT THE JUDGE'S BURDEN AND IT'S NOT OUR BURDEN TO SHOW THAT MR. HECKER WAS NOT INEFFECTIVE. IT'S PETITIONER'S BURDEN TO COME FORWARD AND SHOW THAT MR. HECKER WAS INEFFECTIVE.

**THE COURT:** WELL, THAT'S WHAT THEY WANT TO DO.

THAT'S WHAT THEY ARE TRYING TO DO.

**MR. LEE:** RIGHT. AND THEY ATTACHED -- THEY ATTACHED THEIR AFFIDAVITS. THOSE AFFIDAVITS WERE PRESENTED IN THE DISTRICT COURT AND THEN STATE DISTRICT JUDGE ANDERSON LOOKED AT THOSE AFFIDAVITS, AND HE COULD CONSIDER THOSE AFFIDAVITS.

**THE COURT:** DID HE?

**MR. LEE:** HE HAD ALL OF THE ATTACHMENTS THEN. HE MAY NOT HAVE REFERRED TO EACH AND EVERY ONE OF THEM, BUT HE HAD THEM. THOSE WERE BEFORE HIM. THAT WAS PART OF HIS DECISION-MAKING PROCESS. NOW, IF HE DIDN'T MENTION THAT ON THE RECORD, HE DIDN'T MENTION IT ON THE RECORD, BUT IT DOESN'T MEAN THAT HE DIDN'T CONSIDER IT, AND WHEN WE'RE TALKING ABOUT A FEDERAL HABEAS PROCEEDING, THE PRESUMPTION IS IS THAT THE STATE COURT ACTED CORRECTLY UNLESS WE CAN -- YOU KNOW, THAT THERE'S A SHOWING OTHERWISE. SO WHAT HE HAD BEFORE HIM THEN, HE HAD BEFORE HIM THE AFFIDAVITS. HE HAD BEFORE HIM THE ALLEGATIONS, AND HE HAD HIS OWN INDEPENDENT RECOLLECTION OF THE RECORD AND HE ALSO HAD HIS OWN INDEPENDENT RECOLLECTION OF HOW MR. HECKER PERFORMED AT TRIAL. HE WAS THE TRIAL JUDGE. HE WAS THE ONE THAT WAS SITTING THERE LISTENING TO MR. HECKER THROUGHOUT THE TRIAL.

**THE COURT:** WELL, THAT'S NOT THE STANDARD, THOUGH.

**MR. LEE:** THAT'S SOMETHING THAT CAN BE CONSIDERED, THOUGH.

**THE COURT:** HOW THE JUDGE PERCEIVED HOW SOMEONE

ACTED AT TRIAL.

**MR. LEE:** I THINK IT IS.

**THE COURT:** THERE WOULD NEVER BE, THERE WOULD NEVER BE AN INEFFECTIVE ASSISTANCE CASE IF IT WAS LEFT UP TO THE WAY THE JUDGE VIEWED THE ACTIVITIES AT THE TRIAL.

**MR. LEE:** IT HAS TO BE PART OF THE EQUATION, YOUR HONOR. I'M NOT SAYING THAT THAT'S THE ONLY THING THAT HE CAN LOOK AT OR THAT SHOULD BE THE ONLY THING HE CAN LOOK AT, BUT LOOKING AT THAT AND THEIR AFFIDAVITS AND THEIR ALLEGATIONS, HE CAN MAKE AN INFORMED DECISION AS TO WHETHER OR NOT HE -- YOU KNOW, HE BELIEVED THAT THEY HAD MET THEIR BURDEN OF PROOF UNDER *STRICKLAND*.

**THE COURT:** ALL RIGHT.

**MR. LEE:** WHICH IS A SEPARATE QUESTION FROM THE 928. GETTING BACK TO 928, THAT'S WHAT WE'RE TALKING ABOUT HERE, WHETHER OR NOT THIS WAS A 928 OR A 929 CLAIM.

928 IN THE CODE OF CRIMINAL PROCEDURE IS A SUMMARY DISMISSAL, A DISMISSAL ON THE PLEADINGS. 929 IS MORE IN THE NATURE OF A SUMMARY JUDGMENT OR A SUMMARY DISMISSAL. THAT'S WHEN YOU'RE CONSIDERING EVIDENCE IN ADDITION TO THE PLEADINGS. 928 WOULD BE ONLY LOOKING AT THE PLEADINGS, AND IT'S QUITE CLEAR, AND I CAN GO ON WITH OTHER THINGS THAT THE JUDGE SAID THROUGHOUT THE THING. THE JUDGE LOOKED AT THE RAP SHEET THAT WE'RE TALKING ABOUT. THE JUDGE TALKED ABOUT SOME DISCREPANCIES AMONG THE WITNESSES' STATEMENTS AND THEIR TRIAL

STATEMENTS, AND HE SAID, IN LOOKING AT THOSE, I DON'T FIND THE DIFFERENCES TO BE MATERIAL ON THE *BRADY* CLAIM. THAT'S ESSENTIALLY WHAT YOUR HONOR SAID IN YOUR RULING, IN YOUR 77-PAGE RULING THAT CONSIDERED THE SAME QUESTION. SO IT'S QUITE CLEAR THAT JUDGE ANDERSON WAS NOT RELYING ON THE PLEADINGS ALONE. HE WAS RELYING ON THE EVIDENCE. HE WAS RELYING ON THE TRANSCRIPTS. HE WAS RELYING ON WHAT WAS HANDED TO HIM IN THE PETITION, AND HE CONSIDERED ALL OF THESE THINGS.

HE DISCUSSED ALL THE INFORMATION RELATED TO RALPH HARDEN, TO MR. CLARENCE BROWN, AND HE DISCUSSED ALL OF THOSE DIFFERENT THINGS, AND THROUGHOUT THE PROCEEDING, IT WAS CLEAR, IT WAS CLEAR TO EVERYONE THAT JUDGE ANDERSON WAS RULING FROM THE RECORD, FROM HIS RECOLLECTION, FROM THE TRANSCRIPTS, AND FROM THE PETITION THAT WAS FILED. IT WAS NOT PLEADING ONLY. AND IN A LOT OF INSTANCES, HE REFERRED TO THE STATE'S ANSWER AND WHAT THE STATE ARGUED BECAUSE HE HAD HAD OUR RESPONSE ON THE FIRST PETITION.

SO WE HAVE NEVER CONCEDED THAT THIS WAS A 928 CASE OR THAT IT WOULD PROVIDE ANY DIFFERENCE IF IT WAS A 928 CASE. WE THINK THIS IS CLEARLY AN ADJUDICATION ON THE MERITS. *CULLEN* CLEARLY APPLIES, AS YOUR HONOR SAID IN YOUR RULING, AND THERE'S NO REASON TO DO ANYTHING DIFFERENT TODAY THAN WHAT YOUR HONOR HAS ALREADY RULED ON IN THIS CASE.

**THE COURT:** ALL RIGHT. THANK YOU.

**MS. RECER:** FIRST OF ALL, MR. LEE INDICATED THE

STATE HAD NOT ADMITTED THAT THIS WAS A 928 DISMISSAL, AND I RESPECTFULLY DISAGREE AND WOULD REFER THE COURT TO OUR -- BOTH OUR 59(E) AND OUR REPLY ON THE 59(E), IN PARTICULAR WHERE WE HAVE EXTRACTED FROM THE STATE'S PLEADINGS SEVERAL POINTS WHERE THEY, IN FACT, GO INTO A LONG EXTRAPOLATION OF THE STATE STATUTE AND ARGUE THEMSELVES THAT BECAUSE THE JUDGE DIDN'T ISSUE A FINDING THAT THERE WERE CLAIMS THAT, IF TRUE, WOULD REQUIRE RELIEF AND DIDN'T ORDER A RESPONSE, THAT IT WAS, THEREFORE, A 928, AND THAT'S STATED EXPLICITLY AND WE'VE PULLED THOSE POINTS OUT IN OUR 59(E) AND 59(E) REPLY SO THEY DID ADMIT IT.  BUT IT --

**THE COURT:** DOES IT MAKE ANY DIFFERENCE?

**MS. RECER:** I BELIEVE THAT IT DOES, YOUR HONOR, IN THIS WAY, AND THAT IS THAT THE ENTIRE PETITION WAS DISMISSED AS FAILURE TO STATE A CLAIM.  THE COURT ONLY LOOKED AT A FEW OF THE CLAIMS.  THE ONES THAT HE LOOKED AT HE DECIDED THAT THEY FAILED TO STATE A CLAIM.  IF WE LOOK AT THEM UNDER 929, I STILL BELIEVE THAT THESE CLAIMS WE WOULD GET PAST 2254(D) BECAUSE THERE ARE FACTUAL ERRORS AND -- EACH OF THESE -- AND THEY ARE UNREASONABLE IN LIGHT OF THE FULL RECORD.  I WOULD REALLY TAKE ISSUE WITH THE NOTION THAT THE JUDGE REFERRED TO THE ENTIRE RECORD, OR THAT THE JUDGE WAS ACTING IN CONSIDERATION OF THE ENTIRE RECORD, AND THE WAY THAT WE KNOW THAT DIDN'T HAPPEN, ONE OF THE WAYS, IS THAT HE GETS THE FACTS WRONG WITH REGARD TO WHAT'S BEEN ATTACHED.

I ALREADY MENTIONED WITH REGARD TO RANDOLPH HARDEN WHICH HE CALLS HEARN BECAUSE HE'S READING THE COMMISSIONER'S REPORT AND THE COMMISSIONER MISSPELLED IT AS HEARN. IT'S HARDEN. BUT WITH REGARD TO MR. HARDEN, THE PLEA WAS ACTUALLY ATTACHED AND WHAT THE JUDGE SAID -- FIRST OF ALL, WITH REGARD TO ALL THE *BRADY* MATERIALS, HE STARTS OFF BY SAYING, AS I RECALL, IT WAS OPEN FILE DISCOVERY, AND I'M NOT SURE WHAT WAS OVERLOOKED. SO HE'S SAYING THAT HE DOESN'T KNOW WHAT WE'VE SUBMITTED THAT WAS NOT PROVIDED. AND THE ONLY -- THE ONLY SUBSTANTIVE RULING THAT HE MAKES, THE ONLY PLACE THAT HE MENTIONS MATERIALITY AT ALL IS WITH REGARD TO THE MISDEMEANORS FOR TILTON BROWN AND THAT IF HE WANTS TO MAKE A MATERIALITY ASSESSMENT, IT'S SORT OF PREMATURE ACCORDING TO THE LOUISIANA SCHEME OF THE THRESHOLD THAT HE WOULD HAVE GONE THROUGH AT THAT POINT, BUT THAT'S THE ONLY PLACE. EVERYWHERE ELSE THE ISSUE -- WE DON'T EVEN GET TO MATERIALITY. TO THE EXTENT THAT HE ADDRESSES THE FACTS AT ALL, WHICH IS ONLY AS TO ABOUT TWO OR THREE OF THE *BRADY* CLAIMS, HE ADDRESSES WHETHER OR NOT THEY WERE TURNED OVER.

MR. SINQUEFIELD SAYS AT SEVERAL POINTS THAT HE TURNS THINGS OVER SO IT'S JUST SORT OF RELYING ON UNSWORN TESTIMONY FROM MR. SINQUEFIELD THAT HE TURNED IT OVER. THERE WAS NO REFERENCE TO WHETHER THE PETITION ALLEGED THAT THE TRIAL TEAM DID NOT RECEIVE IT, AND THE TRIAL TEAM, IN FACT, DID NOT RECEIVE IT. AND IF WE HAD A HEARING WE WOULD DEMONSTRATE THAT

THE TRIAL TEAM DID NOT RECEIVE IT, BUT THAT WAS NOT ASSUMED TO BE TRUE, AND THEN LOOKING AT THE CLAIM TO SEE WHETHER OR NOT IT -- WHETHER OR NOT IT STATED A CLAIM. THE COURT CONCLUDED THAT IT DIDN'T STATE A CLAIM AND DIDN'T -- AND IT ALSO DID NOT DO A TWO-PRONG ANALYSIS. SO THERE'S A LITTLE BIT OF A MUDDLE WHERE THE COURT IS LOOKING AT PIECES OF THE TRANSCRIPT, BUT IT'S CLEAR THE COURT DIDN'T LOOK AT -- WASN'T TAKING INTO CONSIDERATION THE FULL RECORD, CLEARLY WAS UNAWARE OF THE PLEA. HE SAYS -- AND THIS IS WHAT THE JUDGE SAYS ABOUT HARDEN. I THINK YOUR ALLEGATION IS VERY VAGUE. IT DOESN'T EVEN REALLY ALLEGE THERE WAS A PLEA AGREEMENT. THE THING I REMEMBER ABOUT THE PLEA AGREEMENT, TESTIFYING TO THE COURT IS THAT HE HAD IMMUNITY.

SO THE JUDGE IS RELYING ON HIS MEMORY, AND HE'S DOING SORT OF CIRCULAR REASONING TO SAY THAT NOTHING THAT ISN'T IN THE RECORD COULD BE MATERIAL BECAUSE I REMEMBER WHAT WAS IN THE TRANSCRIPT. OBVIOUSLY, TO ASSESS A *BRADY* CLAIM, IT'S ALL ABOUT WHAT WASN'T IN THE TRANSCRIPT, AND HE DOESN'T KNOW WHAT WASN'T IN THE TRANSCRIPT BECAUSE HE SAYS SO. HE SAYS THERE'S OPEN FILE DISCOVERY. I DON'T KNOW WHAT WAS LEFT OUT. HE SAYS, YOU DIDN'T ALLEGE A PLEA, WHEN ACTUALLY THE PLEA WAS ATTACHED TO THE DOCUMENT. SO IT'S VERY CLEAR. THIS IS UNREASONABLE IN LIGHT OF THE WHOLE RECORD. I'M GIVING HIM THE BENEFIT OF THE DOUBT THAT HE ACTUALLY WASN'T AWARE OF THE WHOLE RECORD BECAUSE IF HE WAS AWARE OF IT AND HE SAID THAT,

THAT'S A DIFFERENT KIND OF PROBLEM. I THINK THAT HE WASN'T AWARE, THAT HE WAS SIMPLY READING THE COMMISSIONER'S NOTES, AND NOT IN LIGHT OF THE ENTIRE RECORD. IT WOULD BE UNREASONABLE, OTHERWISE, SO IF IT WAS A 929, THEN IT'S STILL AN UNREASONABLE ASSESSMENT BECAUSE IT'S AN UNREASONABLE FACTUAL DETERMINATION.

THE COURT, ALSO WITH REGARD TO THE IAC CLAIM --

**THE COURT:** ALL RIGHT. THAT'S NEW; RIGHT?

**MS. RECER:** WELL, I WAS GOING TO JUST FOLLOW-UP ON WHAT MR. LEE SAID.

**THE COURT:** ALL RIGHT. GO AHEAD.

**MS. RECER:** WITH REGARD TO THE IAC CLAIM, THERE ARE ALSO FACTUAL ALLEGATIONS THAT AREN'T CLEARLY REFLECTED IN THE ENTIRE RECORD, NOT ONLY THE MAGISTRATE'S NOTES AS THE COURT POINTED -- OR THE COMMISSIONER'S NOTES AS THE COURT POINTED OUT, BUT ALSO MR. HECKER'S AFFIDAVIT, ALSO THE ACTUAL TRANSCRIPTS AS WE'VE SET OUT IN OUR 59(E) AND 59(E) REPLY, MR. HECKER SAID ON THE RECORD, AS TO THE EXPERTS, FOR INSTANCE, THAT HE WAS RUSHED, THAT HE WASN'T ABLE TO SEE THE RECORD, AND HE ASKED FOR MORE TIME. AND HE SAID THAT HE INTENDED TO PUT THE EXPERTS ON THE NEXT DAY. HE WAS FORCED TO DO IT EARLY. HE COMPLAINED ABOUT THAT BEFORE COURT, SAID THAT ON THE RECORD, SO IT'S NOT A FAIR ASSESSMENT OF THE RECORD, A REASONABLE ASSESSMENT OF THE RECORD THAT HE -- THAT THIS WAS SOME KIND OF STRATEGIC CHOICE.

THE -- THERE ARE ALSO STATEMENTS THAT ARE SIMPLY FACTUALLY INCORRECT AS EVEN TO THE TRANSCRIPT. THE COURT, RELYING ON ITS MEMORY, AS MR. LEE SUGGESTED, SAID, I BELIEVE THE DOCTOR TESTIFIED THAT HE HAD BEEN ASKED TO REVIEW ALL THE MEDICAL RECORDS. NEITHER DOCTOR TESTIFIED TO THAT. IN FACT, NEITHER DOCTOR WAS EVER PROVIDED WITH ANY MEDICAL RECORDS BECAUSE NO MEDICAL RECORDS WERE EVER COLLECTED. BOTH THEIR REPORTS AND THEIR TESTIMONY ARE CLEAR THAT THE ONLY THING THEY DID WAS SPEND A VERY BRIEF AMOUNT OF TIME WITH MR. WESSINGER. THERE WERE NO COLLATERAL WITNESSES. THERE WERE NO DOCUMENTS. THERE WAS NO REAL TESTING, AND THEY WERE VERY CURSORY EVALUATIONS DONE IN A GREAT DEAL OF HURRY WITH LITTLE PREPARATION AND ABSOLUTELY NO FOUNDATION. AND AT A HEARING WE HAD PLANNED TO PRESENT EXPERT TESTIMONY, PARTICULARLY WITH REGARD TO THE ABA GUIDELINES AND OTHER STANDARDS OF CARE DEMONSTRATING THAT, IN FACT, IT IS THE OBLIGATION OF CAPITAL COUNSEL TO PREPARE THEIR EXPERTS, TO PROVIDE THEIR EXPERTS WITH A THOROUGH AND COMPLETE MULTI-GENERATIONAL BIOPSYCHOSOCIAL HISTORY, AS WELL ESTABLISHED BY *WIGGINS*, BY THE ABA GUIDELINES AND BY STANDARDS THAT HAVE LONG BEEN IN PLACE IN THIS STATE. THE STANDARD OF CARE IN 1997 IN LOUISIANA -- AND I KNOW IT BECAUSE I WAS HERE AND DOING CAPITAL WORK -- REQUIRED AN EXTENSIVE LIFE HISTORY INVESTIGATION, REQUIRED THE EXPERTS BE PROVIDED WITH THAT SOCIAL HISTORY. THEY DON'T GO IN COLD AND THEY DON'T RELY

SOLELY ON WHAT THE DEFENDANT SAID. THESE EXPERTS REALLY GOT BEAT UP BECAUSE THEY HAD TO ADMIT THAT THEY HAD NO SOURCES OTHER THAN MR. WESSINGER. SO IT'S NOT AN ISSUE, WHEN WE TALK ABOUT PREPARING EXPERT WITNESSES, IT'S NOT AN ISSUE OF ASKING THEM TO LIE, IT'S AN ISSUE OF PROVIDING THEM WITH THE MATERIALS THEY NEED TO DO THEIR WORK. THAT WAS NOT DONE. THE INVESTIGATION WAS NOT DONE. THE RECORDS WERE NOT COLLECTED, THE EXPERTS DID NOT HAVE THEM AVAILABLE TO THEM, AND AS A RESULT, THE EXPERTS WENT INTO COURT THOROUGHLY UNPREPARED BASED ON VERY LITTLE INFORMATION THAT CAME SOLELY FROM THE DEFENDANT. AND, IN FACT, AS IS TRUE SO OFTEN, WHEN YOU ARE TALKING ABOUT CLIENTS WITH LOWERED COGNITIVE FUNCTIONING AND INTELLECTUAL DEVELOPMENT, THAT THERE'S MASKING GOING ON, THAT THE CLIENTS ARE NORMALIZING AND THE CLIENTS ARE TALKING ABOUT HAVING DONE WELL IN SCHOOL WHICH IF ANYONE HAD BOTHERED TO GET THE SCHOOL RECORDS, THEY WOULD KNOW IT'S ABSOLUTELY NOT TRUE.

SO THE FAILURE TO PREPARE IS NOT ABOUT ASKING THE WITNESSES TO LIE. THE FAILURE TO PREPARE IS ABOUT HAVING THE WITNESSES PROVIDED WITH THE MATERIALS THAT THEY NEED TO MAKE AN ACCURATE ASSESSMENT. SO IN THIS CASE, IT'S CLEAR THAT THE STATE COURT JUDGE DID NOT MAKE THIS RULING IN LIGHT OF THE COMPLETE RECORD. IT'S CLEAR THAT THE STATE COURT JUDGE, IN FACT, WAS OPERATING SO MUCH ON MEMORY AND SO LITTLE ON TRANSCRIPT, THAT EVEN THINGS THAT HAPPENED ON THE RECORD WERE MISCHARACTERIZED AND JUST SIMPLY WRONG. IT IS ABSOLUTELY NOT

TRUE THAT THE DOCTORS WERE ASKED TO REVIEW MEDICAL RECORDS.

AND THEN AS TO THE SUAREZ ISSUE THAT MR. LEE RAISED, HE'S CORRECT THAT THE JUDGE SAYS THAT HE DOESN'T THINK THERE NEEDS TO BE A HEARING, THE JUDGE IS OPERATING WITH THE WRONG STANDARD, AND DID IT AT TRIAL AND DID IT AGAIN IN THE STATE HABEAS, AND THAT IS, HE'S ASKING THE QUESTION, WHETHER WE NEED AN EXPERT TO SHOW THAT WHAT HAPPENED TO THE VICTIM WAS PAINFUL, THAT'S NOT THE QUESTION, FOR THE HEINOUS, ATROCIOUS AND CRUEL, THE STANDARD UNDER LOUISIANA LAW IS VERY CLEAR, AND THAT STANDARD WAS NOT MET, AND IT'S NOT MERELY AN EXPERT SHOWING THAT THERE WAS PAIN INVOLVED, IT'S A VERY SPECIFIC KIND OF STANDARD BECAUSE, OTHERWISE, EVERY HOMICIDE WOULD BE A CAPITAL HOMICIDE, BECAUSE THAT'S AN AGGRAVATOR UNDER LOUISIANA LAW. IT'S MEANT TO BE A NARROWING AND LOUISIANA LAW IS VERY CLEAR THAT IT'S MEANT TO BE A VERY SPECIFIC NARROWING. THERE HAS TO BE EVIDENCE OF TORTURE, THERE HAS TO BE EVIDENCE OF INTENTIONAL, YOU KNOW, PROLONGING OF THE SUFFERING. IT IS NOT WHETHER OR NOT THE EVENT ITSELF WAS PAINFUL, BECAUSE THAT WOULD BE TRUE IN EVERY SINGLE CASE, I'M QUITE SURE.

AND SO THE JUDGE MISSED THE LAW AT TRIAL AND IN THE STATE HABEAS, SO IT'S AN UNREASONABLE, FACTUAL DETERMINATION, AN UNREASONABLE APPLICATION OF THE LAW, AS TO THE SUAREZ CLAIM, AND I THINK IT'S QUITE CLEAR THAT THE TRANSCRIPTS ARE NOT THE COMPLETE RECORD, AND THAT THE COURT WAS NOT RELYING UPON THE COMPLETE RECORD, WHICH BRINGS US THEN TO THE

UNEXHAUSTED *WIGGINS* CLAIM.

**THE COURT:** I'M GOING TO TAKE ABOUT A FIVE-MINUTE RECESS HERE, AND WE WILL GO INTO THAT ASPECT OF IT.

**MS. RECER:** ALL RIGHT. THANK YOU, YOUR HONOR.

**REPORTER'S NOTE:** (MS. REBECCA L. HUDSMITH, MS. DANALYNN RECER AND MR. SOREN E. GISLESON, WERE PRESENT IN COURT ON BEHALF OF PETITIONER, TODD KELVIN WESSINGER. MR. HILLAR MOORE, DISTRICT ATTORNEY, MR. JOHN W. SINQUEFIELD, MR. DALE R. LEE AND MS. J. CHRISTINE CHAPMAN, WERE PRESENT IN COURT ON BEHALF OF RESPONDENTS.)

**(WHEREUPON, THE COURT WAS IN RECESS.)**

**THE COURT:** ALL RIGHT. WE ARE BACK ON THE RECORD. POINT NUMBER TWO IS THE ONE THAT CONCERNS ME IN THIS ALLEGATION THE MOST BECAUSE OF THE INTERVENING SUPREME COURT DECISION IN THE CASE OF *MARTINEZ*, AND SO I WOULD LIKE TO -- YOU TO HONE IN ON THAT, MS. RECER, AND TELL ME HOW YOU THINK THIS APPLIES OR DOESN'T APPLY.

**MS. RECER:** YES, YOUR HONOR.

**THE COURT:** WHEN I'M TALKING ABOUT *MARTINEZ*, LET ME GIVE YOU THE CITE SO THAT THE RECORD WILL REFLECT WHAT I'M TALKING ABOUT. IT'S *MARTINEZ VERSUS RYAN*. IT'S A 132 SUPREME COURT 1309. IT IS ABOUT A MONTH OR SIX WEEKS OLD. IT WAS RENDERED IN 2012.

**MS. RECER:** YES, YOUR HONOR, I WANT TO ADDRESS *MARTINEZ* AND THE UNEXHAUSTED *WIGGINS* CLAIM ALTOGETHER. I

WOULD LIKE TO, IF I COULD FOR JUST A BRIEF MOMENT, ONE POINT AS TO THE PREVIOUS ISSUE, I DIDN'T ADDRESS WHEN -- THAT MR. LEE INDICATED THAT THE CLAIMS WERE IDENTICAL BETWEEN THE FIRST AND SECOND PETITION STATE HABEAS, THAT'S ABSOLUTELY INCORRECT, AND I THINK A COMPARISON WOULD REFLECT THAT. AND ALSO THAT AS TO THE EXPERTS, IT'S NOT ONLY AN ISSUE OF PREPARATION, BUT THAT IF YOU KNEW WHAT THEY WERE GOING TO SAY, YOU WOULDN'T HAVE PUT THEM ON, AND EVEN THE COMMISSIONER SAYS, OBVIOUSLY, SOMEONE WOULDN'T PUT ON AN EXPERT WITNESS IN A CAPITAL CASE IF THEY DIDN'T KNOW WHAT THEY WERE GOING TO SAY.

**THE COURT:** WE WOULD HOPE.

**MS. RECER:** ONE WOULD HOPE, EXACTLY, YOUR HONOR, AND AS YOUR HONOR SAID, THAT WAS SOME OF THE MOST DEVASTATING TESTIMONY, AS YOU SAID IN YOUR OPINION.

*MARTINEZ*, WHICH HOLDS THAT WHERE, UNDER STATE LAW, INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL CLAIMS MUST BE RAISED IN AN INITIAL-REVIEW COLLATERAL PROCEEDING AS HERE, A PROCEDURAL DEFAULT WILL NOT BAR A FEDERAL HABEAS COURT FROM HEARING THOSE CLAIMS IF, IN THE INITIAL-REVIEW COLLATERAL PROCEEDINGS, THERE WAS NO COUNSEL, OR COUNSEL IN THE PROCEEDINGS WAS INEFFECTIVE. AS WE KNOW AND IT WAS SET OUT EXTENSIVELY IN YOUR HONOR'S RULING ON THE ISSUE OF ESTOPPEL AND TIMELINESS IN THIS CASE, THE INITIAL COUNSEL FOR MR. WESSINGER WAS LITERALLY NO COUNSEL AT ALL AND DID NOTHING. MR. GISLESON STEPPED IN ON A PRO BONO BASIS, AND HE LITIGATED

WITHOUT FUNDS, WITHOUT EXPERTS, WITHOUT ANY TYPE OF ASSISTANCE FROM INVESTIGATIVE RESOURCES, AND HE MADE ALLEGATIONS THAT, AGAIN, WE BELIEVE STATED A CLAIM, BUT THERE'S TWO POINTS.

FIRST OF ALL, THE INEFFECTIVENESS CLAIM IN THE STATE HABEAS PETITION WAS A VERY DIFFERENT CLAIM THAN THE INEFFECTIVENESS CLAIM RAISED IN THE FEDERAL PETITION, IN EVERY WAY, THE CLAIM ITSELF, AND IN THE FACTS SUPPORTING THE CLAIM. BUT ALSO THE -- BECAUSE HE DIDN'T HAVE EXPERT ASSISTANCE, HE COULDN'T DEVELOP SOME OF THE KEY ISSUES THAT WE WERE ABLE TO DEVELOP ONCE WE GOT INTO FEDERAL COURT. SO HE WAS INEFFECTIVE IN STATE HABEAS AND THAT CLAIM IS SO DIFFERENT FROM THE CLAIM THAT WE HAD IN STATE HABEAS, THAT IT REALLY IS UNEXHAUSTED, AND THE STATE, THE RESPONDENTS, ACTUALLY INDICATED THAT IT WAS UNEXHAUSTED IN THEIR PETITION, IN THEIR FIRST RESPONSE TO OUR AMENDED FEDERAL HABEAS PETITION, AND AS WELL IN THEIR RESPONSE TO OUR STAY MOTION, COMPLAINING THAT THIS WAS A CLAIM THAT HAD NEVER BEEN RAISED BEFORE. AND THAT IS ONE THING ABOUT WHICH WE ARE IN AGREEMENT. SO IT IS COMPLETELY EXHAUSTED. IT'S A VERY DIFFERENT CLAIM. I WOULD LIKE TO POINT OUT SOME OF THE WAYS IN WHICH IT'S A DIFFERENT CLAIM. OBVIOUSLY, THE NEUROPSYCHOLOGICAL EVALUATION AND TESTING, PSYCHIATRIC EVALUATION, LOW INTELLECTUAL FUNCTIONING, THE ISOLATION AND ABUSE AND THE EMOTIONAL ABUSE AND HUMILIATION, THE EXTENSIVE WITNESSES THAT WE HAVE DEVELOPED AS -- AS I INDICATED EARLIER, IN FEDERAL HABEAS, WE HAVE CLOSE TO TWO DOZEN WITNESSES, LAY

WITNESSES AND LIFE HISTORY, PLUS EXPERTS AND OTHER KINDS OF EXPERT WITNESSES THAT WILL TESTIFY THAT WERE NOT DEVELOPED AT TRIAL, BUT WERE ALSO NOT DEVELOPED IN STATE HABEAS. IN STATE HABEAS, WHAT THE CLAIM LOOKS LIKE WAS -- JUST A MOMENT. WHAT THE CLAIM LOOKED LIKE WAS A LIST OF FAILURES THAT WERE PREDOMINANTLY ON THE RECORD. THEY WERE FAILURES -- EXCUSE ME -- FAILURES TO PRESENT, FAILURES TO PREPARE WITNESSES, FAILURES FOR ARGUMENT, FAILURE REGARDING ADEQUATE VOIR DIRE, FAILURE TO CROSS-EXAMINE CERTAIN WITNESSES. MOST OF IT WAS A FAILURE TO PERFORM OR FAILURE TO PRESENT. THAT'S VERY DIFFERENT FROM A *WIGGINS* CLAIM. A *WIGGINS* CLAIM IS A FAILURE TO INVESTIGATE AND DEVELOP.

SO ALL OF THOSE CLAIMS THAT ARE ABOUT PRESENTATION AND, ESSENTIALLY, COURTROOM PERFORMANCE, LIKE CROSS-EXAMINATION, ALL OF THOSE CLAIMS ARE CLAIMS THAT WERE DENIED AS FAILURE TO STATE UNDER A CLAIM UNDER 928, AND THEY ARE EXHAUSTED, THEY ARE NOT *WIGGINS* CLAIMS. THEY ARE DIFFERENT FROM THE -- IN NATURE AND KIND AND, IN FACT, FROM THE *WIGGINS* CLAIM THAT WE HAVE TODAY. THE *WIGGINS* CLAIM IN FEDERAL COURT IS ABOUT A FAILURE TO INVESTIGATE. IN STATE COURT THERE WAS A GENERAL CLAIM VERY VAGUELY STATED WITHOUT -- AS THE STATE POINTED OUT AT THE TIME -- WITHOUT ANY EVIDENCE TO PROVE PREJUDICE, BECAUSE HE WASN'T ABLE TO PROVE PREJUDICE THAT SIMPLY ASSERTED THAT, AND A FURTHER INVESTIGATION WOULD HAVE DEVELOPED A RICH LIFE HISTORY. DIDN'T ACTUALLY DEVELOP

IT, AND THAT WAS THE PROBLEM AT THE TIME. BUT THE FAILURE TO INVESTIGATE CLAIM WAS JUST MERELY STATED, AND THIS CLAIM NOT ONLY DEVELOPS THAT FAILURE TO INVESTIGATE EXTENSIVELY, ALSO ADDRESSES THE *WIGGINS* CLAIM IN FEDERAL HABEAS, ADDRESSES THE PERFORMANCE PRONG WITH THE ABA GUIDELINES AND THE STANDARDS OF CARE, THE STANDARDS OF CARE THAT WERE PROMULGATED BY THE LIDB BACK IN 1997, AS WELL AS THE CURRENT STANDARD OF CARE FOR CAPITAL REPRESENTATION, WHICH APPLIES TO CASES OF THAT ERA. AND THE STANDARD OF CARE THAT SHOULD HAVE BEEN IN PLACE IN STATE HABEAS AS WELL.

SO THE FAILURE TO DEVELOP THIS IN STATE HABEAS WAS INEFFECTIVE, AND THAT INEFFECTIVENESS IS UNDER *MARTINEZ*, A -- GETS US AROUND THE PROCEDURAL BAR. THE CLAIM INITIALLY WAS UNEXHAUSTED, AS THE STATE SAYS, BUT BECAUSE THERE IS CAUSE FOR THAT LACK OF EXHAUSTION, THIS COURT CAN STILL REACH THE MERITS OF THE CLAIM. THE -- I WOULD REFER THE COURT TO OUR REPLY TO THE STATE'S OPPOSITION TO OUR HABEAS PETITION, STARTING ON PAGE 7, WHERE WE SET OUT THE CLAIMS AS THEY EXISTED IN STATE HABEAS, AND THOSE CLAIMS WERE VERY DIFFERENT FROM WHAT WE HAVE TODAY.

TODAY WE HAVE THE EXTENSIVE LIFE HISTORY THAT'S SET OUT IN THE FEDERAL PETITION, AND THOSE -- AND JUST THE MENTAL HEALTH ISSUE ALONE, WHICH IS SET OUT BOTH IN THE PETITION AND IN THE 59(E), JUST THAT ALONE IS AN UNEXHAUSTED CLAIM THAT WOULD HAVE TO RAISE IT -- THAT WOULD HAVE TO BE -- THAT WOULD

HAVE TO RE-OPEN THE JUDGMENT BECAUSE --

**THE COURT:** IS THERE ANY ATTEMPT IN THE STATE HABEAS TO RAISE ANY OF THESE, EVEN ABSENT THE FUNDS TO DEVELOP THEM?

**MS. RECER:** THE NEUROLOGIC -- THERE'S A NEUROLOGICAL TESTING -- ABSOLUTELY NOT. THE INVESTIGATIVE RESOURCES WERE NOT THERE. I BELIEVE THAT THERE WAS SOME EFFORT -- THE LAWYER HIMSELF, MR. GISLESON HIMSELF, AS WELL AS SOME INTERNS OR LAW STUDENTS COLLECTED WHAT THEY COULD. THERE'S SOME ADDITIONAL RECORDS THAT ARE ATTACHED, SOME SCHOOL RECORDS, THERE ARE A COUPLE OF AFFIDAVITS FROM FAMILY MEMBERS, WHERE SOMEONE ON THE LEGAL TEAM TALKED TO THEM. THERE WAS NOT A MITIGATION SPECIALIST OR AN INVESTIGATOR, THERE WAS NOT FUNDS, THERE WAS NOT AN EXTENSIVE INVESTIGATION AND THERE WERE CERTAINLY NO MENTAL-HEALTH EXPERTS.

**THE COURT:** ALL RIGHT. UNDER *MARTINEZ*, HOW DO YOU READ WHERE I SHOULD PROCEED?

**MS. RECER:** UNDER *MARTINEZ*, YOUR HONOR, THE FAILURE TO EXHAUST THIS CLAIM AND THE FAILURE TO EXHAUST THE TWO UNEXHAUSTED *BRADY* CLAIMS AS WELL, THOSE FAILURES TO EXHAUST CANNOT BE A BAR TO DE NOVO FEDERAL REVIEW OF THOSE CLAIMS, BECAUSE THE FAILURE TO EXHAUST WAS NOT THE FAULT OF THE PETITIONER, IT WAS NOT A FAILURE TO PROVIDE THE COURT WITH AN OPPORTUNITY AND THE STATE COURT WITH AN OPPORTUNITY TO LOOK AT IT. THE POLICY CONCERNS AND IMPLICATIONS BEHIND THE DEFERENCE IS ABOUT NOT ALLOWING PEOPLE TO SORT OF HIDE BEHIND THE LAW

AND WAIT UNTIL THEY GET TO FEDERAL COURT TO BRING OUT THEIR CLAIM. MR. GISLESON DID EVERYTHING THAT HE COULD TO GET THOSE FUNDS. HE, AGAIN AND AGAIN, FILED MOTIONS. HE FILED SOMETHING CALLING HIMSELF INEFFECTIVE.

**THE COURT:** DID THE STATE OPPOSE THOSE MOTIONS?

**MS. RECER:** THE STATE OPPOSED THOSE MOTIONS. THE COURT DENIED THOSE MOTIONS. MR. GISLESON FILED -- CALLING HIMSELF INEFFECTIVE AND RAISED IT IN SEVERAL DIFFERENT WAYS, RAISED IT IN THE FIRST AMENDED PETITION THROUGHOUT COMPLAINING THAT HE COULDN'T DEVELOP THESE CLAIMS BECAUSE HE DIDN'T HAVE FUNDING, AND HE DIDN'T HAVE ASSISTANCE. HE WAS -- HE MADE A VERY CLEAR RECORD ON THAT.

**THE COURT:** ALL RIGHT. WHERE DO WE GO, IN YOUR MIND?

**MS. RECER:** IN MY MIND, YOUR HONOR, WHERE WE GO IS THAT THE --

**THE COURT:** AND THAT'S WHAT I'M ASKING YOU IS YOUR READING OF *MARTINEZ*. HOW SHOULD I INTERPRET *MARTINEZ* FROM YOUR VIEW?

**MS. RECER:** I THINK THAT YOU SHOULD INTERPRET *MARTINEZ* TO MEAN THAT WHERE THE PETITIONER HAS NOT FAILED TO DEVELOP THROUGH ANY FAILURE OF HIS OWN AND WHERE THERE IS NOT A PROBLEM WITH SORT OF HIDING BEHIND THE LAW UNDER FAILURE TO TRY AND DEVELOP THE CLAIM, WHERE THE STATE HABEAS PETITIONER WAS INEFFECTIVE FOR FAILING TO RAISE CLAIMS, THAT THAT IS NOT

A PROCEDURAL BAR TO FEDERAL REVIEW. SO THE WAY THAT I WOULD SUGGEST THAT THE COURT SHOULD INTERPRET *MARTINEZ* IS THAT IT'S A TWO-STEP PROCESS. FIRST, TO FIND THAT THE *WIGGINS* CLAIMS IS UNEXHAUSTED, AS PRESENTED IN FEDERAL HABEAS, AND THAT CAN BE DONE SIMPLY BY COMPARING THE FEDERAL AND STATE HABEAS PETITIONS, AND WE'VE DONE THAT EXTENSIVELY IN OUR PLEADINGS, AND BECAUSE IT'S UNEXHAUSTED, NORMALLY, THAT WOULD MEAN THAT THE COURT COULDN'T REVIEW IT UNLESS THERE IS -- UNLESS THAT PROCEDURAL BAR IS REMOVED AND THAT *MARTINEZ* ALLOWS US TO OVERCOME THAT PROCEDURAL BAR AND THE EVIDENCE OF THE INEFFECTIVENESS IS THE FAILURE -- THE STATE HABEAS ATTORNEY'S FAILURE TO DEVELOP THE VERY SAME EVIDENCE THAT WAS DEVELOPED IN FEDERAL HABEAS. HAD HE HAD THE RESOURCES AND ABILITY TO DO THAT, COULD HAVE DONE EXACTLY THE SAME THING THAT HAPPENED IN FEDERAL HABEAS. THE DIFFERENCE WAS RESOURCES. ALL THE RECORDS, ALL THE PEOPLE, ALL THE EVIDENCE WAS AVAILABLE.

**THE COURT:** ALL RIGHT. LET ME HEAR FROM MR. LEE, AND, MR. LEE, LET ME POSE THAT SAME QUESTION TO YOU: I WOULD LIKE YOUR READING OF *MARTINEZ* AND WHERE DO WE GO?

**MR. LEE:** FORGIVE ME IF I FUMBLE A LITTLE BIT HERE. I'M TRYING TO REFER TO SEVERAL DIFFERENT THINGS AT ONCE, YOUR HONOR. SIMPLY PUT, I DON'T THINK *MARTINEZ* APPLIES.

**THE COURT:** WHY NOT?

**MR. LEE:** *MARTINEZ* DEALT WITH A SITUATION, YOUR HONOR, WHERE THE COURT CREATED AN EQUITABLE REMEDY FOR A

DEFENDANT WHOSE CLAIMS WERE DEFAULTED IN STATE COURT AND, THEREFORE, WERE BARRED AS INDEPENDENT AND ADEQUATE STATE LAW GROUNDS IN FEDERAL COURT. NOW, IF WE GO BACK AND LOOK AT THE WHOLE PURPOSE FOR FEDERAL HABEAS IN THE FIRST PLACE, WE TALK ABOUT THE INTERRELATION BETWEEN THE STATE SYSTEM AND THE FEDERAL SYSTEM AND THE COMITY THAT'S DUE. YOU KNOW, THERE'S A VERY REAL PURPOSE FOR WHY FEDERAL COURTS DO NOT TYPICALLY INTERFERE WITH STATE COURT RULINGS.

**THE COURT:** IN THIS INSTANCE, THEY ASKED FOR FUNDING, YOU FOLKS OPPOSED IT, THE JUDGE AGREED WITH YOU. THERE WASN'T ANY OF THIS AT ALL DEVELOPED AND, YET, WHEN THE FEDERAL COURT PROVIDED THE FUNDING, ALL OF THIS POTENTIAL CAME ABOUT. I MEAN --

**MR. LEE:** WELL, LET'S TALK ABOUT THAT FOR A MINUTE, AND WE'LL GET BACK TO *MARTINEZ*. WHAT HAPPENED, AND WHAT YOUR HONOR SAW WAS THIS NEW EVIDENCE THAT THEY BROUGHT UP IN FEDERAL COURT WAS NOT REALLY NEW EVIDENCE, IT WAS JUST DIFFERENT EVIDENCE. IT WAS EVIDENCE THAT THEY WISHED THEY -- THAT THIS TEAM OF LAWYERS WISHED HAD BEEN PRESENTED IN THE TRIAL. IT WAS ENTIRELY DIFFERENT. IF YOU GO BACK AND YOU LOOK AT THE STATE COURT RECORD, THERE WAS PLENTY OF EXPERTS THAT TESTIFIED IN THE ORIGINAL TRIAL, BUT WHEN THAT FAILS, THEY COME AND SAY ON POST-CONVICTION, WELL, WE WANT A DIFFERENT -- YOU KNOW, WE SHOULD HAVE HAD A DIFFERENT STRATEGY, WE SHOULD HAVE GONE FOR DIFFERENT ISSUES. WE SHOULD

HAVE BROUGHT UP OTHER MENTAL-HEALTH PROBLEMS, WE SHOULD HAVE BROUGHT UP THIS INSTEAD, BECAUSE, OBVIOUSLY, WHAT WE TRIED THE FIRST TIME--

**THE COURT:** THAT'S NOT ENTIRELY WHAT THE RECORD REFLECTS, THOUGH. I MEAN, MR. HECKER, IN HIS OWN TESTIMONY BEFORE THE COURT AND IN HIS AFFIDAVITS AND OTHERS, SAID THAT, YOU KNOW, HE NEEDED TIME, HE NEEDED OTHER EFFORTS TO PREPARE THESE FOLKS, AND THEY WEREN'T EVEN INTERVIEWED. THEY WEREN'T EVEN TALKED TO.

**MR. LEE:** BUT THEY STILL PUT ON A VERY THOROUGH PENALTY PHASE CASE. IF YOU LOOK AT WHAT WAS PUT ON AT THE TRIAL, IT WAS VERY THOROUGH. MAYBE THEY DIDN'T GET THE RESULT THEY WANTED, BUT IT HAD NOTHING TO DO WITH FUNDING OR ANYTHING ELSE. IT WAS BECAUSE THE FACTS WERE AGAINST THEM OR THE DOCTORS THAT THEY INTERVIEWED DIDN'T COME UP WITH THE CONCLUSIONS THAT THEY WANTED TO, AND WHEN THAT FAILED, THEY TURN AROUND AND WANT TO BRING UP A NEW CLAIM. THAT'S WHERE WE ARE TODAY. SINCE THEY FAILED ON THE FIRST CLAIM, THEY WANT TO SAY, WELL, OBVIOUSLY, WHAT THEY DID AT TRIAL DIDN'T WORK. SO IT'S REAL EASY TO COME TO FEDERAL COURT AND SAY, WELL, IF WE WOULD HAD DONE THIS AND WE HAD DONE THIS AND WE HAD PRESENTED THAT, OBVIOUSLY, IT WOULD HAVE BEEN A DIFFERENT TRIAL, BUT THAT'S NOT THE STANDARD THAT WE'RE LOOKING AT.

THE REASON THAT FEDERAL HABEAS IS SET UP THE WAY IT IS IS BECAUSE IT'S NOT SUPPOSED TO BE A SECOND GUESSING OF

WHAT OCCURRED AT TRIAL. SO IF YOU LOOK AT THE RECORD, THERE WAS A VERY CLEAR -- YOU KNOW, THERE WAS A THOROUGH AMOUNT OF EXPERTS, THERE WAS A THOROUGH AMOUNT OF WITNESSES THAT TESTIFIED. THEY DIDN'T GET THE RESULT THEY WANTED, SO THEY COME IN AND IN THEIR SECOND PETITION, BEFORE JUDGE ANDERSON, PAGE 37 OF THE SECOND PETITION, THEY FILE THEIR INEFFECTIVENESS AT THE PENALTY PHASE TRIAL. THEY MENTION **WIGGINS**, THEY BRING UP PAGE 38, IN ACCORDANCE WITH MR. WESSINGER'S CONSTITUTIONALLY GUARANTEED SIXTH AMENDMENT RIGHT, COUNSEL HAS A DUTY TO MAKE REASONABLE INVESTIGATIONS AND CITED *WIGGINS*, WHICH WAS DECIDED IN 2003.

THEY GO THROUGH AND TALK ABOUT THE PREPARATION AND INVESTIGATION THAT THE DEFENSE COUNSEL DID AT TRIAL. THEY BROUGHT UP THESE CLAIMS TO JUDGE ANDERSON. IT'S NOT AS IF THEY DIDN'T KNOW ABOUT THEM AND THEY COME OVER TO FEDERAL COURT AND SAY THAT IT'S TOTALLY UNEXHAUSTED. BUT IF YOU GO THROUGH AND YOU LOOK AT WHAT THEY, YOU KNOW, THEY ATTACK DIFFERENT THINGS THAT OCCURRED AT THE PENALTY PHASE, THEY BRING UP THE DIFFERENT WITNESSES, YOU KNOW, THEY DISCUSS THE *WIGGINS* CLAIM. BUT FOR WHATEVER REASON, THEY DIDN'T GET ANY -- THEY CLAIM THEY DIDN'T GET MONEY TO INVESTIGATE, BUT THE DA'S OFFICE DOESN'T CONTROL THE MONEY THAT GOES TO A DEFENDANT NOR DOES THE JUDGE. AND I DON'T RECALL, DURING THE POST-CONVICTION PROCESS, THAT WE ACTIVELY INTERFERED WITH ANYTHING. WE JUST SAID, JUDGE, WE WANT THEM TO FILE SOMETHING

SO THAT WE CAN RESPOND TO IT, SO THAT WE CAN GET TO THE BOTTOM OF THIS. IF THE JUDGE WANTED TO GIVE THEM FUNDING HE COULD, BUT THE FUNDING IS BASED ON MAKING AN ALLEGATION THAT IS GOING SOMEWHERE. YOU KNOW, THE JUDGE IS NOT IN A POSITION TO GIVE THEM UNLIMITED FUNDS TO INVESTIGATE UNLIMITED CLAIMS.

SO, YOU KNOW, GOING THROUGH THAT PROCEDURE, YEAH, THEY DIDN'T GET FUNDS FROM THE COURT, YOU KNOW, AND WHETHER OR NOT THERE WERE --

**THE COURT:** WHERE ELSE WOULD THEY GET FUNDS, IF THEY DIDN'T GET THEM FROM THE COURT?

**MR. LEE:** FROM THE STATE IN SOME MANNER, BUT, OBVIOUSLY, AT THAT TIME, THE FUNDING QUESTION WAS A LITTLE DIFFERENT THAN IT IS TODAY. BUT IT'S NOT ABOUT FUNDING. SO THERE IS NO INEFFECTIVE CLAIM BECAUSE OF FUNDING. YOU KNOW, YOU STILL HAVE TO MAKE AN ALLEGATION. THEY MADE THE *WIGGINS* ALLEGATION. THEY BROUGHT IT UP, AND THEY MADE THE ALLEGATION THAT THE ATTORNEYS DIDN'T INVESTIGATE ENOUGH. AND, YOUR HONOR, WHEN YOU REVIEWED THIS, YOU LOOKED AT THE SAME RECORD EVIDENCE THAT JUDGE ANDERSON DID, AND YOU SAID, WHAT IT BOILED DOWN TO YOU WAS THEY WANTED A DIFFERENT STORY SPUN FOR THE JURY, AND THAT'S NOT INEFFECTIVENESS OF COUNSEL, THAT IS A DIFFERENT PRESENTATION OF EVIDENCE.

**THE COURT:** BUT *MARTINEZ* HASN'T INTERVENED IN THAT.

**MR. LEE:** OKAY. AND WHAT *MARTINEZ* SAID IS THAT WHEN A STATE HAS A PROCEDURE AND THEY WANT TO BAR CLAIMS IN STATE

COURT AND SAY THAT THAT CLAIM IS PROCEDURALLY DEFAULTED BECAUSE YOU DIDN'T RAISE IT, AND THEN HAVE IT BARRED IN FEDERAL COURT AS AN INDEPENDENT AND ADEQUATE STATE LAW BAR, THEN THERE HAS TO BE --

**THE COURT:** THEY CAN ONLY RAISE INEFFECTIVE ASSISTANCE OF COUNSEL IN THE HABEAS PROCEEDING, AND THEIR ALLEGATION IS THAT THEY TRIED TO DO THIS, AND THEY WERE NOT ALLOWED TO SUBSTANTIATE THEIR CLAIMS BECAUSE THE JUDGE, STATE COURT JUDGE, DID NOT ADEQUATELY FUND IT, DIDN'T GIVE THEM ANYTHING, LET ALONE ADEQUATELY FUNDED. ISN'T THAT SIGNIFICANT?

**MR. LEE:** WELL, NOW THAT IT'S BEEN FUNDED, YOUR HONOR REACHED THE SAME CONCLUSION THAT JUDGE ANDERSON DID.

**THE COURT:** WELL, I DIDN'T HAVE A HEARING. I DIDN'T KNOW WHAT THAT EVIDENCE WOULD BE.

**MR. LEE:** BUT GOING BACK TO *MARTINEZ*, *MARTINEZ* DEALS WITH A SITUATION, YOU KNOW, AND IT SAYS, THEY ARE MAKING A VERY LIMITED EXCEPTION UNDER *COLEMAN*, AND THAT EXCEPTION, THEY SAID WE'RE NOT GOING TO MAKE A CONSTITUTIONAL RULE THAT LAWYERS ALWAYS MUST BE APPOINTED OR THAT THE LAWYER MUST -- IT SAYS IF THE STATE IS GOING TO TRY TO BAR THIS CLAIM AND KEEP THIS CLAIM FROM BEING RAISED IN FEDERAL COURT, THEN THEY ARE GOING TO EITHER PROVIDE COUNSEL OR REVIEW THE INEFFECTIVENESS CLAIM.

READING ON PAGE 13 -- AT THE END OF 1319, TOP OF

PAGE 1320, AN EQUITABLE RULING, BY CONTRAST, PERMITS STATES A VARIETY OF SYSTEMS OF APPOINTING COUNSEL IN INITIAL-REVIEW COLLATERAL PROCEEDINGS. AND IT PERMITS STATES TO ELECT BETWEEN APPOINTING COUNSEL IN AN INITIAL-REVIEW COLLATERAL PROCEEDING, OR NOT ASSERTING A PROCEDURAL DEFAULT IN RAISING A DEFENSE ON THE MERITS IN FEDERAL HABEAS PETITIONS -- PROCEEDINGS, I'M SORRY.

IN ADDITION, STATE COLLATERAL CASES ON DIRECT REVIEW FROM STATE COURTS ARE UNAFFECTED BY THIS CASE. GOING ON OVER AT THE BEGINNING OF ROMAN NUMERAL III THERE, IT SAYS, WHERE, UNDER STATE LAW, CLAIMS OF INEFFECTIVENESS OF TRIAL COUNSEL MUST BE RAISED IN AN INITIAL-REVIEW COLLATERAL PROCEEDING, A PROCEDURAL BAR -- A PROCEDURAL DEFAULT WILL NOT BAR HABEAS -- A FEDERAL HABEAS COURT FROM HEARING THE SUBSTANTIAL CLAIM OF INEFFECTIVENESS AT TRIAL IF, IN THE INITIAL-REVIEW PROCEEDING, THERE WAS NO COUNSEL OR COUNSEL IN THAT PROCEEDING WAS INEFFECTIVE.

**THE COURT:** THAT'S WHAT THEY ARE TRYING TO ALLEGE.

**MR. LEE:** BUT HE RAISED THE CLAIM. NOW, THEY ARE TRYING TO SAY, THAT HAD WE GOT MORE FUNDING, WE MIGHT HAVE BEEN ABLE TO MAKE A BETTER CLAIM, BUT THAT'S A DIFFERENT THING THAN A PROCEDURAL DEFAULT. WE DON'T HAVE A PROCEDURAL DEFAULT HERE. THE STATE DIDN'T ASSERT AN INDEPENDENT AND ADEQUATE STATE LAW BAR. WE ARGUED ON THE MERITS OF THE INEFFECTIVENESS CLAIM AT THE PENALTY PHASE BOTH IN STATE COURT AND IN THIS

COURT.

WE DID NOT TRY TO SAY THAT THERE WAS A PROCEDURAL DEFAULT, AND, THEREFORE, YOU CAN'T BRING IT UP. THEY MADE A *WIGGINS* ALLEGATION AND THE JUDGE FOUND THAT *WIGGINS* ALLEGATION TO BE NOT SUFFICIENT TO GRANT. WHEN THIS COURT REVIEWED THE SAME RECORD AND THE SAME CLAIM, THIS COURT REACHED THE SAME CONCLUSION.

NOW, IF -- AS MS. RECER ARGUES THAT ANYTIME THERE'S AN UNEXHAUSTED CLAIM IN STATE COURT, YOU CAN COME OVER TO FEDERAL COURT AND PRESENT YOUR NEW EVIDENCE, THEN EVERYBODY WOULD SANDBAG ON THE STATE CLAIM AND SAY, WELL, WE'RE UNEXHAUSTED, SO NOW WE WILL RUN TO FEDERAL COURT AND WE'LL GET FUNDING AND WE CAN PRESENT AN ENTIRELY NEW CASE.

**THE COURT:** BUT THAT'S WHERE THE JUDGES COME IN. THEY ARE NOT GOING TO, YOU KNOW, PERMIT THAT.

**MR. LEE:** BASED ON WHAT? I MEAN, SOME JUDGES MAY NOT, BUT THE CONSTITUTIONAL STANDARD IS, AND THE AEDPA STANDARD IS THE STATE IS WHERE YOU ARE SUPPOSED TO BRING THE CLAIM. THEY BROUGHT THEIR CLAIM IN STATE COURT. THEY ARGUED THEIR CLAIM IN STATE COURT.

**THE COURT:** IT'S NOT THE SAME CLAIM, THEY CONTEND.

**MR. LEE:** RIGHT. BECAUSE THEY CHANGED IT AFTER THE FACT. SO THAT'S THE CASE OF SANDBAGGING, YOUR HONOR. THAT'S A CASE OF WE DIDN'T PRESENT THIS CLAIM IN STATE COURT, SO NOW WE WANT TO COME TO FEDERAL COURT AND PRESENT A DIFFERENT

CLAIM. WELL, I'M SURE THERE'S OTHER INEFFECTIVENESS CLAIMS THAT THEY DIDN'T RAISE, SO IF THEY COME BACK TOMORROW AND SAY, WELL, WE HAVE A DIFFERENT INEFFECTIVENESS TO CLAIM THAT WE DIDN'T BRING BECAUSE MR. GISLESON WAS INEFFECTIVE AT HIS STATE POST-CONVICTION. ARE WE GOING TO HEAR THAT CLAIM, TOO? I MEAN, IF THAT'S THE STANDARD, THEN IT NEVER ENDS. THERE IS NEVER A DOOR THAT CLOSES. AND, IN FACT, THAT'S THE REASON IN MARK *MARTINEZ*, THEY MADE IT AN EQUITABLE THING, AS OPPOSED TO A CONSTITUTIONAL STANDARD. IF THEY WOULD HAVE SAID, IT'S CONSTITUTIONAL THAT YOU HAVE TO DO THIS, THEN ANY TIME AN INMATE CAME ALONG AND SAID, OH, I DIDN'T GET TO PRESENT THIS IN MY STATE HABEAS PROCEEDING, SO NOW I WANT TO PRESENT IT IN FEDERAL COURT, THERE WOULD BE NO WAY TO SAY NO.

BUT THEY MADE IT AN EQUITABLE RULING. BUT IT DOESN'T APPLY HERE BECAUSE THE STATE ARGUED THE ISSUE ON THE MERITS, THE STATE JUDGE ADDRESSED THE MERITS OF WHAT THEY RAISED. IF THEY CAME OVER HERE AND GOT ADDITIONAL FUNDING AND WANT TO CHANGE THEIR CLAIM, WE ARE BACK TO THE WHOLE PURPOSE FOR EXHAUSTION IN THE FIRST PLACE. WE ARE BACK TO ARGUING WHETHER OR NOT THEY PROPERLY ADJUDICATED THEIR CLAIM IN STATE COURT. IF THEY CHANGED THEIR CLAIMS SUBSTANTIALLY FROM WHAT THEY ORIGINALLY RAISED, THEN WE'VE GOT A DIFFERENT SCENARIO. THEN WE'VE GOT A SITUATION TO WHERE WE'RE NOT APPLYING COMITY TO THE STATE COURTS BECAUSE WE'RE SAYING, WHAT HAPPENED IN THE STATE COURT DOESN'T MATTER ANYMORE BECAUSE THEY MADE A

DIFFERENT CLAIM. WELL, IF THEY ARE MAKING A DIFFERENT CLAIM, THEY CAN COME TO FEDERAL COURT WITH ANY CLAIM. AND NO ONE IS SUGGESTING THAT THAT'S THE -- WHAT THE IMPORT OF *MARTINEZ* IS. *MARTINEZ* WAS VERY LIMITED, IT WAS VERY LIMITED TO A SITUATION TO WHERE IT WAS CLEAR THAT THE STATE COURT DID NOT RULE ON THE MERITS OF THE PETITION, AND THE REMEDY THAT *MARTINEZ* SAID WOULD BE THE STATE'S METHOD OF HANDLING THIS IS TO EITHER APPOINT COUNSEL AND LET COUNSEL LITIGATE THIS APPROPRIATELY OR RULE ON THE MERITS OF THE CLAIM RATHER THAN DEFAULTING IT. HERE WE RULED ON THE MERITS OF THE CLAIM. AFTER IT WAS DENIED IN STATE COURT, THEY COME OVER HERE AND WANTED TO CHANGE THE NATURE OF THE CLAIM. THAT'S NOT *MARTINEZ*.

**THE COURT:** ALL RIGHT. LET ME FOLLOW UP. THEY TELL ME THAT *MARTINEZ* DOESN'T APPLY.

**MS. RECER:** AND WE WOULD DISAGREE. I DON'T QUIBBLE WITH THE NOTION THAT IT IS AN EQUITABLE REMEDY THAT WOULDN'T ALWAYS PREVAIL IN EVERY SITUATION WHERE A CLAIM WASN'T RAISED, AND I AGREE WITH YOUR HONOR THAT THAT'S WHERE THE JUDGES COME IN, AND THAT'S WHAT AN EQUITABLE REMEDY IS ABOUT, AND IN THIS CASE, BECAUSE COUNSEL FOR MR. WESSINGER DID EVERYTHING HE COULD TO GET -- TO DEVELOP THESE CLAIMS --

**THE COURT:** WELL, THEY SAY IT WASN'T DUE TO LACK OF FUNDING. THEY SAID YOU HAD A FULL PANOPLY OF WITNESSES AND EXHIBITS IN THE PENALTY PHASE, AND IT JUST DIDN'T TURN OUT THAT WAY. ANSWER THAT, IF YOU WOULD, PLEASE.

**MS. RECER:** RIGHT. AS TO BOTH THE COMPARISON WITH THE TRIAL AND THE COMPARISON WITH THE STATE HABEAS, FIRST OF ALL, ACTUALLY, LET ME HAVE JUST A MOMENT, YOUR HONOR.

**THE COURT:** WE NEED A BIGGER PODIUM.

**MS. RECER:** YES, THAT WOULD BE NICE. COMPARING WHAT HAS BEEN DEVELOPED IN FEDERAL COURT WITH WHAT WAS DEVELOPED AT TRIAL, AT THE TRIAL PHASE, THE PENALTY PHASE AT TRIAL, WE HAD WITNESSES, FAMILY AND FRIEND WITNESSES WHO WERE MOSTLY PEOPLE WHO HAD SHOWED UP. MOST OF THE FRIENDS WERE ACTUALLY NOT HIS FRIENDS, BUT HIS PARENTS' FRIENDS AND CUSTOMERS OF HIS FATHER'S LAWN MOWING BUSINESS, AND THE TWO MENTAL-HEALTH EXPERTS, AND THEN THREE OF THE EXPERTS WERE ALL ABOUT THE PRISON SYSTEM AND THE COMMUTATION RULE. THEY WEREN'T EVEN REALLY HIS LIFE HISTORY. SO THE ENTIRE PENALTY PHASE TOOK PLACE IN JUST A FEW HOURS. THESE WITNESSES WERE UNPREPARED, THEY WERE PEOPLE WHO JUST CAME UP TO SUPPORT MR. WESSINGER, AND THE LAWYERS SPOKE TO THEM IN THE HALLWAY --

**THE COURT:** WHERE IS THAT IN THE RECORD THAT THEY WERE UNPREPARED?

**MS. RECER:** THAT'S SEVERAL PLACES IN THE RECORD. FIRST OF ALL, THERE ARE SOME AFFIDAVITS THAT HAVE BEEN -- THAT WERE IN STATE HABEAS AND THERE WERE ADDITIONAL IN FEDERAL HABEAS OF WITNESSES SAYING THAT THEY WERE -- HAD JUST COME TO SUPPORT MR. WESSINGER OR HIS MOTHER AND THE LAWYER CAME OUT IN THE HALLWAY AND ASKED THEM IF THEY WOULD TESTIFY.

MR. HECKER HIMSELF, HOWEVER, IN SEVERAL AFFIDAVITS, HE HAS GIVEN THREE AFFIDAVITS, AND IN HIS AFFIDAVITS, EXPLAINS THAT HE DID NOT DEVELOP THIS EVIDENCE. AND THAT IT WAS NOT A STRATEGIC FAILURE, THAT HE ALSO WOULD HAVE PREFERRED -- WOULD HAVE WANTED TO DEVELOP THIS. AND I THINK THAT IT'S -- WHAT'S REALLY CRITICAL HERE IS IT'S NOT JUST A DIFFERENT STORY. IT'S NOT JUST MORE OF THE SAME. IT'S NOT JUST A DIFFERENT SPIN. IT IS COMPLETELY DIFFERENT EVIDENCE THAT WAS NEVER DEVELOPED. AT TRIAL, THE TESTIMONY WAS BRIEF, AND IT WAS SUPERFICIAL. THE CONCLUSIONS, THE TESTIMONY WAS JUST CONCLUSORY SORTS OF DESCRIPTIONS. HE'S A HARD WORKER, HE'S COURTEOUS, HE'S NORMAL, HE'S CARING, THINGS THAT YOUR PARENTS' FRIENDS MIGHT SAY ABOUT YOU, BECAUSE THEY CLEARLY DON'T KNOW YOU THAT WELL, OR THEY'RE JUST CHARACTERIZATIONS. THEY ARE NOT STORIES, THERE IS NOT EVIDENCE OF THOSE CHARACTER TRAITS, IT'S JUST SORT OF VOUCHING FOR THEM. AND IT WAS VERY SUPERFICIAL, AND IT WAS PUT ON IN A GREAT HURRY WITH LITTLE PREPARATION AND NO INVESTIGATION WHATSOEVER.

THE EXPERTS, AS I'VE ALREADY MENTIONED, WERE NOT PREPARED AND WERE RELYING ONLY ON WHAT MR. WESSINGER SAID AND HAD NO RECORDS AND NO INTERVIEWS WITH FAMILY MEMBERS OR TEACHERS OR ANYONE ELSE OF COLLATERAL WITNESSES TO HIS ADAPTIVE FUNCTIONING AND ADAPTIVE DEFICITS, SO THEY WERE COMPLETELY UNAWARE OF THAT AND, ACTUALLY --

**THE COURT:** WHAT WERE THEY SUPPOSED TO TESTIFY TO?

**MS. RECER:** WELL, THEY WOULD TESTIFY TO -- AN EXPERT WHO IS ADEQUATELY PREPARED, MEANING THAT THEY HAD THE RECORDS, THEY HAD SOCIAL HISTORY, THERE HAD BEEN TESTING DONE, WOULD COME TO THE CONCLUSIONS THAT OUR EXPERTS HAVE COME TO. THE EXPERTS THAT WERE RETAINED AND THAT SAW MR. WESSINGER WERE COMPLETELY UNPREPARED. THEY HAD NO SOCIAL HISTORY, AND IT IS ABSOLUTELY UNEQUIVOCALLY TRUE, THIS IS NOT A MATTER OF CONTENTION, IT IS UNIVERSALLY AGREED AMONG CAPITAL DEFENSE LAWYERS AND THE STANDARD IS VERY CLEAR IN EVERY STANDARD YOU LOOK AT, EVERY TRAINING YOU LOOK AT, THAT EXPERTS IN CAPITAL CASES ARE SUPPOSED TO BE PROVIDED WITH A THOROUGH MULTI-GENERATIONAL BIOPSYCHOSOCIAL HISTORY, AND THAT HAS BEEN THE CASE FOR AS LONG AS I HAVE BEEN DOING THIS WORK, WHICH IS MORE THAN 21 YEARS.

IT HAS ALWAYS BEEN THE CASE THAT THE FOUNDATION IS THE LIFE HISTORY, BECAUSE THE MEDICAL -- THE MEDICAL DETERMINATION, A DIAGNOSIS, IS ONLY AS GOOD AS THE DATA COMING IN, AND THE MEDICAL DECISION-MAKING PROCESS IS TO TAKE WHATEVER INFORMATION YOU HAVE AND MAKE THE BEST DIAGNOSIS YOU CAN, AND THEN IF NEW INFORMATION COMES IN, AMEND IT, AND THAT IS THE DECISION TREE THAT IS USED IN THE MEDICAL PROFESSION. WHAT WE DO IN CAPITAL CASES AND IN ANY CASE WHERE YOU'RE WORKING WITH MENTAL-HEALTH EXPERTS, IS YOU MAKE SURE THAT YOU PROVIDE THEM WITH EVERYTHING BEFORE THEY START MAKING A DIAGNOSIS, SO THAT THEY HAVE SCHOOL RECORDS, THEY HAVE THE

LONG HISTORY OF NEUROLOGICAL DEFICITS IN THE FAMILY, NOT ONLY RELATIVES AND MR. WESSINGER'S SISTER AND HIS OWN SEIZURE DISORDER, BUT HIS OWN CHILDREN ALSO HAVE -- SEVERAL OF THEM HAVE NEUROLOGICAL DEFICITS OR MENTAL RETARDATION OR DEVELOPMENTAL DELAYS. THERE'S CLEARLY A GENETIC ISSUE, THERE'S CLEARLY ISSUES THAT NEED TO BE INVESTIGATED THROUGH TESTING AND THROUGH NEUROPSYCHOLOGICAL BATTERIES THAT WERE NEVER TOUCHED BY A QUICK SORT OF DRIVEBY EVALUATION AT THE JAIL BY SOMEBODY WHO HAS NO RECORDS, HAS DONE NO INVESTIGATION, HAS MET NO WITNESSES, AND IS JUST RELYING ON WHAT THE DEFENDANT SAYS AND THE DEFENDANT'S FAMILY, AND THE DEFENDANT'S FAMILY HAVING SPENT VERY LITTLE TIME WITH THE LAWYERS AND, YOU KNOW, ONE OF THE THINGS THAT DIDN'T HAPPEN IN THIS CASE IS HIRING A MITIGATION SPECIALIST, AND WHAT MITIGATION SPECIALISTS DO, AS IS OUTLINED IN THE ABA GUIDELINES AND THE SUPPLEMENTAL GUIDELINES FOR THE MITIGATION FUNCTION OF CAPITAL COUNSEL, IS THEY DEVELOP TRUST, THEY OVERCOME BARRIERS, THEY DO AN EXTENSIVE INVESTIGATION.

**THE COURT:** I UNDERSTAND ALL OF THAT. YOU KNOW, THEY JUST -- WHY DIDN'T THEY DO THAT? THEY JUST DIDN'T DO IT?

**MS. RECER:** THEY DIDN'T EVEN ASK FOR A MITIGATION SPECIALIST AT TRIAL. THEY CERTAINLY ASKED IN STATE HABEAS, BUT THEY DIDN'T ASK AT TRIAL. AND MR. HECKER DOESN'T DEFEND THAT. THIS IS WHAT'S CRITICAL. THE STATE COURT ASSUMES WITHOUT EVIDENCE AND INCORRECTLY, THAT THE TRIAL LAWYERS WOULD

SAY, WE MEANT TO DO THAT, THAT'S HOW IT WAS SUPPOSED TO GO, WE DID IT ON PURPOSE. THEY DON'T SAY THAT. THEY'VE NEVER SAID THAT, AS TO EITHER THE CULPABILITY PHASE OR THE PENALTY PHASE, AND WE CAN'T JUST SURMISE THAT THAT'S WHAT THEY WOULD SAY. WE'VE ALLEGED THAT THEY WERE INEFFECTIVE, WE'VE ALLEGED THAT THEY FAILED TO INVESTIGATE. THAT STATES A CLAIM, AND THE NEXT STEP IS TO DEVELOP AND PRESENT THAT CLAIM.

AND THE HEARING THAT WE WERE ANTICIPATING, THOSE ATTORNEYS WOULD DESCRIBE FOR THE COURT THE WAYS IN WHICH THEY FAILED THEIR CLIENT, ABOUT WHICH THEY ARE VERY HONEST AND CLEAR. THEY ARE NOT SAYING THAT THIS WAS -- WE DID OUR BEST, AND THIS WAS THE BEST STORY WE THOUGHT, AND, OH, WELL, IT DIDN'T WORK, WE'LL TRY ANOTHER ONE. AND THEY WEREN'T SAYING IT AT THE TIME, THEY WEREN'T SAYING IT IN PRE-TRIAL HEARINGS, THEY WEREN'T SAYING IT IN FUNDING MOTIONS, SO IT'S BEEN CONSISTENT THROUGHOUT.

**THE COURT:** IS THERE LANGUAGE IN *MARTINEZ* THAT PERMITS THAT?

**MS. RECER:** PERMITS WHICH, YOUR HONOR? I'M SORRY.

**THE COURT:** GO BACK AND VISIT THAT. MR. LEE TELLS ME THAT IT'S IN THE RECORD AND THAT THE JUDGE RULED ON THE MERITS.

**MS. RECER:** IN STATE HABEAS? WELL, I DISAGREE WITH THAT IN TWO WAYS. ONE, THAT IT'S ABSOLUTELY NOT IN THE RECORD. I WOULD LIKE TO LOOK AT THE DIFFERENCE BETWEEN THE

TWO CLAIMS. THE CLAIM THAT WE HAVE IN FEDERAL COURT AS TO -- JUST A MOMENT HERE -- AS TO THE INEFFECTIVE ASSISTANCE AT PENALTY PHASE, IT SAYS AS FOLLOWS, FIRST OF ALL, THAT THE TRIAL COUNSEL NEGLECTED TO FILE A MOTION TO CONTINUE ON GROUNDS THAT THEY DON'T HAVE SUFFICIENT TIME TO PREPARE.

AT THE HEARING, JUDGE ANDERSON, RELYING ON MEMORY, SAID THAT I THOUGHT THAT THERE WAS A CONTINUANCE MOTION ON THOSE GROUNDS AND, ACTUALLY, THERE WASN'T. THERE WAS A CONTINUANCE MOTION ON COMPLETELY DIFFERENT GROUNDS THAT WAS DENIED, BUT THEY DID NOT SEEK ONE FOR MORE TIME IN THE LAST INSTANCE. THEY HAD DONE SO TWICE PREVIOUSLY, HOWEVER, AND MADE A RECORD OF WHAT THEY INTENDED TO DO.

AS TO THAT, THE -- IN FEDERAL HABEAS, WE'VE THOROUGHLY EXPANDED THAT WITH AFFIDAVITS FROM MR. HECKER BUT ALSO DEMONSTRATING HOW THOSE SIX MONTHS COULD HAVE BEEN USED DIFFERENTLY HAD THEY REQUESTED WHAT THEY NEEDED TO DO, TO DO THE INVESTIGATION. SECONDLY, TRIAL COUNSEL FAILED TO PREPARE FOR THE PENALTY PHASE AND AT STATE HABEAS, THE -- I WOULD REFER YOU TO THE SAME PLACE THAT MR. LEE REFERS YOU TO, AND THAT IS THAT THERE'S JUST A VERY CURSORY MENTION OF A FAILURE TO INVESTIGATE, AND IT'S A HEADING IN STATE HABEAS AT PAGE 38, IT SAYS, FAILURE TO CONDUCT A PROFESSIONAL EFFECTIVE INVESTIGATION, AND JUST CITES SOME CASE LAW, *WIGGINS*, WHICH I KNOW IS NOT ENOUGH TO STATE A CLAIM. IF THAT WERE TRUE, THEN, MY JOB WOULD BE REAL EASY IF ALL WE HAD TO DO WAS SAY *WIGGINS*

AND WE HAD A CLAIM.

THE PREPARATION OF DEFENSE COUNSEL FOR PENALTY PHASE CONSISTS OF ATTEMPTS TO GET EMPLOYMENT, TWO EMPLOYMENT RECORDS, AND TWO MEDICAL RECORDS, SO THEY DIDN'T ACTUALLY GET THEM. THEY JUST SENT -- FAXED OFF A LETTER ASKING FOR THEM. AND THAT WAS IT. AND THEN THEY RUSHED AROUND AND PUT ON LAY WITNESSES WHO HAPPENED TO SHOW UP IN THE HALLWAY. AND THAT WAS -- THAT WAS WHAT WAS ALLEGED. THEY -- THERE'S NO ALLEGATION IN STATE HABEAS OF WHAT THE STANDARD WAS. THERE'S NO ALLEGATION IN STATE HABEAS OF HOW -- WHAT WOULD HAVE BEEN DIFFERENT, AS MR. LEE SAID A LITTLE WHILE AGO, THE PREJUDICE PIECE WAS ENTIRELY MISSING, AND THAT'S DUE TO INEFFECTIVENESS, THAT'S DUE TO A FAILURE TO DEVELOP THE PREJUDICE, TO ANSWER THE QUESTIONS, SO WHAT, HOW WOULD IT HAVE BEEN MADE A DIFFERENCE IF WE WOULD HAVE DONE WHAT THE ABA GUIDELINES REQUIRE YOU TO DO? WHAT WOULD HAVE BEEN DIFFERENT?

WHAT WE'VE DONE IS LIKE A SCIENCE EXPERIMENT. WE'VE DONE THOSE THINGS AND HERE, HERE IT IS, THIS IS HOW IT WOULD HAVE BEEN DIFFERENT. THEY COULDN'T DO THAT IN STATE HABEAS AND DIDN'T ALLEGE PREJUDICE, AND THE STATE HAS, EVER SINCE THIS DOCUMENT WAS FILED, COMPLAINED AND POINTED TO COURTS THAT HE DIDN'T ALLEGE PREJUDICE, AND NOW WANTS TO SAY THIS WAS A THOROUGH CLAIM THAT THOROUGHLY ALLEGED PREJUDICE WAS HEARD ON THE MERITS. THAT'S NOT THE CASE, YOUR HONOR.

SECONDLY, THE -- OR, THIRDLY, THE COUNSEL -- THERE'S

AN ISSUE THAT THE COUNSEL FAILED TO DEVELOP DOCUMENTS REGARDING MR. WESSINGER'S LIFE HISTORY. THERE WERE NO DOCUMENTS COLLECTED OR PROVIDED TO EXPERTS REGARDING HIS LIFE HISTORY AT TRIAL. IN STATE HABEAS THERE WERE A FEW DOCUMENTS THAT COUNSEL COULD GET. ONE, MOST NOTABLY, THE CRIMINAL PROSECUTION OF THE YOUNG MAN WHO BEAT MR. WESSINGER WITH THE HANDLE OF A GARDEN IMPLEMENT OVER HIS HEAD, SO HE HAD TO GET STITCHES, THAT DEMONSTRATES A HEAD INJURY. THAT RECORD WAS EASY TO GET, THAT STATE HABEAS COUNSEL GOT IT WITHOUT A MITIGATION SPECIALIST, WITHOUT AN INVESTIGATOR. TRIAL COUNSEL COULD HAVE GOTTEN THAT AS WELL, SO THAT'S THE ONE RECORD THAT WAS PRESENTED IN STATE HABEAS.

IN FEDERAL COURT, HOWEVER, WE'VE DONE EXTENSIVE RECORD COLLECTION OF BIRTH RECORDS, DEATH RECORDS, MEDICAL RECORDS OF NOT ONLY MR. WESSINGER, BUT EXTENDED FAMILY. WE'VE DONE COURTHOUSE SEARCHES, CRIMINAL RECORDS OF NOT ONLY MR. WESSINGER AND HIS FAMILY, BUT EVEN ON THE CULPABILITY SIDE OF WITNESSES THAT SOME OF THOSE INCENTIVIZED WITNESSES THAT TESTIFIED AT CULPABILITY PHASE, AND WE'VE DONE A FULL MULTI-GENERATIONAL SOCIAL HISTORY AND COLLECTED THOSE DOCUMENTS, AND IT SHOWS A COMPLETELY DIFFERENT PICTURE.

THE FIFTH CLAIM IN FEDERAL COURT IS THAT TRIAL COUNSEL FAILED TO CARRY OUT A COMPREHENSIVE INVESTIGATION OF THE SOCIAL HISTORY AND MET THE WITNESSES JUST FOR A FEW MINUTES. IN STATE HABEAS THE CLAIM WAS SIMPLY THAT THERE WAS

A FAILURE TO PREPARE THE WITNESSES, HE JUST MET THEM IN THE HALLWAY. IN FEDERAL COURT, THIS WAS GREATLY EXPANDED. MR. WESSINGER PRESENTED NEW NEUROPSYCHOLOGICAL TESTING, PSYCHIATRIC EVALUATIONS, SCHOOL RECORDS, EVIDENCE FROM WITNESSES REGARDING LOW INTELLECTUAL FUNCTIONING, SIGNIFICANT EVIDENCE OF PHYSICAL AND EMOTIONAL ABUSE, NEUROLOGICAL -- NEUROPSYCHOLOGICAL -- EXCUSE ME -- AND PSYCHIATRIC EVALUATIONS CONDUCTED IN FEDERAL HABEAS DISCOVER THAT MR. WESSINGER SUFFERS FROM SIGNIFICANT PSYCHO MOTOR IMPAIRMENT, HAS RIGHT HEMISPHERE ABNORMALITY, AFFECTING SUBJECTIVE EXPERIENCE IN ACADEMIC ABILITY, HAS DEFICITS INDICATING POSSIBILITY OF FAS, HAS DIFFICULTY IN PICKING UP ON SOCIAL CUES, HAS A FAMILY HISTORY OF NEUROLOGIC PSYCHIATRIC AND COGNITIVE IMPAIRMENTS, INCLUDING SEIZURE DISORDER, MENTAL RETARDATION, ALCOHOL, DRUG ADDICTION, AND TRAUMA.

ALL OF THAT WAS DEVELOPED IN THE EXTENSIVE SOCIAL HISTORY THAT WAS PRESENTED IN FEDERAL HABEAS. NOW, THE REST OF THE CLAIMS IN FEDERAL HABEAS WERE NOWHERE MENTIONED IN STATE HABEAS. FAILURE TO PRESENT EVIDENCE OF LOW-LEVEL FUNCTIONING, NOT IN STATE HABEAS, NEVER MENTIONED BY THE COMMISSIONER, NEVER MENTIONED BY JUDGE ANDERSON. POINT 7, TRIAL COUNSEL'S OPENING STATEMENT WAS INEFFECTIVE. THAT WAS MENTIONED IN STATE HABEAS BUT NOT ADDRESSED BY THE COMMISSIONER OR THE -- EITHER THE STATE OR FEDERAL COURTS. EIGHT, TRIAL COUNSEL FAILED TO PRESENT EVIDENCE OF MR.

WESSINGER'S IMPAIRED MENTAL STATUS, COMPLETELY UNEXHAUSTED, NEVER MENTIONED IN STATE HABEAS. COMMISSIONER DOESN'T MENTION IT, JUDGE ANDERSON DOESN'T MENTION IT. TRIAL COUNSEL FAILED TO REQUEST AND SECURE FUNDING FOR EXPERTS; NOT MENTIONED IN STATE HABEAS, NOT MENTIONED BY THE COMMISSIONER OR BY JUDGE ANDERSON. POINT 10, TRIAL COUNSEL FAILED TO SECURE FUNDING FOR AND THEN OBTAIN PSYCHOPHARMACOLOGIST TO TALK ABOUT ADDICTION, AND THAT'S NOT MENTIONED IN STATE HABEAS, NOT MENTIONED BY THE COMMISSIONER, NOT MENTIONED BY JUDGE ANDERSON. ELEVEN, THE TRIAL COUNSEL FAILED TO USE AND PREPARE RELIABLE EXPERT WITNESSES. THAT'S ONE THAT WE DID HAVE IN STATE HABEAS, BUT IT WAS NOT DEVELOPED WITH THE PREJUDICE PIECE OF SHOWING WHAT WOULD HAPPEN IF YOU DID PROPERLY PREPARE AN EXPERT, WHAT WOULD HAPPEN IF YOU DID HAVE SOMEONE WHO WAS FUNDED TO DO THE NECESSARY TESTING, INSTEAD OF THIS VERY BRIEF LITTLE INTERVIEW, AND HAD ALL THE RECORDS AND HAD ACCESS TO THE INFORMATION, HOW WOULD IT TURN OUT DIFFERENTLY?

WE'VE NOW RUN THAT EXPERIMENT AND DEMONSTRATED THE PREJUDICE PRONG. IN STATE HABEAS, THE ISSUE THAT THE STATE RAISED AND THEY COMPLAINED ABOUT IN THEIR PLEADINGS WAS THAT THERE WAS NO PREJUDICE. IN FACT, MR. LEE MENTIONED IT JUST A WHILE AGO, THERE WAS NO PREJUDICE RAISED; YES, THAT'S EXACTLY THE PROBLEM, BECAUSE HE COULDN'T DEVELOP THE PREJUDICE, COULDN'T ALLEGE THE PREJUDICE, AND THAT'S WHY HE WAS INEFFECTIVE. AND SO THAT'S WHY THE CLAIM LOSES, WHEN -- AS IT

WAS STATED IN STATE HABEAS, AND, YOU KNOW, WE DO MAINTAIN THAT ON THE FACE OF THE STATE HABEAS CLAIM, IT DID STATE A CLAIM THAT IF IT WERE TRUE, IT WOULD MERIT RELIEF. IT IS A VERY DIFFERENT CLAIM, BUT THERE WAS A CLAIM THERE. IT'S MOSTLY A CLAIM OF FAILURE TO PRESENT, NOT FAILURE TO INVESTIGATE AND DEVELOP. BUT THERE WAS A CLAIM, AND IT SHOULD HAVE BEEN HEARD, AND IT SHOULDN'T HAVE BEEN DISMISSED FOR FAILURE TO STATE A CLAIM. BUT IT'S NOT THE SAME CLAIM WE'RE TALKING ABOUT TODAY, JUST BECAUSE WE -- HE CITED *WIGGINS*, WE CITE *WIGGINS*, DOESN'T MAKE IT THE SAME CLAIM.

**THE COURT:** WELL, ARE YOU JUST SANDBAGGING HIM BY RUNNING OVER TO FEDERAL COURT WITH NEW CLAIMS?

**MS. RECER:** ABSOLUTELY NOT. MR. GISLESON DID EVERYTHING HE COULD TO DEVELOP THOSE CLAIMS. HE COMPLAINED ABOUT IT AND COMPLAINED ABOUT IT AND COMPLAINED ABOUT IT, ASKED FOR EXPERTS, AND WHAT WAS HAPPENING AT THE TIME IN LOUISIANA, YOUR HONOR, IS IMPORTANT TO UNDERSTAND. THERE WERE ONLY 16 DEFENDANTS ON DEATH ROW IN LOUISIANA, WHO HAVE NOT RECEIVED STATE HABEAS COUNSEL FUNDED BY THE STATE POST-CONVICTION AGENCY, CPCPL. DURING THAT WINDOW OF TIME, WHERE THERE WAS THIS GROUP OF INMATES WHO WERE FALLING BETWEEN THE CRACKS AND NOT GETTING STATE HABEAS COUNSEL, THE IDB WAS GOING TO JUDGES AND GETTING -- AND MAKING THIS KNOWN, SOMETIMES RECRUITING PRO BONO COUNSEL, THE FEDERAL COURTS WERE INVOLVED, GINGER BERRIGAN WAS INVOLVED, JUDGE BERRIGAN IN

RECRUITING PRO BONO COUNSEL. THAT'S HOW MR. GISLESON GOT INVOLVED. BUT THERE WAS A HUGE CRISIS IN REPRESENTATION. EVERY SINGLE ONE OF THOSE OTHER INMATES, THE OTHER 15, NONE OF THEM HAVE GOTTEN TO THE END OF THE PROCESS WITHOUT AN EVIDENTIARY HEARING IN EITHER STATE OR FEDERAL COURT. IF THIS HAPPENS TO MR. WESSINGER, HE WILL BE THE ONLY ONE. HE WILL BE THE ONLY ONE WHO WAS NOT PROVIDED COUNSEL IN STATE HABEAS, HAD PRO BONO COUNSEL WHO DID THE BEST HE COULD, BUT FAILED AND NEVER GOT A HEARING TO LOOK INTO WHAT ISSUES MIGHT HAVE BEEN THERE. PARTICULARLY CONSIDERED -- IN CONSIDERING THAT, IN LIGHT OF THE FAILURES AT TRIAL, IT'S FRIGHTENING TO SEE THAT MR. WESSINGER COULD GET ALL THE WAY TO THE POINT OF AN EXECUTION WITHOUT ANYONE HAVING ACTUALLY LOOKED AT HIS REAL LIFE HISTORY AND ACTUALLY DONE SOME PROPER INVESTIGATION.

I'D LIKE TO ADDRESS MR. LEE'S POINT ABOUT EXHAUSTION. HE SAYS IT'S THE SAME CLAIM, IT'S A CLAIM THAT WAS RAISED AND THAT YOU'RE JUST SANDBAGGING, AND THAT IS ABSOLUTELY NOT TRUE. THE -- I'VE ALREADY ARTICULATED THE DIFFERENT FACTS. UNDER THE LAW IN THE FIFTH CIRCUIT, THAT'S CLEARLY A LACK OF EXHAUSTION -- AND IF YOU WOULD GIVE ME JUST A MOMENT.

BUT BEGINNING ON PAGE 9 OF DOCUMENT 152, WHICH IS OUR REPLY TO RESPONDENT'S MEMO IN OPPOSITION TO OUR 59(E) MOTION, WE SET OUT THE LAW IN THE FIFTH CIRCUIT FOR FAILURE TO EXHAUST. AND THE EXHAUSTION DOCUMENT IS WELL-DEFINED. COURTS

HAVE FOUND RELATIVELY MINOR ADDITIONS TO THE EVIDENCE -- TO THE EVIDENCE PRESENTED IN SUPPORT OF A CLAIM FUNDAMENTALLY ALTER THE CLAIM ITSELF. AND I WOULD CITE THE COURT *MCHENRY VERSUS COLLINS*, FIFTH CIRCUIT CASE, 12 F.3D 1097. IT'S A 1993 CASE.

**THE REPORTER:** CAN YOU SLOW DOWN, PLEASE?

**MS. RECER:** YES, MA'AM. I APOLOGIZE. *GRAHAM VERSUS JOHNSON*, 94 F.3D 958, WHICH IS A 1996 FIFTH CIRCUIT CASE. THE COURT HELD THAT *GRAHAM* HAD NOT EXHAUSTED ITS STATE REMEDIES WHEN HE PRESENTED FOR THE FIRST TIME NINE NEW EXHIBITS OF INEFFECTIVE ASSISTANCE OF COUNSEL.

IN *BROWN VERSUS ESTELLE*, 701 F.2D 495, JUST THREE NEW AFFIDAVITS IN FEDERAL COURT, AND THERE WAS A FINDING THAT IT WAS UNEXHAUSTED. IN *SMITH VERSUS QUARTERMAN*, FIFTH CIRCUIT, 2008, 515 F.3D 392, SMITH INTRODUCED FOR THE FIRST TIME IN FEDERAL HABEAS AFFIDAVITS FROM FAMILY MEMBERS THAT WERE NOT CONTACTED DURING THE TRIAL INVESTIGATION FROM A PSYCHOLOGIST AND FROM THE INVESTIGATOR WHO HAD BEEN RETAINED BY STATE HABEAS COUNSEL. THAT'S IT AND THE FIFTH CIRCUIT FOUND THAT THAT RENDERED HIS CLAIM PROCEDURALLY BARRED FOR FAILURE TO EXHAUST. SIMILARLY, WITH *MOORE VERSUS QUARTERMAN*, 2009, FIFTH CIRCUIT, 491 F.3D 213, AND WITH *KUNKLE VERSUS DRETKE*, 352 F.3RD 980, 2003.

IN EACH OF THESE INSTANCES, THE DEFENDANT OR THE PETITIONER WAS FOUND TO HAVE UNEXHAUSTED THE CLAIM AND THE

STATE TOOK THE POSITION THAT THE CLAIM WAS UNEXHAUSTED WHEN JUST A FEW AFFIDAVITS OR ADDITIONAL FACTS WERE ALLEGED. THE STATE OF LOUISIANA TAKES THAT POSITION REGULARLY. THE STATE OF LOUISIANA TOOK THAT POSITION IN THIS CASE, ALLEGING THAT IT WAS UNEXHAUSTED, WHEN THAT WOULD HAVE BEEN A WAY TO PRECLUDE FEDERAL REVIEW OF THE CLAIM.

NOW THE STATE TAKES THE POSITION THAT IT WAS SO WELL-DEVELOPED AND THAT IT'S EXACTLY THE SAME CLAIM. I THINK ANYONE CAN COMPARE THE TWO PETITIONS AND SEE IT'S NOWHERE NEAR THE SAME CLAIM, BUT THE THRESHOLD IN THE FIFTH CIRCUIT, THE THRESHOLD FOR FAILURE TO EXHAUST, IS ONE THAT'S BEEN MADE VERY DIFFICULT FOR DEFENDANTS, AND IN THIS CASE, THERE IS A COMPLETE FAILURE TO EXHAUST AND MUCH MORE THAN THE THREE OR FOUR AFFIDAVITS IN ALL OF THE -- THOSE CASES THAT I CITED.

IN FACT, JUST THE NEW MENTAL-HEALTH EVIDENCE ALONE, JUST THE NEUROPSYCHOLOGICAL AND PSYCHIATRIC EVALUATIONS CONDUCTED IN FEDERAL HABEAS WHICH SHOWED THAT HE SUFFERED FROM NEUROPSYCHOLOGICAL IMPAIRMENT AND ABNORMALITIES THAT I'VE ALREADY MENTIONED, SEIZURE DISORDER, COGNITIVE IMPAIRMENTS, ET CETERA, THAT ALONE IS ENOUGH TO ESTABLISH UNDER THE FIFTH CIRCUIT CASE LAW FOR THE STANDARD OF REVIEW ON EXHAUSTION, EXHAUSTION DOCTRINE, THAT IS MATERIAL NEW EVIDENCE BEFORE THE FEDERAL COURT WHICH FUNDAMENTALLY ALTER THE *WIGGINS*' CLAIM.

THAT BY ITSELF, AND I WOULD REFER YOU TO *DEMAREST* -- I BELIEVE IT'S VERSUS *DRETKE*, F.3RD 922, FIFTH CIRCUIT. SO

THIS CLAIM CLEARLY IS UNEXHAUSTED UNDER THE FIFTH CIRCUIT EXHAUSTION DOCTRINE. IT IS A COMPLETELY DIFFERENT CLAIM. AND SO THEN THE QUESTION IS LOOKING AT *MARTINEZ*, WHETHER THE INEFFECTIVENESS WAS A BAR -- WHETHER THE INEFFECTIVENESS GETS US AROUND THE PROCEDURAL BAR OF FAILURE TO EXHAUST.

IN LIGHT OF THE FACT THAT LOUISIANA WAS NOT PROVIDING ANY FUNDING, NOT ONLY HAS MR. LEE SAID THROUGH THE COURT, AND I WOULD -- I WOULD ALSO INCIDENTALLY TAKE ISSUE WITH THE NOTION THAT THE EAST BATON ROUGE PARISH DISTRICT ATTORNEY'S OFFICE DID NOT OPPOSE FUNDING, THEY DID. I COULDN'T QUICKLY FIND THE RECORD CITE BUT I BELIEVE THAT IT'S IN OUR EARLIER PLEADINGS, OR I CAN PROVIDE IT IN POST-HEARING BRIEFINGS, THE FUNDING WAS OPPOSED AND THERE WAS A HEARING IN THIS CASE IN WHICH THE HEAD OF THE IDB APPEARED IN COURT AND EXPLAINED TO THE JUDGE THE FUNDING CRISIS, THE FACT THAT THE LEGISLATURE HAD ISSUED AN UNFUNDED MANDATE, AND THIS HISTORY IS SET FORTH IN OUR MOTION REGARDING EQUITABLE TOLLING AND TIMELINESS IN THIS COURT, WHERE THIS COURT RULED ON, THAT THERE WAS A COMPLETE FUNDING CRISIS, AND IT WAS NOT UNNOTICED.

THERE WERE ACTUAL HEARINGS WHERE THE IDB CAME TO JUDGE ANDERSON'S COURTROOM AND HAD HEARINGS ABOUT THE FUNDING CRISIS AND THE FACT THAT THE STATE HAD THIS UNFUNDED MANDATE AND COULD NOT PROVIDE MR. WESSINGER WITH COUNSEL. SO IT WAS NOT A SECRET AND IT WAS NOT SANDBAGGING AND IT WAS CERTAINLY NOT OF HIS CREATION, MR. WESSINGER'S NOR HIS DEFENSE. IT WAS

A SYSTEMIC STATEWIDE PROBLEM THAT AFFECTED 16 INMATES, 15 OF WHOM HAVE NOW RECEIVED EVIDENTIARY HEARINGS TO FURTHER DEVELOP THEIR CLAIMS IN EITHER STATE OR FEDERAL COURT OR BOTH.

**THE COURT:** ALL RIGHT. THANK YOU.

**MR. LEE:** CAN I RESPOND QUICKLY?

**THE COURT:** YES.

**MR. LEE:** AND JUST FOR THE RECORD, IF THERE WAS A FUNDING HEARING IN THIS CASE, I STAND CORRECTED. I MEAN, OBVIOUSLY, THE RECORD WOULD REFLECT THAT. I KNOW I DID PLENTY OF THOSE IN THE *JIMMY RAY WILLIAMS*' CASE. I WASN'T SURE IF WE HAD ONE OF THOSE IN THIS CASE. BUT I DID WANT TO CORRECT SOMETHING ABOUT WHAT OCCURRED AT THE PENALTY PHASE, YOUR HONOR. GOING BACK TO THE TRIAL, YOUR HONOR CATALOGED SOME OF THE PEOPLE THAT TESTIFIED ON MR. WESSINGER'S BEHALF, THEY HAD 17 WITNESSES IN MITIGATION, 17 MITIGATION WITNESSES. THEY INCLUDED FORMER EMPLOYERS, MOTHERS OF HIS CHILDREN, HIS BROTHER, A PREACHER, HIS SISTER, HIS AUNT, A COUSIN, A PSYCHOLOGIST, A PSYCHIATRIST, A COMMUTATION EXPERT AND A FRIEND, AND IF I'M NOT MISTAKEN, ONE OF THOSE LADIES WAS THE WIFE OF A FORMER LOUISIANA SUPREME COURT CHIEF JUSTICE. THEY PRESENTED A PENALTY PHASE DEFENSE. NOW, ON THE INEFFECTIVE CLAIM, WHEN YOU BRING UP THE INEFFECTIVE AND SAY TRIAL COUNSEL WAS INEFFECTIVE AT THE PENALTY PHASE, YOU HAVE TO SHOW THAT THEY DID SOMETHING WRONG AND THAT WHAT THEY DID WAS SO WRONG THAT IT DEPRIVED MR. WESSINGER OF A FAIR TRIAL. MR.

WESSINGER, IN THIS CASE, GOT A FAIR TRIAL. HE WANTED TO BRING UP NEW ALLEGATIONS ON POST-CONVICTION AND FILED A PLEADING SEEKING TO DO THAT, AND THE STATE DISTRICT JUDGE REVIEWED THAT AND SAID, YOU HAVEN'T MADE ENOUGH OF A SHOWING UNDER *STRICKLAND* TO QUALIFY TO HAVE THAT HEARING. ALL OF THE WITNESSES THAT THEY ARE TALKING ABOUT, ALL OF THE DIFFERENT EXPERTS THAT THEY WOULD LIKE TO PRESENT NOW, THAT'S ALL JUST A DIFFERENT TRIAL. FEDERAL HABEAS AND STATE POST-CONVICTION IS NOT ABOUT GETTING A NEW TRIAL. IT'S NOT ABOUT GETTING A NEW PENALTY PHASE. IT'S NOT ABOUT SAYING ALL THE THINGS THAT YOU FORGOT TO SAY AT TRIAL. IT IS BASED ON WHETHER OR NOT THE STATE TRIAL WAS PREJUDICIAL TO THE DEFENDANT, WHETHER OR NOT HE GOT A FAIR TRIAL, WHETHER OR NOT HIS ATTORNEYS WERE SO BAD THAT UNDER *STRICKLAND*, THEY WERE SO BAD IT WAS AS IF HE HAD NO ATTORNEY AT ALL. HERE HE HAD ATTORNEYS. NOW, AGAIN, WE'RE BACK TO ARGUING OVER WHETHER OR NOT YOU LIKED WHAT WAS PRESENTED AT TRIAL AND WHETHER OR NOT YOU WOULD HAVE DONE IT DIFFERENTLY.

**THE COURT:** THE QUESTION IS WHETHER OR NOT THOSE FOLKS WERE EFFECTIVE IN A CONSTITUTIONAL SENSE.

**MR. LEE:** YES, SIR.

**THE COURT:** SO THAT'S WHERE WE ARE AND THAT'S WHAT I HAVE TO DETERMINE --

**MR. LEE:** YES, SIR.

**THE COURT:** -- IN THIS MATTER.

**MR. LEE:** AND, YOUR HONOR, I SUBMIT THAT YOU'VE ALREADY DETERMINED THAT AND SIMPLY SAYING THAT NOW THEY WOULD LIKE TO PRESENT A DIFFERENT PACKAGE OF WITNESSES DOESN'T REACH THE CONSTITUTIONAL STANDARD. IT JUST SAYS WE WOULD DO IT DIFFERENTLY TODAY IF WE HAD UNLIMITED MONEY, UNLIMITED TIME, UNLIMITED ATTORNEYS, AND THAT'S NOT THE CONSTITUTIONAL STANDARD.

**THE COURT:** THAT'S NOT WHAT THEY'RE ASKING FOR, THOUGH, IN MY -- ALL RIGHT. ANYTHING ELSE? THE OTHER ISSUES, I THINK, I CAN ADEQUATELY DETERMINE FROM, YOU KNOW, THE BRIEFING IN THIS CASE. NOW --

**MS. HUDSMITH:** WHAT ABOUT THE MOTION TO STAY?

**THE COURT:** TO STAY. I'M GOING TO TAKE THIS MATTER UNDER ADVISEMENT AND I WILL GRANT THE MOTION TO STAY PENDING THAT, IF YOU -- I DON'T KNOW IF YOU SENT IN AN ORDER FOR ME TO SIGN; IF NOT, WOULD YOU DO SO?

**MS. HUDSMITH:** YOUR HONOR, THERE IS AN ORDER, AND I THINK I E-MAILED IT TO YOU, BUT I WILL DO IT AGAIN, A MOTION TO STAY, BECAUSE WE NEED TO MAKE SURE THAT WE GET THAT TO THE RIGHT FOLKS AT THE PRISON AND EVERYWHERE ELSE. MR. GISLESON HAS BEEN CONTACTED BY THE PRISON. THEY'RE VERY MUCH INTERESTED IN KNOWING WHAT YOUR DECISION IS.

**THE COURT:** WELL, I WILL GET THAT, I WILL SIGN THAT. DO WE HAVE THAT?

**THE CLERK:** I'M LOOKING.

**THE COURT:** HOLD ON A SECOND.

**MS. HUDSMITH:** I THINK I E-MAILED IN WORD PERFECT AS WELL AS FILING IT.

**THE COURT:** LOOK AT THE MOTION TO -- WAS IT ATTACHED TO YOUR MOTION?

**THE CLERK:** I GOT IT.

**THE COURT:** ALL RIGHT. JUST NOTE FOR THE RECORD, MS. THOMPSON, IF I HAVEN'T DONE IT BEFORE, THAT THE DEFENDANT, MR. WESSINGER, HAS BEEN PRESENT THROUGHOUT THIS ORAL ARGUMENT.

**MS. HUDSMITH:** IF THERE IS ANYTHING YOU NEED CLARIFICATION ON, ANY POST-HEARING, ANYTHING, BEFORE YOU MAKE YOUR DECISION ABOUT GRANTING US WHAT WE'RE HOPING IS A HEARING ON ALL OF THIS, PLEASE LET US KNOW.

**THE COURT:** WELL, IF I NEED ANY FURTHER CLARIFICATION ON ANY OF THE ISSUES, I WON'T HESITATE TO CONTACT COUNSEL.

**MS. HUDSMITH:** THANK YOU, YOUR HONOR.

**THE COURT:** ALL RIGHT. MS. EDWARDS, I HAVE SIGNED THIS, STAYING THESE PROCEEDINGS UNTIL FURTHER NOTICE. WOULD YOU MAKE SURE THAT ALL PARTIES AND THE DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS RECEIVES A COPY AS WELL?

**THE CLERK:** YES, SIR.

**THE COURT:** ALL RIGHT. WE ARE IN RECESS. .

THANK YOU, COUNSEL.

LET ME ASK YOU TO DO THIS, BEFORE -- FOR SECURITY

REASONS, LET'S TAKE PEOPLE DOWN, SAY, 10 OR 15 AT A TIME SO WE DON'T HAVE A -- LET'S JUST START WITH THIS SIDE AND TAKE 20 PEOPLE FOR EACH ELEVATOR, AND THEN WE'LL WORK EVERYBODY ELSE OUT.

**(WHEREUPON, THIS MATTER WAS CONCLUDED.)**

C E R T I F I C A T E

I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD OF THE PROCEEDINGS IN THE ABOVE-ENTITLED NUMBERED MATTER.

Shannon Thompson

SHANNON L. THOMPSON, CCR
OFFICIAL COURT REPORTER

Case 3:04-cv-00637-JWD-EWD Document 157 06/25/12 Page 68 of 83


0

04-25-2012 [1] 2/1
04-637 [2] 1/5 2/1

1

10 [2] 57/6 67/1
1097 [1] 60/4
12 [1] 60/4
13 [1] 43/25
1309 [1] 31/22
1319 [1] 43/25
132 [1] 31/21
1320 [1] 44/1
15 [3] 59/3 63/1 67/1
152 [1] 59/22
16 [2] 58/18 63/1
17 [2] 63/15 63/15
1993 [1] 60/4
1996 [1] 60/8
1997 [2] 28/21 35/7

2

20 [1] 67/2
2003 [3] 15/11 41/11 60/23
2008 [1] 60/15
2009 [1] 60/22
2012 [3] 1/7 2/1 31/23
21 [1] 50/14
213 [1] 60/22
225 [1] 1/24
2254 [2] 11/4 24/18
25 [1] 1/7
25-PAGE [1] 5/25

3

352 [1] 60/23
3567 [1] 1/24
37 [1] 41/6
38 [2] 41/8 53/21
389-3567 [1] 1/24
392 [1] 60/15

4

491 [1] 60/22
495 [1] 60/12

5

515 [1] 60/15
59 [10] 5/11 5/12 24/3 24/3 24/10 24/10 27/17 27/17 35/24 59/23

6

637 [2] 1/5 2/1

7

701 [1] 60/12
70801 [1] 1/23
77-PAGE [1] 23/4
777 [1] 1/23

9

922 [1] 61/25
928 [24] 3/6 8/19 8/20 8/23 11/2 11/22 12/7 12/7 14/2 14/25 15/1 17/13 18/1 18/15 22/14 22/15 22/16 22/17 22/21 23/18 23/19 24/1 24/9 34/16
929 [6] 3/7 15/4 22/16 22/18 24/17 27/4
94 [1] 60/8
958 [1] 60/8
980 [1] 60/23

A

ABA [5] 28/15 28/20 35/5 51/15 54/15
ABILITY [2] 38/13 56/11
ABLE [5] 19/24 27/19 33/9 34/23 44/21
ABNORMALITIES [1] 61/18
ABNORMALITY [1] 56/10
ABOUT [52] 5/18 15/13 15/19 19/3 20/14 21/12 22/15 22/24 22/24 25/17 26/9 26/12 26/18 27/22 29/4 29/12 29/14 29/17 29/18 31/2 31/19 31/21 31/22 33/17 34/13 34/20 36/25 39/5 39/13 39/14 41/12 41/15 42/13 47/19 48/12 49/13 52/10 57/7 57/20 58/9 58/15 58/15 58/15 59/15 62/21 63/12 64/6 64/9 64/9 64/10 65/12 66/12
ABOVE [1] 67/8
ABOVE-ENTITLED [1] 67/8
ABSENT [1] 36/3
ABSOLUTELY [9] 28/13 29/16 29/25 32/4 36/5 50/7 52/24 58/13 59/18
ABUSE [7] 4/7 4/8 4/8 6/14 33/23 33/23 56/6
ACADEMIC [1] 56/11
ACCESS [1] 57/16
ACCORDANCE [1] 41/8
ACCORDING [1] 25/13
ACCURATE [3] 3/14 12/1 29/20
ACT [1] 8/16
ACTED [2] 21/14 22/1
ACTING [1] 24/22
ACTION [1] 1/4
ACTIVELY [1] 41/24
ACTIVITIES [1] 22/5
ACTUAL [2] 27/16 62/20
ACTUALLY [14] 10/13 11/21 25/4 26/21 26/24 33/13 34/25 48/3 48/9 49/24 53/8 54/4 59/13 59/14
ADAPTIVE [2] 49/23 49/23
ADD [1] 16/17
ADDICTION [3] 4/15 56/15 57/8
ADDITION [2] 22/20 44/8
ADDITIONAL [5] 16/17 36/8 46/17 48/22 61/2
ADDITIONS [1] 60/1
ADDRESS [8] 3/17 3/19 5/9 11/9 20/7 31/24 32/2 59/15
ADDRESSED [6] 9/18 10/20 16/23 19/12 46/16 56/23
ADDRESSES [4] 25/17 25/18 35/4 35/4
ADEQUATE [4] 34/8 39/2 43/3 44/23
ADEQUATELY [4] 43/9 43/10 50/2 65/10
ADJUDICATED [1] 46/20
ADJUDICATION [3] 13/24 13/25 23/20
ADMIT [2] 24/11 29/2
ADMITTED [1] 24/1
ADVISEMENT [1] 65/14
AEDPA [1] 45/17
AFFECTED [1] 63/1
AFFECTING [1] 56/10
AFFIDAVIT [1] 27/16
AFFIDAVITS [19] 8/5 8/14 21/3 21/3 21/5 21/5 21/16 22/9 36/10 40/6 48/21 49/1 49/2 49/2 53/14 60/13 60/16 61/2 61/14
AFTER [4] 9/21 10/5 45/22 47/10
AFTERNOON [2] 2/15 3/2
AGAIN [6] 30/5 33/3 37/3 37/3 64/15 65/18
AGAINST [1] 40/14
AGENCY [1] 58/20
AGGRAVATOR [1] 30/13
AGO [2] 54/11 57/22
AGREE [2] 13/23 47/18
AGREED [2] 39/10 50/8
AGREEMENT [3] 26/11 26/12 33/18
AHEAD [1] 27/11
AL [1] 1/6
ALCOHOL [1] 56/14
ALL [78]
ALLEGATION [12] 11/24 26/10 31/14 42/3 42/15 42/16 42/16 43/7 45/4 45/4 54/9 54/10
ALLEGATIONS [8] 10/6 11/22 13/12 21/17 22/9 27/13 33/2 64/2
ALLEGE [8] 6/11 11/21 26/11 26/21 44/18 54/20 54/22 57/24
ALLEGED [14] 6/11 6/13 6/13 6/14 9/13 12/21 17/15 19/19 25/23 52/5 52/5 54/8 54/23 61/2
ALLEGING [2] 17/25 61/4
ALLOWED [1] 43/8
ALLOWING [1] 36/25
ALLOWS [1] 38/9
ALMOST [1] 10/10
ALONE [6] 23/6 35/23 35/24 43/10 61/15 61/20
ALONG [3] 2/13 5/20 46/11
ALREADY [7] 6/7 23/23 25/1 49/19 59/18 61/19 65/2
ALSO [18] 11/1 11/23 18/20 21/18 26/4 27/7 27/13 27/16 27/16 28/1 32/5 33/8 34/3 35/3 49/4 51/3 53/15 62/8
ALTER [4] 1/9 14/25 60/3 61/23
ALTOGETHER [1] 31/25
ALWAYS [5] 15/3 15/25 43/20 47/17 50/15
AM [2] 5/18 14/11
AMEND [1] 50/20
AMENDED [6] 5/23 9/13 9/21 9/21 33/15 37/9
AMENDMENT [1] 41/9
AMONG [3] 17/8 22/25 50/8
AMOUNT [4] 16/2 28/9 41/2 41/3
ANALYSIS [4] 12/13 13/13 17/21 26/5

## A

**ANDERSON [22]** 8/8 8/16 8/18 14/15 14/21 15/11 15/21 16/24 17/24 18/3 21/4 23/5 23/12 41/5 41/14 42/19 43/13 53/6 56/21 57/3 57/6 57/10
**ANDERSON'S [2]** 17/7 62/21
**ANOTHER [1]** 52/13
**ANSWER [8]** 12/17 15/23 15/24 16/21 16/22 23/15 47/25 54/13
**ANSWERED [6]** 6/18 9/22 12/18 12/20 14/1 15/23
**ANTICIPATING [1]** 52/8
**ANY [26]** 9/7 10/16 10/17 13/19 14/24 16/4 18/18 18/23 19/24 23/19 24/12 28/6 33/1 34/22 36/2 36/3 37/22 39/11 41/20 46/10 47/2 50/22 62/7 66/11 66/14 66/15
**ANYMORE [1]** 46/25
**ANYONE [4]** 29/15 49/22 59/13 61/9
**ANYTHING [10]** 3/12 4/2 20/1 23/22 40/13 41/25 43/10 65/9 66/10 66/11
**ANYTIME [1]** 45/8
**ANYWAY [2]** 17/20 17/25
**APART [1]** 8/23
**APOLOGIZE [1]** 60/7
**APPEAL [1]** 15/18
**APPEARANCES [1]** 2/11
**APPEARED [1]** 62/14
**APPELLATE [2]** 15/17 15/18
**APPLICATION [1]** 30/22
**APPLIED [1]** 3/21
**APPLIES [4]** 23/21 31/17 35/8 38/22
**APPLY [3]** 31/17 46/15 47/14
**APPLYING [1]** 46/23
**APPOINT [1]** 47/8
**APPOINTED [1]** 43/20
**APPOINTING [2]** 44/2 44/4
**APPROPRIATE [2]** 12/8 13/22
**APPROPRIATELY [2]** 3/22 47/8
**APPROXIMATELY [1]** 7/22
**APRIL [1]** 1/7
**ARE [55]** 2/9 2/21 3/21 7/20 9/3 9/9 11/9 11/12 11/22 12/1 14/1 14/6 14/9 15/14 21/1 24/19 24/20 27/12 28/1 28/1 28/8 29/11 29/14 29/14 30/23 31/12 33/18 34/13 34/15 34/17 34/17 34/17 36/9 36/9 40/18 43/17 43/22 44/9 44/18 44/19 45/15 45/18 46/5 46/18 46/19 47/1 48/21 49/14 50/11 52/10 52/11 58/11 64/6 64/22 66/23
**AREN'T [1]** 27/13
**ARGUE [1]** 24/6
**ARGUED [5]** 16/14 23/16 44/24 45/19 46/15
**ARGUES [1]** 45/8
**ARGUING [3]** 15/2 46/19 64/16
**ARGUMENT [7]** 3/6 3/16 14/9 15/1 17/13 34/8 66/9
**ARGUMENTS [1]** 15/6
**ARIZONA [1]** 16/18
**AROSE [1]** 15/14
**AROUND [5]** 14/20 35/13 40/17 54/6 62/5
**ARTICLES [1]** 3/6
**ARTICULATED [3]** 13/2 13/21 59/18
**AS [97]**
**ASK [5]** 8/1 13/5 51/21 51/23 66/25
**ASKED [13]** 8/3 18/10 18/11 18/11 19/4 19/5 27/20 28/4 30/1 39/9 48/25 51/22 58/16
**ASKING [6]** 29/4 29/17 30/6 37/17 54/5 65/8
**ASPECT [1]** 31/3
**ASSERT [1]** 44/23
**ASSERTED [2]** 12/11 34/24
**ASSERTING [1]** 44/5
**ASSESS [1]** 26/17
**ASSESSMENT [6]** 20/6 25/13 27/5 27/23 27/24 29/20
**ASSISTANCE [11]** 3/8 3/10 7/11 22/4 32/16 33/1 33/8 37/11 43/6 53/2 60/11
**ASSISTANTS [1]** 2/21
**ASSUME [1]** 17/19
**ASSUMED [2]** 17/15 26/1
**ASSUMES [1]** 51/24
**ASSUMING [1]** 17/24
**AT [120]**
**ATROCIOUS [1]** 30/8
**ATTACHED [8]** 11/25 21/2 21/2 24/25 25/5 26/22 36/9 66/4
**ATTACHMENTS [1]** 21/7
**ATTACK [1]** 41/17
**ATTEMPT [1]** 36/2
**ATTEMPTS [1]** 54/3
**ATTORNEY [5]** 2/5 19/25 20/3 31/8 64/15
**ATTORNEY'S [3]** 2/18 38/11 62/10
**ATTORNEYS [5]** 42/17 52/9 64/13 64/15 65/6
**AUNT [1]** 63/17
**AUTHORIZING [1]** 4/11
**AVAILABLE [2]** 29/8 38/16
**AWARE [4]** 19/22 26/24 26/25 27/2

## B

**BACK [16]** 15/12 17/12 19/2 22/15 31/12 35/7 39/3 39/15 39/20 43/16 46/2 46/18 46/19 52/20 63/13 64/16
**BAD [2]** 64/13 64/14
**BAR [14]** 32/18 35/13 36/20 38/1 38/9 38/10 42/25 43/3 43/21 44/13 44/13 44/24 62/4 62/5
**BARGAIN [2]** 11/18 11/22
**BARRED [4]** 3/12 39/2 43/2 60/20
**BARRIERS [1]** 51/18
**BARS [1]** 3/21
**BASED [5]** 12/12 29/10 42/3 45/16 64/11
**BASICALLY [3]** 3/5 3/13 17/14
**BASIS [2]** 19/15 32/25
**BATON [2]** 1/23 62/9
**BATTERIES [1]** 51/7
**BE [56]** 2/9 2/10 6/8 6/25 7/18 9/8 9/10 9/16 9/23 10/9 12/11 16/6 17/15 17/20 17/21 17/25 18/1 18/13 18/19 19/23 21/23 22/3 22/4 22/6 22/8 22/21 23/2 26/2 26/16 27/3 28/24 30/4 30/12 30/14 30/15 30/16 30/16 30/19 32/16 35/25 36/20 38/4 40/25 43/4 43/15 43/20 44/12 45/5 46/13 47/7 48/5 50/11 51/6 53/25 59/6 59/6
**BEAT [2]** 29/2 55/6
**BECAME [2]** 4/23 9/16
**BECAUSE [55]** 5/2 5/16 6/25 7/17 8/11 8/24 9/19 10/23 10/25 11/1 11/4 12/3 12/7 15/24 16/19 19/7 23/16 24/6 24/19 25/2 26/16 26/19 26/25 27/5 28/7 28/22 29/2 30/12 30/13 30/18 31/14 33/8 34/23 35/14 36/1 36/21 37/10 38/7 40/2 40/14 40/25 42/14 43/2 43/8 45/22 46/4 46/15 46/24 46/25 47/20 49/13 50/16 57/23 58/9 65/19
**BEEN [46]** 2/19 2/20 3/24 3/24 4/1 5/4 5/19 5/22 6/5 7/10 7/17 8/9 8/12 11/16 12/19 18/10 19/25 24/25 28/4 28/20 33/17 35/9 39/19 40/22 43/12 44/21 48/6 48/21 50/3 50/12 50/13 50/15 52/15 53/15 54/10 54/14 54/16 54/19 58/6 58/7 59/9 60/18 61/5 61/11 65/21 66/9
**BEFORE [19]** 3/17 3/23 3/24 14/20 15/15 18/8 21/9 21/15 21/16 21/16 27/22 33/17 40/6 41/5 50/24 61/22 66/8 66/11 66/25
**BEGAN [1]** 7/5
**BEGINNING [3]** 14/24 44/10 59/22
**BEGUN [1]** 2/8
**BEHALF [6]** 2/4 2/7 2/17 31/7 31/10 63/14
**BEHIND [3]** 36/24 36/25 37/23
**BEING [1]** 43/22
**BELIEVE [12]** 3/14 10/23 11/3 18/6 18/9 24/13 24/18 28/3 33/3 36/6 61/25 62/11
**BELIEVED [1]** 22/11
**BENEFIT [1]** 26/24
**BERRIGAN [2]** 58/25 58/25
**BEST [4]** 50/19 52/11 52/12 59/8
**BETTER [1]** 44/21
**BETWEEN [7]** 6/15 16/20 32/3 39/5 44/4 52/25 58/21

**B**

**BIGGER [1]** 48/4
**BIOPSYCHOSOCIAL [2]** 28/19 50/12
**BIRTH [1]** 55/14
**BIT [2]** 26/5 38/20
**BLED [1]** 18/8
**BOILED [1]** 42/19
**BONO [4]** 32/25 58/24 59/1 59/8
**BORN [2]** 4/5 4/5
**BOTH [6]** 24/2 28/7 35/23 44/25 48/1 63/3
**BOTHERED [1]** 29/15
**BOTTOM [1]** 42/1
**BRADY [14]** 1/6 3/10 3/11 5/13 11/6 13/15 15/15 15/19 16/16 23/2 25/6 25/18 26/17 36/19
**BRIEF [4]** 28/9 32/1 49/9 57/15
**BRIEFING [1]** 65/11
**BRIEFINGS [1]** 62/13
**BRIEFS [1]** 5/20
**BRING [9]** 37/1 40/17 41/8 41/19 45/3 45/18 46/4 63/22 64/1
**BRINGS [1]** 30/25
**BROTHER [1]** 63/17
**BROUGHT [8]** 2/10 15/17 39/16 40/1 40/2 41/14 42/16 45/19
**BROWN [3]** 23/10 25/12 60/12
**BURDEN [4]** 20/21 20/22 20/23 22/11
**BURL [2]** 1/6 2/1
**BUSINESS [1]** 48/11
**BUT [73]**

**C**

**CAIN [3]** 1/6 2/1 3/4
**CALLING [2]** 37/4 37/7
**CALLOWAY [1]** 14/19
**CALLS [1]** 25/2
**CAME [9]** 7/9 7/16 29/10 39/12 46/11 46/17 48/16 48/24 62/20
**CAN [25]** 2/22 14/5 15/9 17/21 20/14 21/14 21/23 22/7 22/8 22/10 22/22 35/15 38/4 42/1 42/1 43/5 45/9 45/13 47/2 50/20 60/6 61/9 62/12 63/5 65/10
**CAN'T [3]** 20/13 45/3 52/4
**CANNOT [2]** 12/11 36/20
**CAPITAL [10]** 7/25 28/16 28/23 30/13 32/9 35/8 50/8 50/10 50/22 51/17
**CARE [6]** 28/15 28/21 35/6 35/6 35/7 35/9
**CARING [1]** 49/12
**CARRY [1]** 55/23
**CASE [52]** 2/20 3/22 5/16 5/17 7/4 7/9 7/16 7/19 9/1 12/21 14/14 14/16 14/22 15/23 17/11 17/12 17/17 17/18 17/24 22/4 23/18 23/19 23/23 29/20 30/19 31/15 32/9 32/23 40/11 44/9 45/13 45/23 45/24 47/20 50/13 50/15 50/22 51/14 53/23 54/24 60/4 60/5 60/8 61/4 61/12 61/21 62/14 63/8 63/10 63/11 64/1 65/11
**CASES [5]** 35/8 44/8 50/11 50/22 61/14
**CATALOGED [1]** 63/13
**CAUSE [1]** 35/14
**CCR [2]** 1/21 67/11
**CEREBRAL [1]** 4/17
**CERTAIN [2]** 16/2 34/9
**CERTAINLY [3]** 36/13 51/22 62/24
**CERTIFY [1]** 67/7
**CETERA [1]** 61/20
**CHAMBERS [1]** 16/4
**CHANGE [2]** 46/18 47/11
**CHANGED [2]** 45/22 46/21
**CHANGES [2]** 5/14 5/15
**CHAPMAN [4]** 1/18 2/6 2/17 31/9
**CHARACTER [1]** 49/15
**CHARACTERIZATIONS [1]** 49/14
**CHIEF [1]** 63/20
**CHILD [1]** 4/4
**CHILDHOOD [1]** 4/9
**CHILDREN [2]** 51/3 63/16
**CHOICE [1]** 27/25
**CHOICES [2]** 8/13 8/15
**CHRISTINE [3]** 1/18 2/6 31/9
**CHRISTY [1]** 2/16
**CIRCUIT [12]** 17/18 59/19 59/24 60/4 60/8 60/15 60/19 60/22 61/10 61/21 61/25 62/1
**CIRCULAR [1]** 26/15
**CITE [6]** 17/12 17/17 31/20 58/9 60/3 62/11
**CITED [3]** 41/10 58/9 61/14
**CITES [2]** 17/23 53/23
**CIVIL [1]** 1/4
**CLAIM [134]**
**CLAIMS [65]** 3/11 3/11 8/19 8/25 9/3 9/3 9/9 9/18 10/5 10/8 10/17 10/19 10/21 11/8 12/4 13/3 13/8 13/10 15/12 15/13 15/14 15/15 15/16 15/16 15/17 16/12 16/14 16/15 16/16 16/16 16/22 16/24 18/17 24/7 24/16 24/18 25/18 32/3 32/16 32/19 34/13 34/15 34/15 34/17 35/18 35/19 36/19 36/20 37/10 37/25 38/3 39/1 41/14 42/5 42/25 43/8 44/11 46/1 46/21 47/21 53/1 56/18 58/12 58/14 63/3
**CLARENCE [1]** 23/10
**CLARIFICATION [2]** 66/11 66/15
**CLARIFY [1]** 14/23
**CLEAR [21]** 11/9 11/14 12/3 17/1 22/22 23/5 23/11 23/12 26/7 26/22 28/8 29/20 29/22 30/9 30/15 30/23 37/12 41/2 47/5 50/9 52/11
**CLEARLY [16]** 6/12 10/24 11/22 13/10 13/11 18/3 20/15 23/20 23/21 26/8 27/13 49/13 51/5 51/6 59/20 62/1
**CLIENT [1]** 52/10
**CLIENTS [3]** 29/12 29/14 29/14
**CLOSE [1]** 33/25
**CLOSES [1]** 46/7
**CODE [2]** 3/7 22/17
**COGNITIVE [9]** 4/6 4/9 4/14 4/20 5/6 6/12 29/12 56/13 61/19
**COLD [1]** 28/25
**COLEMAN [1]** 43/18
**COLLATERAL [8]** 28/10 32/17 32/19 44/3 44/4 44/8 44/12 49/22
**COLLECTED [5]** 28/7 29/7 36/8 55/3 55/20
**COLLECTION [1]** 55/14
**COLLINS [1]** 60/4
**COME [17]** 2/10 20/23 39/23 40/15 40/20 41/5 41/15 45/9 45/14 45/25 46/2 47/2 47/11 47/18 48/23 50/4 50/4
**COMES [1]** 50/20
**COMING [1]** 50/17
**COMITY [2]** 39/6 46/23
**COMMISSIONER [21]** 8/7 10/2 10/3 10/16 10/20 10/21 12/4 18/25 19/3 19/4 19/5 19/10 19/13 20/6 25/3 32/8 56/21 56/24 57/2 57/5 57/9
**COMMISSIONER'S [8]** 10/10 10/12 10/22 17/4 17/6 25/2 27/2 27/15
**COMMUTATION [2]** 48/13 63/18
**COMPARE [1]** 61/9
**COMPARING [2]** 38/5 48/5
**COMPARISON [3]** 32/5 48/1 48/2
**COMPLAINED [7]** 6/21 27/22 54/21 57/20 58/14 58/15 58/15
**COMPLAINING [2]** 33/16 37/9
**COMPLETE [6]** 28/18 29/22 30/24 30/25 61/13 62/19
**COMPLETELY [9]** 12/18 33/18 49/8 49/24 50/6 53/9 55/21 57/1 62/2
**COMPREHENSIVE [1]** 55/23
**CONCEDE [2]** 13/23 14/24
**CONCEDED [3]** 8/21 11/2 23/18
**CONCERNS [2]** 31/13 36/24
**CONCLUDE [2]** 12/9 13/18
**CONCLUDED [2]** 26/3 67/5
**CONCLUSION [4]** 11/7 12/10 43/13 45/7
**CONCLUSIONS [3]** 40/16 49/10 50/4
**CONCLUSORY [1]** 49/10
**CONDUCT [1]** 53/22
**CONDUCTED [3]** 15/21 56/8 61/17
**CONFERENCE [2]** 15/10 17/8
**CONFERENCES [1]** 16/4
**CONSIDER [5]** 8/25 19/18 20/8 21/5 21/12
**CONSIDERATION [2]** 24/23

## C

CONSIDERATION... [1] 26/8
CONSIDERED [6] 19/14 20/15 21/23 23/4 23/8 59/10
CONSIDERING [3] 18/17 22/20 59/10
CONSISTENT [1] 52/16
CONSISTS [1] 54/3
CONSTITUTIONAL [7] 43/19 45/17 46/9 46/10 64/20 65/4 65/6
CONSTITUTIONALLY [1] 41/9
CONTACT [1] 66/16
CONTACTED [2] 60/17 65/21
CONTAINS [1] 3/12
CONTEND [1] 45/21
CONTENTION [1] 50/8
CONTEXT [1] 5/10
CONTINUANCE [2] 53/7 53/9
CONTINUE [1] 53/4
CONTINUED [1] 4/23
CONTRAST [1] 44/1
CONTROL [1] 41/22
CONVICTION [8] 4/3 15/14 39/23 41/24 46/5 58/20 64/2 64/8
COOPERATION [1] 11/19
COPY [1] 66/21
CORRECT [4] 6/22 30/3 63/11 67/7
CORRECTED [1] 63/8
CORRECTIONS [1] 66/21
CORRECTLY [1] 21/14
COULD [16] 16/6 21/5 26/16 32/1 36/8 37/2 38/14 42/2 47/21 53/15 55/5 55/11 58/14 59/8 59/12 62/23
COULDN'T [7] 33/9 37/10 38/8 54/19 57/23 57/24 62/11
COUNSEL [51] 2/20 7/24 8/1 8/3 11/15 19/11 28/17 32/16 32/20 32/20 32/23 32/24 41/10 41/13 42/21 43/6 43/23 44/2 44/4 44/11 44/16 44/16 47/8 47/8 47/20 51/17 53/4 53/17 54/2 54/25 55/1 55/5 55/9 55/10 55/23 56/25 57/3 57/6 57/10 58/19 58/22 58/24 59/1 59/7 59/8 60/11 60/19 62/23 63/22 66/16 66/24
COUNSEL'S [2] 3/9 56/22
COUPLE [3] 11/12 15/14 36/10
COURSE [1] 7/7
COURT [132]
COURT'S [1] 13/14
COURTEOUS [1] 49/11
COURTHOUSE [2] 1/22 55/16
COURTROOM [2] 34/14 62/21
COURTS [8] 12/23 39/7 44/9 46/24 54/21 56/24 58/24 59/25
COUSIN [1] 63/17
CPCPL [1] 58/20
CRACKS [1] 58/22
CREATED [1] 38/25
CREATION [1] 62/25
CRIMINAL [4] 3/7 22/17 55/5 55/16
CRISIS [4] 59/2 62/15 62/19 62/22
CRITICAL [2] 49/6 51/24
CROSS [2] 34/9 34/15
CROSS-EXAMINATION [1] 34/15
CROSS-EXAMINE [1] 34/9
CRUEL [1] 30/9
CUES [1] 56/12
CULLEN [2] 12/12 23/21
CULPABILITY [4] 5/10 52/3 55/17 55/19
CURRENT [1] 35/7
CURSORY [2] 28/11 53/20
CUSTOMERS [1] 48/10

## D

DA'S [1] 41/22
DALE [4] 1/17 2/6 2/16 31/9
DANALYNN [4] 1/13 2/3 2/12 31/6
DATA [1] 50/17
DAY [1] 27/21
DAYS [2] 4/4 9/4
DE [1] 36/20
DEAL [1] 28/12
DEALS [1] 43/16
DEALT [1] 38/24
DEATH [3] 18/8 55/14 58/18
DEBILITATED [1] 8/9
DECIDED [2] 24/16 41/11
DECISION [9] 11/7 20/14 21/10 22/10 31/15 50/18 50/21 65/22 66/12
DECISION-MAKING [3] 20/14 21/10 50/18
DEFAULT [6] 32/18 44/5 44/13 44/22 44/22 45/3
DEFAULTED [2] 39/1 43/1
DEFAULTING [1] 47/9
DEFEND [1] 51/23
DEFENDANT [12] 2/10 9/25 18/11 18/12 29/1 29/11 39/1 41/22 51/11 60/24 64/12 66/8
DEFENDANT'S [2] 51/11 51/12
DEFENDANTS [2] 58/18 61/12
DEFENSE [8] 11/14 19/11 41/13 44/6 50/8 54/2 62/25 63/21
DEFENSES [3] 9/5 9/6 9/7
DEFERENCE [1] 36/24
DEFICITS [7] 4/18 6/12 7/2 49/23 51/1 51/4 56/11
DEFINED [1] 59/25
DELAYED [1] 6/14
DELAYS [2] 5/6 51/5
DELEGATED [1] 10/19
DEMAREST [1] 61/24
DEMONSTRATE [2] 5/5 25/25
DEMONSTRATED [1] 57/18
DEMONSTRATES [1] 55/8
DEMONSTRATING [2] 28/16 53/15
DENIAL [3] 12/25 12/25 15/4
DENIED [8] 6/25 7/12 7/13 7/14 34/16 37/7 47/10 53/10
DENY [3] 8/11 8/12 17/25
DEPARTMENT [1] 66/20
DEPRIVED [1] 63/25
DESCRIBE [1] 52/9
DESCRIBED [1] 12/15
DESCRIPTIONS [1] 49/11
DESPITE [1] 4/21
DETAILS [1] 5/15
DETERMINATION [5] 9/10 19/10 27/6 30/21 50/17
DETERMINE [2] 64/23 65/10
DETERMINED [2] 9/3 65/2
DEVASTATING [1] 32/13
DEVELOP [24] 4/12 7/17 8/2 33/9 33/10 34/12 34/25 35/11 36/3 37/10 37/22 37/24 38/12 47/21 49/3 49/5 51/17 52/7 54/13 55/1 57/23 58/6 58/14 63/2
DEVELOPED [17] 3/25 4/11 4/18 4/21 6/9 33/24 34/2 34/3 34/25 38/12 39/11 48/6 48/6 49/8 56/16 57/12 61/8
DEVELOPMENT [5] 4/20 6/14 7/15 7/23 29/13
DEVELOPMENTAL [2] 5/6 51/5
DEVELOPS [1] 35/3
DIAGNOSIS [3] 50/17 50/19 50/25
DID [70]
DIDN'T [48] 11/21 14/13 15/24 21/10 21/11 21/12 24/6 24/8 24/24 26/4 26/4 26/7 26/21 32/2 32/10 33/8 34/25 37/10 37/11 40/12 40/15 40/19 41/4 41/15 41/20 41/21 42/7 42/10 42/17 43/2 43/9 43/14 43/14 44/23 45/24 46/2 46/4 46/11 47/24 51/13 51/20 51/20 51/21 51/23 52/13 54/4 54/20 54/22
DIFFERENCE [7] 7/25 16/20 23/19 24/12 38/15 52/25 54/15
DIFFERENCES [2] 6/15 23/2
DIFFERENT [48] 4/2 12/19 15/12 16/15 16/25 23/11 23/22 27/1 33/5 33/11 33/19 33/20 34/11 34/18 35/19 37/8 38/21 39/18 39/20 39/24 39/24 39/25 40/22 41/18 41/19 42/13 42/20 42/22 44/21 45/25 46/3 46/22 47/1 47/1 49/6 49/7 49/8 53/9 54/11 54/16 54/19 55/21 58/4 59/19 62/2 64/6 64/8 65/3
DIFFERENTLY [4] 53/16 57/17 64/18 65/5
DIFFICULT [1] 61/12
DIFFICULTIES [1] 20/2
DIFFICULTY [1] 56/12
DIRE [2] 3/10 34/8
DIRECT [1] 44/8
DIRECTLY [1] 16/12
DISAGREE [3] 24/2 47/15 52/23
DISCOVER [1] 56/8
DISCOVERY [3] 6/6 25/7 26/20

## D

DISCREPANCIES [1] 22/25
DISCUSS [1] 41/19
DISCUSSED [4] 6/5 15/11 23/9 23/10
DISCUSSION [2] 17/7 17/8
DISCUSSIONS [1] 16/1
DISMISS [1] 17/20
DISMISSAL [14] 8/23 10/25 11/2 11/23 12/7 12/8 14/2 14/25 15/1 18/1 22/18 22/18 22/19 24/1
DISMISSED [13] 8/18 9/23 9/24 9/24 12/19 16/8 16/18 16/18 17/14 17/16 18/19 24/14 58/7
DISORDER [4] 4/9 51/3 56/14 61/19
DISPOSAL [1] 13/14
DISTRICT [10] 1/1 1/2 2/5 2/18 11/20 21/4 21/4 31/8 62/9 64/3
DO [38] 6/10 6/11 12/22 19/22 20/25 21/1 23/22 26/5 27/21 29/6 36/15 37/13 38/13 38/19 39/7 40/13 43/7 46/10 50/22 51/15 51/18 51/20 51/20 52/1 53/12 53/16 53/16 53/25 54/16 54/19 57/15 58/1 64/3 65/4 65/16 65/18 65/24 66/25
DOCKET [1] 3/4
DOCTOR [4] 18/11 28/4 28/5 28/6
DOCTORS [3] 18/9 30/1 40/15
DOCTRINE [2] 61/22 62/2
DOCUMENT [5] 11/25 26/22 54/21 59/22 59/25
DOCUMENTS [5] 28/10 55/1 55/3 55/4 55/21
DOES [5] 12/12 13/8 24/12 24/13 41/23
DOESN'T [16] 20/3 21/11 25/8 26/10 26/18 30/3 31/17 41/22 46/15 46/25 47/14 51/23 57/2 57/3 58/10 65/3
DOING [4] 20/17 26/15 28/22 50/13
DON'T [19] 12/2 18/18 18/23 20/12 20/18 23/1 25/16 26/20 28/25 28/25 38/22 41/23 44/22 47/15 49/13 52/2 53/5 65/15 67/2
DONE [26] 5/2 5/3 7/10 7/18 16/23 28/12 29/6 29/7 29/15 38/5 38/6 38/14 40/21 40/21 50/3 51/9 53/11 54/15 54/17 54/18 55/13 55/16 55/19 59/14 64/17 66/8
DOOR [1] 46/7
DOUBT [1] 26/24
DOWN [3] 42/20 60/6 67/1
DOZEN [2] 7/22 33/25
DR [1] 18/4
DRETKE [2] 60/23 61/25
DRIVEBY [1] 51/8
DRUG [1] 56/14
DUE [5] 8/9 39/6 47/22 54/12 54/13
DURING [7] 3/10 8/9 17/7 18/22 41/23 58/20 60/17
DUTY [1] 41/10
DYSFUNCTION [4] 4/6 4/10 4/15 4/16

## E

E-MAILED [2] 65/18 66/2
EACH [7] 13/5 13/7 13/8 21/8 24/19 60/24 67/3
EARLIER [2] 33/24 62/12
EARLIEST [1] 4/4
EARLY [2] 14/19 27/21
EAST [1] 62/9
EASY [3] 40/20 53/25 55/9
EDUCATIONAL [1] 5/4
EDWARDS [1] 66/18
EFFECTIVE [3] 8/12 53/22 64/20
EFFORT [1] 36/6
EFFORTS [1] 40/7
EIGHT [1] 56/25
EIGHTEEN [1] 18/7
EITHER [6] 43/23 47/7 52/3 56/24 59/5 63/3
ELECT [1] 44/3
ELEMENTS [2] 13/6 13/8
ELEVATOR [1] 67/3
ELEVEN [1] 57/10
ELSE [8] 20/1 25/15 40/14 42/9 49/22 65/9 65/20 67/3
EMOTIONAL [3] 4/7 33/23 56/6
EMPLOYERS [1] 63/16
EMPLOYMENT [2] 54/3 54/3
ENCOURAGED [1] 11/19
END [2] 43/25 59/4
ENDS [1] 46/6
ENOUGH [4] 42/17 53/24 61/20 64/4
ENROLLED [1] 2/19
ENTERTAIN [1] 3/15
ENTIRE [8] 9/23 10/3 24/14 24/22 24/23 27/3 27/14 48/14
ENTIRELY [4] 39/20 40/4 45/13 54/12
ENTITLED [1] 67/8
EQUATE [1] 20/4
EQUATION [1] 22/6
EQUITABLE [8] 7/4 38/25 44/1 46/8 46/14 47/16 47/19 62/17
ERA [1] 35/8
ERIC [1] 16/17
ERROR [2] 19/23 19/23
ERRORS [2] 11/10 24/19
ESQ [6] 1/13 1/13 1/14 1/17 1/17 1/18
ESSENTIALLY [2] 23/3 34/14
ESTABLISH [1] 61/20
ESTABLISHED [1] 28/19
ESTELLE [1] 60/12
ESTOPPEL [1] 32/22
ET [2] 1/6 61/19
EVALUATION [3] 33/21 33/22 51/8
EVALUATIONS [4] 28/12 56/4 56/7 61/16
EVEN [13] 11/9 12/2 25/16 26/11 28/2 29/24 32/8 36/3 40/8 40/9 48/13 51/21 55/17
EVENT [1] 30/18
EVENTS [1] 8/10
EVER [4] 8/16 28/6 28/7 54/20
EVERY [9] 13/19 21/8 30/12 30/19 33/6 47/17 50/9 50/10 59/3
EVERYBODY [2] 45/10 67/3
EVERYONE [1] 23/12
EVERYTHING [6] 17/15 17/19 37/2 47/20 50/24 58/14
EVERYWHERE [2] 25/15 65/20
EVIDENCE [37] 4/12 5/7 5/12 5/13 5/15 6/2 10/6 12/24 13/9 22/20 23/6 30/16 30/16 34/22 38/10 38/12 38/16 39/16 39/17 39/18 39/18 42/19 42/22 43/15 45/10 49/3 49/8 49/15 51/25 56/4 56/6 56/19 56/25 60/1 60/2 61/15 61/22
EVIDENTIARY [7] 6/3 6/5 6/7 7/21 13/11 59/5 63/2
EXACT [1] 16/15
EXACTLY [6] 8/13 10/14 32/12 38/14 57/22 61/8
EXAMINATION [1] 34/15
EXAMINE [1] 34/9
EXAMPLES [1] 15/9
EXCEPTION [2] 43/18 43/18
EXCERPTS [1] 16/25
EXCUSE [2] 34/6 56/7
EXECUTION [2] 1/9 59/13
EXHAUST [9] 36/18 36/18 36/19 36/21 59/25 60/21 61/11 61/13 62/5
EXHAUSTED [3] 33/18 34/17 60/9
EXHAUSTION [8] 35/15 46/19 59/16 59/20 59/25 61/21 61/22 62/2
EXHIBITS [3] 11/15 47/24 60/10
EXISTED [1] 35/18
EXPANDED [2] 53/14 56/2
EXPECTATION [2] 6/4 6/8
EXPERIENCE [1] 56/10
EXPERIENCED [2] 4/7 4/7
EXPERIMENT [2] 54/17 57/18
EXPERT [13] 4/1 7/11 28/14 29/4 30/7 30/10 32/9 33/8 34/2 50/1 57/11 57/14 63/18
EXPERTS [35] 4/11 4/19 4/24 5/1 7/17 7/20 7/22 7/23 7/23 7/23 27/18 27/21 28/17 28/17 28/24 29/1 29/8 29/9 32/6 33/1 34/1 36/14 39/21 41/3 48/12 48/12 49/19 50/4 50/5 50/10 50/23 55/3 57/4 58/16 64/7
EXPLAINED [1] 62/15
EXPLAINS [1] 49/2
EXPLICITLY [1] 24/9
EXTENDED [1] 55/15
EXTENSIVE [10] 7/2 7/20 9/22 28/23 33/23 35/21

## E

EXTENSIVE... [4] 36/13 51/18 55/13 56/16
EXTENSIVELY [5] 5/24 6/13 32/22 35/3 38/6
EXTENT [1] 25/16
EXTRACTED [1] 24/4
EXTRAPOLATION [1] 24/5

## F

F.2D [1] 60/12
F.3D [4] 60/4 60/8 60/15 60/22
F.3RD [2] 60/23 61/25
FACE [2] 13/16 58/2
FACT [28] 5/5 6/6 6/11 6/17 6/20 7/2 8/6 8/22 9/24 12/2 13/7 18/12 18/21 19/24 24/5 25/24 28/5 28/16 29/11 29/23 34/18 45/23 46/7 57/21 61/15 62/6 62/15 62/22
FACTS [13] 6/11 9/13 12/15 12/20 12/21 15/5 16/15 24/24 25/17 33/7 40/14 59/19 61/2
FACTUAL [6] 11/10 19/15 24/19 27/6 27/13 30/21
FACTUALLY [3] 11/23 13/9 28/2
FAILED [17] 12/5 12/10 13/18 24/17 37/21 40/16 40/18 52/6 52/10 53/17 55/1 55/23 56/25 57/3 57/6 57/10 59/8
FAILING [1] 37/25
FAILS [1] 39/22
FAILURE [37] 8/19 11/1 24/15 29/17 29/18 34/8 34/9 34/10 34/10 34/11 34/16 34/20 35/1 35/3 35/11 36/17 36/18 36/21 36/22 37/22 37/23 38/11 38/12 49/4 53/20 53/22 54/13 56/1 56/19 58/5 58/5 58/7 59/24 60/21 61/11 61/13 62/5
FAILURES [7] 34/5 34/6 34/7 34/7 34/8 36/19 59/11
FAIR [4] 27/23 63/25 64/1 64/13
FALLING [1] 58/21
FAMILIAR [1] 11/15
FAMILIES [1] 20/2
FAMILY [17] 4/5 4/13 4/15 4/22 6/13 8/10 19/25 36/10 48/8 49/21 51/1 51/11 51/12 55/15 55/17 56/12 60/16
FAS [1] 56/11
FATHER [1] 18/22
FATHER'S [1] 48/11
FAULT [1] 36/21
FAXED [1] 54/5
FEDERAL [58] 5/22 6/18 17/22 21/13 32/18 33/6 33/10 33/15 33/25 34/20 35/4 35/22 36/20 37/1 38/1 38/4 38/5 38/13 38/15 39/3 39/4 39/6 39/7 39/12 39/17 40/20 40/24 41/15 43/3 43/22 44/6 44/14 45/10 45/12 45/25 46/13 47/2 48/6 48/22 53/1 53/13 55/13 55/22 56/2 56/8 56/17 56/18 56/24 58/12 58/24 59/5 60/13 60/16 61/6 61/17 61/23 63/3 64/8
FEW [10] 9/18 10/8 10/21 11/8 12/3 24/15 48/15 55/4 55/24 61/2
FIFTH [14] 3/11 17/18 55/22 59/19 59/24 60/4 60/8 60/14 60/19 60/22 61/10 61/20 61/25 62/1
FILE [7] 9/5 9/25 25/7 26/20 41/6 41/25 53/4
FILED [14] 5/23 6/4 9/12 9/15 15/22 16/5 16/7 16/9 23/14 37/3 37/3 37/7 54/21 64/2
FILES [1] 16/1
FILING [1] 66/3
FIND [3] 23/1 38/3 62/11
FINDING [3] 10/17 24/7 60/13
FINISHED [1] 14/9
FIRST [32] 3/6 3/19 5/19 7/4 7/6 8/21 8/25 9/8 9/19 13/21 14/10 15/22 16/7 16/14 16/20 23/17 23/25 25/5 32/3 33/4 33/14 37/9 38/3 39/4 40/3 40/18 46/19 48/2 48/21 53/3 60/10 60/15
FIVE [4] 3/6 8/23 13/9 31/2
FIVE-MINUTE [1] 31/2
FLORIDA [1] 1/23
FOLKS [4] 39/10 40/8 64/20 65/20
FOLLOW [2] 27/9 47/13
FOLLOW-UP [1] 27/9
FOLLOWING [1] 19/7
FOLLOWS [1] 53/3
FORCED [2] 6/24 27/21
FOREGOING [1] 67/7
FORGIVE [1] 38/20
FORGOT [1] 64/11
FORMER [2] 63/16 63/20
FORTH [2] 5/11 62/17
FORWARD [2] 2/11 20/23
FOUGHT [1] 7/1
FOUND [7] 12/5 17/18 19/10 45/4 60/1 60/20 60/25
FOUNDATION [2] 28/13 50/15
FOUNDED [1] 10/18
FOUR [2] 8/23 61/14
FOURTH [1] 3/10
FRAMING [1] 13/22
FRIEND [2] 48/8 63/19
FRIENDS [5] 4/22 48/9 48/10 48/10 49/12
FRIGHTENING [1] 59/11
FRONT [1] 13/17
FULL [4] 24/20 26/8 47/23 55/19
FUMBLE [1] 38/20
FUNCTION [1] 51/17
FUNCTIONING [6] 4/10 29/12 33/22 49/23 56/5 56/20
FUND [1] 43/9
FUNDAMENTALLY [2] 60/2 61/23
FUNDED [4] 43/10 43/12 57/15 58/19
FUNDING [25] 4/11 6/6 37/11 39/10 39/12 40/13 42/2 42/3 42/12 42/13 42/14 44/20 45/13 46/17 47/23 52/15 57/4 57/6 62/7 62/10 62/13 62/15 62/19 62/21 63/8
FUNDS [13] 7/1 7/1 7/16 7/19 8/2 8/3 33/1 36/3 36/12 37/3 42/5 42/7 42/9
FURTHER [7] 6/9 11/3 18/18 34/24 63/2 66/14 66/19

## G

GARDEN [1] 55/7
GENERAL [2] 18/24 34/21
GENERATIONAL [3] 28/18 50/12 55/20
GENETIC [1] 51/5
GET [26] 13/4 24/18 25/16 29/15 37/1 37/2 39/15 40/12 41/4 41/20 41/21 42/1 42/7 42/9 42/10 45/12 46/11 47/21 54/3 54/4 55/5 55/7 55/9 59/12 65/19 65/23
GETS [3] 24/24 35/13 62/4
GETTING [5] 22/15 58/22 58/23 64/9 64/9
GIBBENS [1] 2/14
GINGER [1] 58/25
GISLESON [15] 1/14 2/3 2/13 6/24 7/9 17/9 31/6 32/25 36/7 37/2 37/7 46/4 58/13 59/1 65/20
GIVE [8] 9/4 15/9 19/5 31/20 42/2 42/4 43/9 59/20
GIVEN [2] 9/25 49/2
GIVING [1] 26/23
GLARING [1] 11/13
GO [17] 11/3 12/2 14/6 22/22 24/5 27/11 28/25 31/3 37/13 37/15 38/19 39/3 39/20 41/12 41/16 52/1 52/20
GOES [3] 18/5 18/18 41/22
GOING [21] 10/3 14/6 16/2 17/25 27/9 29/13 31/2 32/7 32/10 42/3 42/6 43/16 43/19 43/21 43/23 44/9 45/15 46/5 58/23 63/13 65/13
GONE [2] 25/14 39/25
GOOD [2] 2/15 50/17
GOT [13] 7/15 29/1 33/10 44/20 46/17 46/22 46/23 55/9 59/1 59/9 64/1 64/13 66/6
GOTTEN [2] 55/11 59/4
GRADUATED [1] 4/25
GRAHAM [2] 60/7 60/9
GRANT [3] 7/4 45/5 65/14
GRANTED [1] 7/17
GRANTING [1] 66/12
GREAT [2] 28/12 49/17
GREATLY [1] 56/2
GROUNDS [4] 39/3 53/5 53/8 53/9
GROUP [1] 58/21
GUARANTEED [1] 41/9

**G**

GUESSING [1] 40/25
GUIDELINES [6] 28/15 28/20 35/5 51/16 51/16 54/15

**H**

HABEAS [71]
HAD [84]
HADN'T [1] 7/17
HALLWAY [4] 48/17 48/25 54/7 56/2
HANDED [1] 23/7
HANDLE [2] 19/6 55/7
HANDLING [1] 47/7
HAPPEN [4] 24/24 51/13 57/13 57/14
HAPPENED [14] 9/11 9/12 9/19 13/13 15/21 17/23 18/2 19/21 29/24 30/7 38/14 39/15 46/24 54/7
HAPPENING [1] 58/16
HAPPENS [1] 59/6
HARD [1] 49/11
HARDEN [5] 23/10 25/1 25/4 25/4 26/10
HAS [39] 3/18 3/23 3/24 4/1 4/8 5/5 5/19 5/22 8/5 8/21 9/3 10/4 11/1 11/3 12/11 19/20 22/6 23/23 30/16 30/16 37/21 41/10 42/25 43/4 48/6 49/2 50/12 50/15 51/9 51/9 51/10 54/20 56/9 56/11 56/12 56/12 62/7 65/21 66/9
HASN'T [1] 42/23
HAVE [95]
HAVEN'T [2] 64/4 66/8
HAVING [4] 29/15 29/18 51/12 59/13
HE [160]
HE'S [13] 4/23 18/12 18/15 18/16 25/2 25/8 26/14 30/3 30/6 49/11 49/11 49/11 49/12
HEAD [3] 55/7 55/8 62/14
HEADING [1] 53/21
HEALTH [7] 7/23 35/23 36/14 40/1 48/11 50/23 61/15
HEAR [3] 14/8 38/17 46/5
HEARD [3] 4/1 54/23 58/7
HEARING [32] 5/18 6/3 6/5 6/7 7/21 8/11 9/15 9/16 10/8 10/9 15/20 16/24 17/21 18/4 18/19 18/23 25/25 28/13 30/4 32/19 43/14 44/14 52/8 53/6 59/5 59/9 62/12 62/13 63/8 64/5 66/11 66/12
HEARINGS [7] 6/6 6/6 10/16 52/14 62/20 62/21 63/2
HEARN [2] 25/2 25/3
HECKER [14] 8/4 8/8 8/9 8/11 20/17 20/22 20/24 21/19 21/20 27/18 40/5 49/1 51/23 53/14
HECKER'S [2] 18/21 27/16
HEINOUS [1] 30/8
HELD [4] 9/15 15/10 17/22 60/9
HELPED [1] 7/3
HEMISPHERE [1] 56/10
HER [5] 8/7 8/16 10/4 19/10 20/6
HERE [19] 2/22 3/1 11/4 15/13 22/15 28/22 31/3 32/17 38/20 44/23 46/15 46/17 47/10 47/11 49/6 53/2 54/18 54/18 64/15
HESITATE [1] 66/15
HIDE [1] 36/25
HIDING [1] 37/23
HIGH [1] 4/25
HILLAR [4] 1/17 2/5 2/17 31/8
HIM [11] 8/13 13/17 19/6 20/11 21/9 21/15 21/16 21/16 23/8 26/23 58/11
HIMSELF [6] 10/19 36/7 36/7 37/4 37/8 49/1
HIRED [1] 7/19
HIRING [1] 51/14
HIS [41] 4/4 4/16 4/22 5/3 7/7 8/10 15/6 16/1 18/13 19/20 20/14 21/9 21/17 21/18 23/13 26/14 37/22 40/5 40/6 46/4 48/9 48/10 48/10 48/14 48/24 49/2 49/22 51/2 51/3 55/3 55/7 55/17 59/13 60/20 62/25 62/25 63/16 63/16 63/17 63/17 64/13
HISTORY [26] 4/6 4/14 4/16 5/21 5/25 6/13 28/19 28/23 28/25 34/1 34/25 35/21 48/14 50/3 50/6 50/12 50/16 51/1 55/2 55/4 55/20 55/24 56/13 56/17 59/14 62/16
HOLD [1] 66/1
HOLDS [1] 32/15
HOMICIDE [2] 30/12 30/13
HON [1] 1/6
HONE [1] 31/16
HONEST [1] 52/10
HONOR [45] 2/16 2/23 3/14 3/17 3/18 7/15 7/16 10/4 14/6 14/11 14/15 15/12 15/17 17/7 19/22 20/12 20/18 22/7 23/3 23/21 23/23 24/13 31/4 31/18 31/24 32/12 32/13 36/17 37/15 38/22 38/25 39/16 42/18 43/13 45/23 47/18 48/3 52/19 54/24 58/17 63/13 63/13 65/1 65/17 66/17
HONOR'S [1] 32/22
HOPE [2] 32/11 32/12
HOPING [1] 66/12
HOURS [1] 48/15
HOW [14] 19/6 21/19 21/25 21/25 31/16 36/15 37/18 52/1 53/15 54/10 54/14 54/18 57/17 59/1
HOWEVER [5] 10/15 14/3 49/1 53/11 55/13
HUDSMITH [4] 1/13 2/2 2/13 31/5
HUGE [1] 59/2
HUMILIATION [1] 33/23
HURDLES [1] 4/21
HURRY [2] 28/12 49/17
HYPOTHESIZED [1] 13/1

**I**

I'D [1] 59/15
I'M [23] 17/24 17/25 18/11 18/13 18/15 18/16 18/17 19/13 22/7 25/7 26/23 30/19 31/2 31/19 31/20 37/17 38/21 44/7 46/1 52/19 63/19 65/13 65/25
I'VE [3] 49/19 59/18 61/18
IAC [2] 27/7 27/12
IDB [3] 58/22 62/14 62/20
IDENTICAL [2] 16/13 32/3
IDENTIFY [1] 9/2
IF [74]
II [1] 18/21
III [1] 44/10
ILL [5] 7/6 18/22 19/25 19/25 20/3
ILLNESS [1] 4/14
IMMUNITY [1] 26/13
IMPACT [1] 17/22
IMPAIRED [1] 57/1
IMPAIRMENT [2] 56/9 61/18
IMPAIRMENTS [2] 56/13 61/19
IMPLEMENT [1] 55/7
IMPLICATIONS [1] 36/24
IMPORT [1] 47/3
IMPORTANT [3] 5/10 20/8 58/17
IMPRESSION [2] 4/25 5/2
IN [335]
INCAPACITATED [1] 8/6
INCENTIVIZED [2] 11/18 55/18
INCIDENTALLY [1] 62/8
INCLUDED [1] 63/16
INCLUDING [1] 56/14
INCOMPETENT [1] 7/6
INCORRECT [4] 5/1 11/23 28/2 32/4
INCORRECTLY [1] 51/25
INDEED [1] 8/13
INDEPENDENT [8] 15/6 19/20 20/19 21/17 21/18 39/2 43/3 44/23
INDICATED [5] 8/8 23/25 32/3 33/13 33/24
INDICATING [1] 56/11
INDICTMENT [2] 14/20 14/21
INDIVIDUALLY [1] 13/5
INEFFECTIVE [30] 3/8 3/9 6/25 15/16 16/16 18/5 19/21 20/4 20/22 20/24 22/4 32/16 32/21 33/10 35/12 37/4 37/8 37/25 42/14 43/5 44/17 46/4 52/5 53/2 56/22 57/25 60/11 63/21 63/22 63/23
INEFFECTIVENESS [16] 15/20 33/4 33/6 35/12 38/11 41/7 42/21 43/23 44/11 44/15 44/24 46/1 46/3 54/12 62/4 62/4
INFORMATION [8] 6/17 6/22 6/23 23/9 29/10 50/19 50/20 57/17
INFORMED [1] 22/10
INITIAL [7] 32/17 32/19 32/23 44/2 44/4 44/12 44/15

**I**

INITIAL-REVIEW [6] 32/17 32/19 44/2 44/4 44/12 44/15
INITIALLY [4] 9/16 9/19 13/13 35/13
INJURY [1] 55/8
INMATE [1] 46/11
INMATES [3] 58/21 59/3 63/1
INSISTED [1] 18/13
INSTANCE [8] 4/24 9/2 11/17 13/15 13/19 27/18 39/9 53/11
INSTANCES [3] 10/13 23/15 60/24
INSTANTLY [1] 9/17
INSTEAD [3] 11/5 40/2 57/15
INTELLECTUAL [4] 4/10 29/13 33/22 56/5
INTEND [1] 6/3
INTENDED [2] 27/20 53/12
INTENTIONAL [1] 30/17
INTERESTED [1] 65/22
INTERFERE [1] 39/8
INTERFERED [1] 41/24
INTERNS [1] 36/7
INTERPRET [3] 37/18 37/20 38/2
INTERRELATION [1] 39/5
INTERVENED [1] 42/23
INTERVENING [1] 31/14
INTERVIEW [2] 18/12 57/16
INTERVIEWED [2] 40/8 40/15
INTERVIEWS [1] 49/21
INTO [9] 4/5 4/5 7/9 24/5 26/7 29/9 31/3 33/10 59/9
INTRODUCED [1] 60/15
INVESTIGATE [10] 34/12 34/20 35/2 35/3 41/21 42/5 42/17 52/6 53/21 58/5
INVESTIGATED [2] 3/25 51/6
INVESTIGATION [14] 5/3 28/24 29/7 34/24 36/13 41/13 49/18 51/10 51/18 53/17 53/23 55/23 59/14 60/17
INVESTIGATIONS [1] 41/10
INVESTIGATIVE [5] 4/1 7/11 7/20 33/2 36/5
INVESTIGATOR [3] 36/12 55/10 60/18
INVITE [1] 9/4
INVOLVED [4] 30/11 58/25 58/25 59/2
INVOLVEMENT [1] 14/20
IS [178]
ISC [1] 13/16
ISN'T [2] 26/16 43/10
ISOLATION [1] 33/22
ISSUE [18] 13/21 13/22 24/7 24/21 25/16 29/3 29/4 29/5 30/2 32/2 32/6 32/22 35/23 46/15 51/5 55/1 57/19 62/8
ISSUED [1] 62/16
ISSUES [12] 3/12 3/18 13/10 13/11 15/19 15/20 33/9 39/25 51/6 59/9 65/9 66/15
IT [210]
IT'S [7]
ITEMS [1] 3/6
ITS [2] 28/3 60/9
ITSELF [5] 18/9 30/18 33/7 60/3 61/24

**J**

JAIL [1] 51/9
JAMES [1] 1/6
JIMMY [1] 63/10
JOB [1] 53/25
JOHN [4] 1/18 2/5 2/17 31/8
JOHNSON [1] 60/8
JUDGE [75]
JUDGE'S [2] 20/19 20/21
JUDGES [4] 45/14 45/16 47/18 58/23
JUDGMENT [5] 1/9 9/17 14/25 22/19 36/1
JUMPED [1] 18/25
JURY [2] 7/25 42/21
JUST [54] 3/18 5/21 7/13 10/8 12/15 12/25 14/6 14/23 20/2 25/21 27/9 29/25 32/1 34/4 35/2 35/22 35/24 39/17 41/25 47/24 48/3 48/15 48/16 48/23 49/6 49/7 49/7 49/10 49/14 49/15 51/10 51/20 51/20 52/4 53/2 53/20 53/23 54/5 55/24 56/1 57/21 58/9 58/11 59/17 59/20 60/12 61/2 61/15 61/16 63/7 64/7 65/4 66/7 67/2
JUSTICE [1] 63/20

**K**

KEEP [2] 5/10 43/21
KELVIN [5] 1/4 2/1 2/4 2/25 31/7
KEY [1] 33/9
KIND [4] 27/1 27/25 30/12 34/18
KINDS [1] 34/1
KNEW [3] 8/9 12/14 32/7
KNOW [47] 8/20 8/24 12/14 12/16 12/23 12/23 13/1 14/12 14/13 19/19 20/1 20/12 20/18 21/14 22/11 24/23 25/8 26/19 26/20 28/22 29/16 30/17 32/10 32/21 39/6 39/24 40/7 41/2 41/15 41/17 41/19 42/4 42/6 42/7 42/14 43/15 43/17 45/15 49/13 51/13 51/19 53/24 58/1 63/9 65/10 65/15 66/13
KNOWING [1] 65/22
KNOWN [1] 58/23
KRISTIN [1] 2/14
KUNKLE [1] 60/22

**L**

LACK [3] 35/15 47/22 59/20
LADIES [1] 63/19
LANGUAGE [2] 10/13 52/17
LAST [1] 53/10
LAW [18] 7/7 30/9 30/14 30/14 30/20 30/22 32/15 36/7 36/25 37/23 39/2 43/3 44/11 44/24 53/23 59/19 59/24 61/21
LAWN [1] 48/11
LAWYER [4] 7/6 36/6 43/20 48/24
LAWYERS [7] 11/11 39/19 43/20 48/17 50/9 51/13 51/25
LAY [3] 7/22 33/25 54/6
LEAST [1] 13/9
LEE [17] 1/17 2/6 2/16 14/12 23/25 27/10 28/3 30/2 31/9 32/3 38/17 38/18 52/20 53/19 54/11 57/21 62/7
LEE'S [1] 59/15
LEFT [2] 22/4 26/20
LEGAL [2] 17/21 36/11
LEGISLATURE [1] 62/16
LET [13] 14/8 14/23 15/12 19/2 31/19 38/17 38/18 43/10 47/8 47/13 48/3 66/13 66/25
LET'S [5] 14/7 17/12 39/14 67/1 67/2
LETTER [1] 54/5
LEVEL [2] 5/8 56/19
LIDB [1] 35/6
LIE [2] 29/5 29/18
LIFE [11] 3/23 5/25 28/23 34/1 34/25 35/21 48/14 50/16 55/2 55/3 59/14
LIGHT [6] 24/20 26/23 27/3 29/21 59/11 62/6
LIKE [13] 3/19 31/15 32/1 33/19 34/4 34/5 34/14 38/19 52/25 54/17 59/15 64/7 65/3
LIKED [1] 64/16
LIMITED [3] 43/18 47/4 47/4
LIST [1] 34/5
LISTENING [1] 21/20
LITERALLY [2] 7/9 32/24
LITIGATE [1] 47/8
LITIGATED [1] 32/25
LITTLE [10] 26/5 28/12 29/10 29/23 38/20 42/12 49/17 51/12 54/11 57/16
LIVED [1] 4/13
LONG [5] 4/14 24/5 28/20 50/13 51/1
LOOK [25] 10/5 10/7 11/8 12/13 13/5 15/10 17/1 19/17 20/8 20/10 22/8 22/8 24/17 26/7 36/23 39/3 39/21 40/11 41/1 41/17 50/10 50/10 52/25 59/9 66/4
LOOKED [9] 16/25 19/15 21/4 22/23 24/15 24/16 34/5 42/18 59/13
LOOKING [16] 11/4 11/5 11/6 12/5 13/15 13/17 18/15 18/16 22/9 22/21 23/1 26/2 26/6 40/23 62/3 65/25
LOOKS [2] 19/19 34/4
LOSES [1] 57/25
LOT [1] 23/15
LOUISIANA [14] 1/2 1/23 3/3 25/13 28/22 30/9 30/13 30/14 58/17 58/18 61/3

**L**

**LOUISIANA... [3]** 61/4 62/6 63/20
**LOW [4]** 4/10 33/22 56/5 56/19
**LOW-LEVEL [1]** 56/19
**LOWERED [1]** 29/12

**M**

**MA'AM [1]** 60/7
**MADE [17]** 7/1 9/8 15/6 18/17 20/6 33/2 37/11 42/15 42/16 45/3 46/8 46/14 46/25 53/12 54/14 61/11 64/4
**MAGISTRATE [2]** 9/18 9/22
**MAGISTRATE'S [2]** 12/16 27/14
**MAILED [2]** 65/18 66/2
**MAINLY [1]** 15/19
**MAINTAIN [1]** 58/1
**MAINTAINED [1]** 15/3
**MAKE [22]** 2/11 7/25 17/13 17/18 17/19 19/4 19/7 22/10 24/12 25/12 29/19 29/21 41/10 42/15 43/19 44/21 50/19 50/23 58/10 65/19 66/11 66/20
**MAKES [1]** 25/10
**MAKING [8]** 20/14 21/10 42/3 43/17 47/1 50/18 50/24 58/23
**MAN [1]** 55/6
**MANDATE [2]** 62/16 62/22
**MANNER [1]** 42/11
**MANY [1]** 10/12
**MARK [1]** 46/8
**MARTINEZ [29]** 31/15 31/19 31/21 31/25 32/15 35/12 36/15 36/17 37/18 37/18 37/21 38/2 38/9 38/19 38/22 38/24 39/15 42/23 42/24 43/16 43/16 46/8 47/3 47/4 47/6 47/12 47/14 52/17 62/3
**MASKING [1]** 29/13
**MATERIAL [4]** 7/19 23/2 26/16 61/22
**MATERIALITY [5]** 11/5 13/15 25/11 25/12 25/16
**MATERIALS [3]** 25/6 29/6 29/19
**MATTER [11]** 2/7 2/21 3/3 15/2 19/10 46/25 50/7 64/25 65/13 67/5 67/9
**MATTERS [3]** 3/19 3/21 5/8
**MAY [7]** 10/6 10/7 16/6 19/25 20/3 21/8 45/16
**MAYBE [1]** 40/12
**MCHENRY [1]** 60/3
**ME [19]** 14/8 14/23 15/12 19/2 31/13 31/16 31/19 34/7 38/17 38/18 38/20 47/13 47/14 48/3 52/21 56/7 59/20 65/15 66/25
**MEAN [15]** 5/19 5/20 18/11 20/1 20/5 20/10 20/13 21/12 37/21 38/7 39/13 40/5 45/16 46/6 63/8
**MEANING [1]** 50/2
**MEANT [3]** 30/14 30/15 52/1
**MEDICAL [12]** 4/17 18/10 28/5 28/6 28/7 30/1 50/16 50/16 50/18 50/21 54/4 55/14
**MEETING [1]** 16/4
**MEMBER [1]** 19/25
**MEMBERS [3]** 36/10 49/21 60/16
**MEMO [1]** 59/23
**MEMORY [5]** 11/12 26/14 28/3 29/23 53/6
**MENTAL [11]** 4/14 7/23 35/22 36/14 40/1 48/11 50/23 51/4 56/14 57/1 61/15
**MENTAL-HEALTH [6]** 7/23 36/14 40/1 48/11 50/23 61/15
**MENTALLY [1]** 7/6
**MENTION [6]** 21/10 21/11 41/7 53/20 57/2 57/3
**MENTIONED [14]** 25/1 49/19 56/18 56/20 56/21 56/23 57/2 57/4 57/5 57/8 57/9 57/9 57/21 61/19
**MENTIONS [1]** 25/11
**MERELY [4]** 5/13 13/16 30/10 35/2
**MERIT [1]** 58/3
**MERITS [16]** 9/7 9/10 11/5 13/24 19/6 23/20 35/15 44/6 44/24 46/16 46/16 47/6 47/9 47/10 52/22 54/24
**MET [5]** 22/11 30/10 51/10 55/24 56/1
**METHOD [1]** 47/7
**MIDDLE [1]** 1/2
**MIGHT [5]** 8/11 8/12 44/20 49/12 59/9
**MIND [2]** 37/14 37/15
**MINOR [1]** 60/1
**MINUTE [2]** 31/2 39/14
**MINUTES [1]** 55/25
**MISCHARACTERIZED [1]** 29/25
**MISDEMEANORS [1]** 25/11
**MISSED [2]** 3/12 30/20
**MISSING [1]** 54/12
**MISSPELLED [1]** 25/3
**MISSTATEMENTS [2]** 11/10 12/2
**MISTAKEN [1]** 63/19
**MITIGATION [8]** 36/11 51/14 51/15 51/16 51/21 55/10 63/15 63/15
**MOMENT [5]** 32/1 34/4 48/3 53/2 59/21
**MONEY [4]** 7/10 41/21 41/22 65/5
**MONTH [1]** 31/22
**MONTHS [1]** 53/15
**MOORE [6]** 1/17 2/5 2/17 2/19 31/8 60/21
**MORE [8]** 20/5 22/18 27/20 44/20 49/7 50/14 53/10 61/13
**MORRIS [2]** 17/16 17/22
**MOST [6]** 10/19 31/14 32/13 34/9 48/9 55/5
**MOSTLY [2]** 48/8 58/4
**MOTHER [1]** 48/24
**MOTHERS [1]** 63/16
**MOTION [17]** 1/9 1/9 3/2 3/5 6/21 14/25 33/16 53/4 53/7 53/9 59/24 62/17 65/12 65/14 65/18 66/4 66/5
**MOTIONS [5]** 37/3 37/5 37/6 37/7 52/15
**MOTOR [1]** 56/9
**MOVE [1]** 16/6
**MOWING [1]** 48/11
**MR [92]**
**MS [13]** 1/13 1/13 1/18 2/2 2/2 2/6 31/5 31/5 31/9 31/16 45/8 66/8 66/18
**MUCH [6]** 3/20 3/21 6/17 29/23 61/13 65/21
**MUDDLE [1]** 26/5
**MULTI [3]** 28/18 50/12 55/20
**MULTI-GENERATIONAL [3]** 28/18 50/12 55/20
**MUST [4]** 32/16 43/20 43/20 44/12
**MY [5]** 3/2 37/15 46/12 53/25 65/9
**MYSELF [1]** 17/9

**N**

**NARRATIVE [2]** 3/23 5/21
**NARROWING [2]** 30/14 30/15
**NATURE [4]** 13/25 22/19 34/18 47/12
**NEAR [1]** 61/9
**NECESSARILY [1]** 20/4
**NECESSARY [3]** 7/18 18/19 57/15
**NEED [9]** 12/2 29/6 29/19 30/6 48/4 51/6 65/19 66/10 66/14
**NEEDED [3]** 40/7 40/7 53/16
**NEEDS [1]** 30/4
**NEGLECT [1]** 4/7
**NEGLECTED [1]** 53/4
**NEITHER [2]** 28/5 28/6
**NEUROLOGIC [2]** 36/4 56/13
**NEUROLOGICAL [8]** 4/6 4/16 4/18 6/12 36/4 51/1 51/4 56/6
**NEUROPSYCHOLOGICAL [6]** 33/21 51/7 56/3 56/7 61/16 61/18
**NEVER [22]** 3/23 3/24 4/10 4/18 5/7 12/17 12/20 12/21 19/5 22/3 22/3 23/18 33/17 46/6 46/7 49/8 51/8 52/2 56/20 56/21 57/2 59/9
**NEW [23]** 6/17 6/22 6/23 10/1 10/6 10/6 16/9 27/8 39/16 39/17 40/17 45/10 45/13 50/20 56/3 58/12 60/10 60/13 61/15 61/22 64/2 64/9 64/9
**NEXT [4]** 16/6 18/24 27/21 52/6
**NICE [1]** 48/5
**NINE [1]** 60/10
**NO [41]** 1/5 5/2 5/2 7/8 7/15 8/18 11/2 11/3 11/7 11/14 14/17 16/12 23/22 25/22 28/7 28/10 28/10 28/11 28/13 29/2 32/20 32/24 36/13 42/14 44/16 46/13 46/13 47/2 49/17

## N

**NO... [12]** 49/21 49/21 50/6 51/9 51/9 51/10 54/8 54/10 55/2 57/21 57/22 64/14
**NONE [2]** 9/10 59/3
**NOR [2]** 41/23 62/25
**NORMAL [1]** 49/12
**NORMALIZING [1]** 29/14
**NORMALLY [1]** 38/7
**NOT [169]**
**NOTABLY [1]** 55/5
**NOTE [1]** 66/7
**NOTED [1]** 17/10
**NOTES [7]** 10/10 10/12 17/5 17/6 27/2 27/14 27/15
**NOTHING [4]** 7/9 26/15 32/24 40/13
**NOTICE [1]** 66/19
**NOTION [3]** 24/21 47/16 62/9
**NOVO [1]** 36/20
**NOW [22]** 3/3 9/9 10/23 16/22 21/10 39/3 43/12 44/19 45/8 45/12 45/24 46/12 54/22 56/17 57/18 61/7 63/2 63/21 64/7 64/15 65/2 65/11
**NOWHERE [2]** 56/18 61/9
**NUMBER [1]** 31/13
**NUMBERED [1]** 67/9
**NUMERAL [2]** 18/20 44/10
**NUMEROUS [1]** 17/10

## O

**OBLIGATION [1]** 28/16
**OBTAIN [1]** 57/7
**OBVIOUSLY [8]** 26/17 32/8 33/20 40/2 40/19 40/22 42/12 63/9
**OCCURRED [3]** 41/1 41/18 63/12
**OFF [3]** 14/23 25/6 54/5
**OFFICE [3]** 2/18 41/22 62/10
**OFFICIAL [1]** 67/12
**OFTEN [1]** 29/11
**OH [2]** 46/11 52/12
**OKAY [3]** 2/19 18/18 42/24
**OLD [1]** 31/22
**ON [112]**
**ONCE [3]** 9/8 33/10 38/21
**ONE [33]** 2/20 3/8 5/15 11/14 11/17 12/25 13/7 14/5 14/7 18/12 18/21 18/24 21/8 21/20 24/24 31/13 32/1 32/12 33/17 47/2 51/13 52/13 52/24 53/10 55/5 55/11 57/11 59/3 59/6 59/7 61/11 63/11 63/19
**ONE-PAGE [1]** 12/25
**ONES [1]** 24/16
**ONLY [40]** 7/5 9/18 10/5 10/20 10/20 11/12 11/23 12/3 12/13 13/17 15/5 15/13 16/19 17/6 18/15 19/22 22/7 22/8 22/21 23/14 24/15 25/9 25/9 25/10 25/15 25/17 27/14 28/8 32/6 35/3 43/5 49/20 50/17 51/1 55/15 55/16 58/18 59/6 59/7 62/7
**OPEN [3]** 25/7 26/20 36/1
**OPENING [1]** 56/22
**OPERATING [3]** 11/12 29/23 30/4
**OPINION [1]** 32/14
**OPPORTUNITY [3]** 9/25 36/23 36/23
**OPPOSE [2]** 37/5 62/10
**OPPOSED [4]** 37/6 39/10 46/8 62/13
**OPPOSITION [3]** 5/12 35/17 59/23
**OPTIONAL [1]** 9/6
**OR [76]**
**ORAL [1]** 66/9
**ORDER [8]** 9/5 9/6 11/2 12/5 15/24 24/8 65/15 65/17
**ORDERED [2]** 12/17 12/21
**ORIGINAL [1]** 39/22
**ORIGINALLY [1]** 46/22
**OTHER [17]** 4/17 11/14 15/16 15/25 16/4 20/11 20/18 22/22 28/15 29/3 34/1 40/1 40/7 46/1 59/3 59/3 65/9
**OTHERS [1]** 40/6
**OTHERWISE [4]** 19/11 21/15 27/4 30/12
**OUR [26]** 4/18 5/11 5/12 5/13 5/25 6/21 13/21 20/2 20/22 23/16 24/2 24/3 24/3 24/10 27/17 33/14 33/16 35/16 35/17 38/6 50/4 52/11 59/23 59/23 62/12 62/17
**OUT [24]** 3/13 3/18 5/24 6/2 9/19 14/10 17/20 24/10 26/21 27/16 27/17 32/21 33/19 34/22 35/18 35/22 35/23 37/1 47/24 48/24 55/23 57/17 59/24 67/4
**OUTLINED [1]** 51/15
**OVER [13]** 5/15 18/25 25/19 25/21 25/22 41/15 44/9 45/9 46/17 47/11 55/7 58/12 64/16
**OVERCOME [2]** 38/10 51/18
**OVERLOOKED [1]** 25/8
**OWN [8]** 15/6 19/20 21/17 21/18 37/22 40/5 51/2 51/3

## P

**PACKAGE [1]** 65/3
**PAGE [10]** 5/25 12/25 23/4 35/18 41/6 41/8 43/25 44/1 53/21 59/22
**PAGE 13 [1]** 43/25
**PAGE 1320 [1]** 44/1
**PAGE 37 [1]** 41/6
**PAGE 38 [1]** 41/8
**PAGE 7 [1]** 35/18
**PAIN [1]** 30/11
**PAINFUL [2]** 30/8 30/18
**PALSY [1]** 4/17
**PANOPLY [1]** 47/23
**PARAPHRASING [2]** 18/13 18/14
**PARENT [2]** 4/23 20/3
**PARENTS' [2]** 48/10 49/12
**PARISH [1]** 62/9
**PARSE [1]** 3/20
**PART [3]** 12/13 21/9 22/6
**PARTICULAR [3]** 14/9 20/6 24/3
**PARTICULARLY [4]** 5/16 16/16 28/14 59/10
**PARTIES [1]** 66/20
**PASSED [1]** 9/9
**PAST [1]** 24/18
**PENALTY [19]** 3/8 8/2 8/4 14/3 40/11 41/7 41/18 44/25 47/24 48/7 48/14 52/3 53/3 53/18 54/2 63/12 63/21 63/23 64/10
**PENDING [3]** 6/7 11/18 65/14
**PEOPLE [7]** 36/25 38/16 48/8 48/16 63/14 67/1 67/3
**PERCEIVED [1]** 21/25
**PERFECT [1]** 66/2
**PERFORM [1]** 34/10
**PERFORMANCE [2]** 34/14 35/5
**PERFORMED [1]** 21/19
**PERHAPS [2]** 8/10 16/15
**PERMIT [1]** 45/15
**PERMITS [4]** 44/1 44/3 52/18 52/19
**PERSONALLY [1]** 8/8
**PERSUADE [1]** 7/3
**PERTINENT [1]** 19/9
**PETITION [54]** 5/22 5/23 5/25 6/4 6/10 6/18 9/12 9/13 9/13 9/14 9/15 9/17 9/20 9/20 10/1 10/2 12/18 12/19 12/19 12/20 13/14 15/22 16/1 16/5 16/8 16/9 16/13 16/14 16/20 16/20 16/23 17/15 17/16 18/20 19/7 19/19 19/20 23/8 23/14 23/17 24/14 25/23 32/4 33/5 33/6 33/14 33/15 35/17 35/22 35/23 37/9 41/5 41/6 47/6
**PETITIONER [14]** 1/12 2/4 2/13 2/24 3/16 12/10 15/22 16/1 17/23 31/7 36/22 37/21 37/24 60/25
**PETITIONER'S [1]** 20/23
**PETITIONS [3]** 38/6 44/6 61/9
**PHASE [22]** 3/9 5/11 8/2 8/4 40/11 41/7 41/18 44/25 47/24 48/7 48/7 48/14 52/3 52/3 53/3 53/18 54/2 55/19 63/12 63/21 63/23 64/10
**PHYSICAL [2]** 4/8 56/6
**PICKING [1]** 56/12
**PICTURE [1]** 55/21
**PIECE [4]** 7/24 14/10 54/12 57/13
**PIECES [1]** 26/6
**PINHOLSTER [1]** 12/12
**PLACE [8]** 25/10 25/15 28/21 35/9 39/4 46/19 48/15 53/19
**PLACEHOLDER [1]** 9/20
**PLACES [2]** 10/25 48/20
**PLANNED [1]** 28/14
**PLEA [11]** 11/18 11/21 11/24 11/24 11/25 25/4 26/9 26/11 26/12 26/21 26/22

**P**

PLEADING [2] 23/14 64/2
PLEADINGS [13] 8/22 15/5 17/14 18/1 18/16 22/18 22/20 22/21 23/6 24/4 38/6 57/20 62/12
PLEASE [5] 2/9 2/11 47/25 60/6 66/13
PLENTY [2] 39/21 63/9
PLUS [1] 34/1
PODIUM [1] 48/4
POINT [10] 7/7 20/6 25/15 31/13 32/1 33/19 56/21 57/6 59/12 59/15
POINTED [5] 9/18 27/15 27/15 34/22 54/21
POINTS [4] 24/4 24/10 25/20 33/3
POLICY [1] 36/24
POSE [1] 38/18
POSITION [5] 42/4 61/1 61/3 61/4 61/7
POSITIVE [1] 4/22
POSSIBILITY [1] 56/11
POST [10] 4/3 15/14 39/23 41/24 46/5 58/20 62/12 64/2 64/8 66/11
POST-CONVICTION [8] 4/3 15/14 39/23 41/24 46/5 58/20 64/2 64/8
POST-HEARING [2] 62/12 66/11
POSTCARD [1] 12/25
POTENTIAL [2] 19/23 39/12
POVERTY [2] 4/5 4/14
PRACTICING [1] 7/7
PRE [1] 52/14
PRE-TRIAL [1] 52/14
PREACHER [1] 63/17
PRECEDED [1] 15/25
PRECISELY [1] 10/11
PRECLUDE [1] 61/5
PREDOMINANTLY [1] 34/6
PREFERRED [1] 49/4
PREJUDICE [17] 7/24 9/25 13/15 16/8 34/23 34/23 54/11 54/13 54/20 54/22 54/23 57/12 57/19 57/21 57/22 57/23 57/24
PREJUDICIAL [2] 19/24 64/12
PREMATURE [1] 25/13
PREOCCUPIED [1] 19/11
PREPARATION [6] 18/22 28/13 32/6 41/12 49/17 54/2
PREPARE [10] 28/17 29/17 29/18 34/7 40/7 53/5 53/17 56/1 57/10 57/13
PREPARED [3] 7/20 49/20 50/2
PREPARING [1] 29/4
PRESENT [23] 2/3 2/6 2/25 6/3 18/13 28/14 31/6 31/9 34/7 34/10 45/10 45/13 45/24 45/25 46/11 46/12 52/7 56/19 56/25 58/5 64/7 65/3 66/9
PRESENTATION [3] 5/14 34/13 42/22
PRESENTED [17] 3/24 4/2 5/7 5/13 6/15 6/16 21/3 38/4 39/19 40/21 55/12 56/3 56/17 60/2 60/10 63/21 64/17
PRESENTS [2] 3/5 13/8
PRESUMPTION [1] 21/13
PREVAIL [1] 47/17
PREVIOUS [2] 12/18 32/2
PREVIOUSLY [1] 53/11
PRIMARILY [1] 15/15
PRIOR [1] 4/11
PRISON [3] 48/13 65/20 65/21
PRO [4] 32/25 58/24 59/1 59/8
PROBLEM [5] 27/1 35/1 37/23 57/23 63/1
PROBLEMS [1] 40/1
PROCEDURAL [20] 3/18 3/20 3/21 5/9 9/5 9/6 9/8 19/5 32/18 35/13 38/1 38/9 38/10 44/5 44/13 44/13 44/22 44/22 45/2 62/5
PROCEDURALLY [3] 3/11 43/1 60/20
PROCEDURE [4] 3/7 22/17 42/6 42/25
PROCEED [1] 36/16
PROCEEDING [9] 21/13 23/11 32/17 43/6 44/5 44/12 44/15 44/16 46/12
PROCEEDINGS [12] 5/22 7/3 7/5 15/3 15/25 16/3 32/20 32/21 44/3 44/7 66/19 67/8
PROCESS [6] 20/14 21/10 38/3 41/24 50/18 59/4
PROFESSION [1] 50/21
PROFESSIONAL [1] 53/22
PROLONGING [1] 30/17
PROMULGATED [1] 35/6
PRONG [3] 26/5 35/5 57/19
PROOF [1] 22/11
PROPER [1] 59/14
PROPERLY [2] 46/20 57/13
PROSECUTION [1] 55/6
PROVE [2] 34/23 34/23
PROVEN [3] 8/19 12/6 13/7
PROVIDE [8] 13/6 23/19 28/17 36/22 43/23 50/24 62/12 62/23
PROVIDED [13] 3/25 5/4 6/17 8/14 11/16 25/9 28/6 28/24 29/19 39/12 50/11 55/3 59/7
PROVIDING [3] 6/22 29/5 62/7
PSYCHIATRIC [5] 33/21 56/4 56/7 56/13 61/16
PSYCHIATRIST [1] 63/18
PSYCHO [1] 56/9
PSYCHOLOGIST [2] 60/18 63/18
PSYCHOPHARMACOLOGIST [1] 57/7
PUBLIC [1] 66/20
PULLED [1] 24/10
PURPOSE [4] 39/4 39/7 46/18 52/2
PUT [10] 7/21 10/12 27/20 32/8 32/9 38/22 40/10 40/11 49/17 54/6

**Q**

QUALIFY [1] 64/5
QUARTERMAN [2] 60/14 60/21
QUESTION [16] 3/19 12/8 13/14 13/16 13/22 13/24 13/25 20/13 22/14 23/4 30/6 30/8 38/18 42/12 62/3 64/19
QUESTIONS [4] 3/20 5/9 19/5 54/14
QUIBBLE [1] 47/15
QUIBBLING [1] 5/14
QUICK [1] 51/8
QUICKLY [2] 62/11 63/5
QUITE [6] 6/12 18/3 22/21 23/5 30/19 30/23

**R**

RAISE [6] 35/25 36/3 37/25 43/2 43/5 46/2
RAISED [18] 13/10 16/13 16/14 30/2 32/16 33/6 33/17 37/8 37/9 43/22 44/12 44/19 46/17 46/22 47/17 57/20 57/22 59/17
RAISING [1] 44/5
RALPH [1] 23/9
RANDOLPH [1] 25/1
RAP [1] 22/23
RATHER [2] 10/2 47/9
RAY [1] 63/10
RE [1] 36/1
RE-OPEN [1] 36/1
REACH [2] 35/15 65/3
REACHED [2] 43/13 45/6
READ [3] 10/10 17/8 36/16
READING [5] 25/2 27/2 37/18 38/19 43/25
REAL [6] 16/19 28/11 39/7 40/20 53/25 59/13
REALLY [10] 8/6 11/13 15/2 24/21 26/11 29/1 33/12 39/17 48/14 49/6
REASON [6] 6/24 13/3 23/22 40/24 41/20 46/7
REASONABLE [5] 12/9 12/11 13/18 27/24 41/10
REASONABLENESS [3] 11/6 11/7 14/2
REASONING [1] 26/15
REASONS [2] 13/2 67/1
REBECCA [4] 1/13 2/2 2/13 31/5
RECALL [3] 18/6 25/7 41/23
RECEIVE [3] 25/24 25/25 26/1
RECEIVED [2] 58/19 63/2
RECEIVES [1] 66/21
RECENTLY [1] 6/20
RECER [6] 1/13 2/3 2/12 31/6 31/16 45/8
RECESS [3] 31/3 31/11 66/23
RECOLLECTION [5] 19/20 20/19 21/17 21/18 23/13
RECOLLECTIONS [1] 15/7
RECOMMENDATION [4] 8/17 10/22 19/4 19/6
RECOMMENDATIONS [2] 8/7 10/16
RECOMMENDING [1] 9/23
RECONSIDERATION [1] 3/2

R
RECORD [66] 2/11 2/20 7/2 7/2 10/4 10/24 11/10 11/25 12/1 12/16 15/8 15/18 16/21 17/2 17/11 18/6 18/9 18/16 18/18 20/13 20/15 20/16 21/11 21/11 21/18 23/13 24/20 24/22 24/23 26/8 26/16 26/23 26/25 27/3 27/14 27/18 27/19 27/23 27/23 27/24 29/22 29/24 30/24 30/25 31/12 31/20 34/6 37/12 39/21 40/4 41/1 42/18 45/6 48/18 48/20 52/21 52/25 53/12 55/8 55/11 55/14 62/11 63/7 63/9 66/7 67/8
RECORDS [26] 4/17 5/2 5/4 11/15 18/10 28/5 28/6 28/7 29/7 29/16 30/1 36/9 36/9 38/16 49/21 50/2 50/25 51/9 54/4 54/4 55/14 55/14 55/15 55/16 56/4 57/16
RECRUITING [2] 58/24 59/1
REDONE [1] 16/22
REFER [5] 24/2 35/16 38/21 53/19 61/24
REFERENCE [1] 25/23
REFERENCES [1] 11/13
REFERRED [4] 17/1 21/8 23/15 24/21
REFERRING [1] 18/4
REFERS [2] 18/21 53/19
REFLECT [3] 31/20 32/5 63/9
REFLECTED [1] 27/13
REFLECTION [1] 12/1
REFLECTS [1] 40/5
REGARD [13] 11/3 11/17 11/19 11/20 14/3 24/25 25/1 25/4 25/5 25/11 27/7 27/12 28/15
REGARDING [7] 4/17 7/24 34/8 55/2 55/3 56/5 62/17
REGULARLY [1] 61/3
REJECTED [2] 10/15 10/22
RELATED [4] 5/22 8/5 18/5 23/9
RELATES [1] 3/10
RELATING [1] 3/6
RELATION [1] 18/17
RELATIONSHIPS [1] 4/22
RELATIVE [1] 20/1
RELATIVELY [1] 60/1
RELATIVES [1] 51/2
RELIABLE [1] 57/11
RELIEF [12] 8/20 9/1 9/4 10/18 12/6 13/5 13/7 13/12 13/20 17/25 24/8 58/3
RELY [1] 28/25
RELYING [14] 15/18 17/11 18/15 23/5 23/6 23/7 25/21 26/14 28/3 30/24 49/20 51/10 53/6
REMEDIES [1] 60/9
REMEDY [4] 38/25 47/6 47/16 47/19
REMEMBER [2] 26/12 26/16
REMOVED [1] 38/9
RENDERED [2] 31/23 60/20
REPACKAGED [1] 16/22
REPETITIVE [1] 7/18
REPLIED [2] 6/19 6/19
REPLY [5] 24/3 24/10 27/17 35/16 59/23
REPORT [4] 9/22 10/4 12/16 25/3
REPORTED [1] 1/21
REPORTER [1] 67/12
REPORTS [1] 28/8
REPRESENTATION [3] 7/8 35/8 59/2
REQUEST [1] 57/4
REQUESTED [1] 53/16
REQUESTING [1] 7/16
REQUIRE [12] 8/20 9/1 9/4 10/7 10/18 12/6 13/7 13/10 13/11 13/19 24/8 54/16
REQUIRED [5] 6/10 7/24 18/23 28/23 28/24
REQUIRES [2] 8/24 9/8
RESOLUTION [1] 13/11
RESOURCES [6] 4/1 7/11 33/2 36/5 38/13 38/15
RESPECTFULLY [1] 24/2
RESPOND [5] 16/2 16/5 16/11 42/1 63/5
RESPONDED [2] 15/1 15/22
RESPONDENT [5] 6/19 9/2 11/1 12/11 13/23
RESPONDENT'S [2] 8/22 59/23
RESPONDENTS [4] 1/16 2/7 31/10 33/13
RESPONSE [8] 5/11 6/21 14/8 16/7 23/16 24/8 33/14 33/15
RESPONSIBLE [1] 8/4
REST [1] 56/17
RESULT [3] 29/9 40/12 41/4
RETAINED [2] 50/5 60/18
RETARDATION [2] 51/4 56/14
RETROACTIVE [1] 16/19
REVIEW [17] 10/19 18/10 28/4 30/1 32/17 32/19 36/20 38/1 38/8 43/23 44/2 44/4 44/8 44/12 44/15 61/6 61/21
REVIEWED [6] 10/20 15/4 15/5 42/18 45/5 64/3
REVIEWING [6] 10/5 14/1 14/1 17/2 17/3 17/4
RICH [2] 13/10 34/25
RIGHT [29] 2/15 3/1 3/15 14/12 14/17 20/9 20/20 21/2 22/13 23/24 27/8 27/8 27/11 31/4 31/12 36/15 37/13 38/17 41/9 45/22 47/13 48/1 56/9 63/4 65/9 65/20 66/7 66/18 66/23
RING [2] 16/17 16/19
ROMAN [2] 18/20 44/10
ROUGE [2] 1/23 62/9
ROW [1] 58/18
RULE [4] 43/19 47/5 47/9 48/13
RULED [7] 3/11 9/14 15/17 23/23 47/10 52/21 62/18
RULING [13] 3/2 9/8 9/17 17/19 23/3 23/4 23/12 23/21 25/10 29/21 32/22 44/1 46/14
RULINGS [1] 39/8
RUN [2] 45/12 57/18
RUNNING [1] 58/12
RUSHED [2] 27/19 54/6
RYAN [1] 31/21
S
SAFETY [1] 66/21
SAID [35] 2/21 4/13 10/3 11/20 17/17 18/3 22/22 23/1 23/3 23/21 25/5 26/25 27/10 27/18 27/20 27/22 28/3 29/1 32/13 32/14 40/6 41/25 42/19 42/24 43/19 46/9 46/11 47/6 47/23 49/20 52/2 53/7 54/11 62/7 64/4
SAME [21] 10/13 10/14 16/15 16/24 23/4 38/12 38/14 38/18 42/18 43/13 45/6 45/6 45/6 45/21 49/7 53/19 58/8 58/10 59/16 61/8 61/10
SANDBAG [1] 45/11
SANDBAGGING [4] 45/23 58/11 59/17 62/24
SAW [3] 6/1 39/16 50/5
SAY [27] 8/22 11/5 11/12 17/24 26/15 32/7 32/10 39/23 40/19 40/20 41/16 43/1 44/20 45/2 45/11 46/2 46/13 47/22 49/13 52/1 52/2 52/4 53/25 54/22 63/22 64/11 67/1
SAYING [15] 18/15 18/16 20/3 20/7 22/7 25/6 25/8 46/24 48/23 52/11 52/13 52/14 52/15 64/10 65/2
SAYS [21] 3/3 18/6 18/18 18/23 25/20 26/9 26/9 26/19 26/20 26/21 30/3 32/8 35/14 43/17 43/21 44/10 51/11 53/3 53/22 59/16 65/4
SCENARIO [1] 46/22
SCHEDULE [1] 6/8
SCHEME [1] 25/14
SCHOOL [8] 4/24 4/25 5/3 29/15 29/16 36/9 50/25 56/4
SCIENCE [1] 54/17
SEARCHES [1] 55/16
SEATED [1] 2/9
SECOND [13] 3/7 5/23 9/13 10/2 16/13 16/20 16/23 18/20 32/4 40/25 41/5 41/6 66/1
SECONDLY [2] 53/17 54/25
SECONDS [2] 18/7 18/8
SECRET [1] 62/24
SECTION [1] 18/21
SECURE [2] 57/4 57/6
SECURITY [1] 66/25
SEE [6] 19/2 19/17 26/2 27/19 59/11 61/9
SEEK [1] 53/10
SEEKING [1] 64/3
SEIZURE [4] 4/9 51/2 56/14 61/19
SELECTED [1] 10/8
SENSE [1] 64/20
SENT [2] 54/5 65/15
SEPARATE [1] 22/14

## S

SEPTEMBER [1] 15/10
SET [13] 3/13 3/18 5/11 5/24 6/7 27/17 32/21 35/18 35/21 35/23 40/24 59/24 62/17
SETS [1] 6/2
SETTING [1] 14/10
SEVERAL [11] 6/5 8/5 8/21 10/25 24/4 25/20 37/8 38/21 48/20 49/1 51/3
SHALL [2] 9/5 9/6
SHANNON [2] 1/21 67/11
SHE [7] 8/8 8/10 10/5 10/6 10/8 18/8 20/11
SHEET [1] 22/23
SHELL [1] 9/20
SHORT [1] 12/5
SHOT [1] 18/7
SHOULD [12] 8/11 22/8 35/9 36/16 37/18 37/20 38/2 39/24 39/25 39/25 40/1 58/6
SHOULDN'T [3] 19/11 19/14 58/7
SHOW [7] 19/23 19/24 20/22 20/23 30/7 54/7 63/23
SHOWED [2] 48/9 61/17
SHOWING [4] 21/15 30/11 57/13 64/4
SHOWS [1] 55/21
SIDE [4] 10/12 10/12 55/17 67/2
SIDE-BY-SIDE [1] 10/12
SIGN [2] 65/16 65/23
SIGNED [1] 66/18
SIGNIFICANT [5] 4/19 5/6 43/11 56/5 56/9
SIMILARLY [1] 60/21
SIMPLY [8] 27/2 28/1 29/25 34/24 38/5 38/22 55/25 65/2
SINCE [5] 4/8 5/4 5/23 40/18 54/20
SINGLE [2] 30/19 59/3
SINGQUEFIELD [1] 1/18
SINQUEFIELD [6] 2/5 2/17 17/9 25/20 25/22 31/8
SIR [5] 16/10 19/2 64/21 64/24 66/22
SISTER [3] 4/16 51/2 63/17
SIT [1] 2/22
SITTING [1] 21/20
SITUATION [8] 12/24 15/21 15/24 38/24 43/17 46/23 47/4 47/17
SIX [2] 31/22 53/15
SIXTH [1] 41/9
SLIGHTLY [2] 5/14 9/21
SLOW [1] 60/6
SMITH [2] 60/14 60/15
SO [85]
SOCIAL [7] 28/25 50/3 50/6 55/20 55/24 56/12 56/16
SOLELY [2] 29/1 29/10
SOME [21] 8/3 14/19 15/9 16/25 19/23 22/24 27/25 32/13 33/9 33/19 36/6 36/7 36/8 36/9 42/11 45/16 48/21 53/23 55/18 59/14 63/13
SOMEBODY [1] 51/9
SOMEONE [4] 21/25 32/9 36/10 57/14
SOMETHING [7] 14/23 20/7 21/23 37/4 41/25 63/12 63/24
SOMETIMES [1] 58/24
SOMEWHERE [1] 42/4
SOON [1] 16/5
SOREN [4] 1/14 2/3 2/13 31/6
SORRY [4] 18/11 19/13 44/7 52/19
SORT [9] 9/20 19/23 25/13 25/21 26/15 36/25 37/23 49/16 51/8
SORTS [1] 49/10
SOUGHT [4] 7/10 7/10 7/10 7/11
SOURCES [1] 29/2
SPEAKS [1] 18/9
SPECIALIST [4] 36/12 51/14 51/22 55/10
SPECIALISTS [1] 51/15
SPECIFIC [5] 11/24 12/20 12/21 30/11 30/15
SPEND [1] 28/9
SPENT [1] 51/12
SPIN [1] 49/7
SPOKE [2] 8/13 48/17
SPONTE [1] 12/18
SPUN [1] 42/20
STAND [1] 63/8
STANDARD [19] 21/22 28/21 30/5 30/9 30/10 30/12 35/7 35/9 40/23 45/17 45/18 46/6 46/9 50/9 50/9 54/9 61/21 65/4 65/7
STANDARDS [4] 28/15 28/20 35/5 35/6
START [3] 14/23 50/24 67/2
STARTING [1] 35/17
STARTS [1] 25/6
STATE [153]
STATE'S [5] 5/11 23/15 24/4 35/17 47/7
STATED [14] 9/3 10/17 10/24 10/25 11/8 13/4 19/16 19/18 24/9 26/3 33/3 34/21 35/2 58/1
STATEMENT [1] 56/22
STATEMENTS [3] 22/25 23/1 28/1
STATES [5] 1/1 1/22 44/1 44/3 52/6
STATEWIDE [1] 63/1
STATUS [6] 9/16 10/9 15/10 16/3 17/8 57/1
STATUTE [3] 8/24 9/8 24/6
STAY [7] 1/9 6/21 33/16 65/12 65/13 65/14 65/19
STAYING [1] 66/19
STEP [4] 15/12 16/6 38/3 52/7
STEPPED [1] 32/25
STILL [7] 15/15 17/16 24/18 27/4 35/15 40/10 42/15
STITCHES [1] 55/8
STOPPED [1] 7/7
STORIES [1] 49/14
STORY [5] 3/22 4/2 42/20 49/6 52/12
STRATEGIC [3] 8/12 27/25 49/4
STRATEGY [1] 39/25
STREET [1] 1/23
STRICKLAND [3] 22/12 64/5 64/14
STRUCTURED [1] 10/14
STRUGGLE [1] 4/23
STUDENTS [1] 36/8
SUA [1] 12/17
SUAREZ [2] 30/2 30/22
SUAREZ'S [1] 18/4
SUBJECTIVE [1] 56/10
SUBMIT [2] 9/7 65/1
SUBMITTED [3] 8/5 8/15 25/9
SUBSTANTIAL [1] 44/14
SUBSTANTIALLY [1] 46/21
SUBSTANTIATE [1] 43/8
SUBSTANTIVE [1] 25/10
SUCH [2] 7/3 13/4
SUFFERED [3] 4/8 5/6 61/17
SUFFERING [1] 30/17
SUFFERS [1] 56/9
SUFFICIENT [2] 45/5 53/5
SUGGEST [1] 38/2
SUGGESTED [1] 28/3
SUGGESTING [1] 47/3
SUMMARILY [2] 7/13 7/14
SUMMARY [4] 15/4 22/17 22/19 22/19
SUPERFICIAL [2] 49/9 49/16
SUPPLEMENTAL [2] 12/16 51/16
SUPPORT [3] 48/16 48/24 60/2
SUPPORTING [1] 33/7
SUPPOSED [7] 9/16 10/9 40/25 45/18 49/25 50/11 52/1
SUPREME [3] 31/14 31/21 63/20
SURE [8] 19/7 25/7 30/19 46/1 50/23 63/10 65/19 66/20
SURMISE [1] 52/4
SYSTEM [3] 39/5 39/6 48/13
SYSTEMIC [1] 63/1
SYSTEMS [1] 44/2

## T

TAKE [11] 10/11 10/11 14/5 14/7 24/21 31/2 50/18 62/8 65/13 67/1 67/2
TAKES [2] 61/3 61/7
TAKING [1] 26/7
TALK [5] 29/3 39/4 39/14 41/12 57/7
TALKED [3] 22/24 36/11 40/9
TALKING [11] 15/13 15/19 21/12 22/15 22/24 29/12 29/14 31/19 31/21 58/8 64/6
TEACHERS [1] 49/22
TEAM [5] 25/23 25/24 26/1 36/11 39/19
TELL [5] 4/19 19/3 20/14 31/16 47/13
TELLS [1] 52/20
TESTIFIED [7] 18/9 28/4

## T

**TESTIFIED... [5]** 28/5 39/22 41/4 55/19 63/14
**TESTIFY [4]** 34/2 48/25 49/25 50/1
**TESTIFYING [1]** 26/12
**TESTIMONY [10]** 18/5 18/14 18/14 25/21 28/8 28/14 32/14 40/5 49/9 49/10
**TESTING [7]** 28/11 33/21 36/5 50/3 51/7 56/3 57/15
**THALER [2]** 17/17 17/22
**THAN [14]** 4/2 10/3 11/14 20/5 20/11 20/18 23/22 29/3 33/5 42/13 44/22 47/9 50/14 61/13
**THANK [7]** 2/23 3/17 23/24 31/4 63/4 66/17 66/24
**THAT [559]**
**THAT'S [65]** 3/14 5/8 8/13 9/1 14/17 15/15 16/19 17/22 18/6 20/1 20/25 21/1 21/22 21/23 22/7 22/15 22/19 23/2 24/9 25/15 27/1 27/8 30/8 30/13 32/4 34/10 35/21 37/17 39/6 40/4 40/17 40/23 42/21 44/18 44/21 45/14 45/23 45/23 46/6 46/7 47/3 47/12 47/18 47/19 48/20 52/1 52/4 54/12 54/13 54/24 55/11 57/8 57/11 57/22 57/24 57/25 59/1 59/19 60/19 61/11 64/7 64/22 64/22 65/6 65/8
**THEIR [28]** 6/20 15/22 21/3 22/9 22/9 22/11 22/25 28/7 28/8 28/17 28/17 29/6 33/14 33/14 33/15 37/1 41/5 41/6 43/6 43/8 45/19 45/20 46/18 46/20 46/21 52/10 57/20 63/3
**THEM [34]** 9/4 9/6 10/12 13/5 13/7 14/5 14/7 16/3 21/8 21/9 24/17 29/5 29/5 29/8 29/8 32/8 36/3 36/11 40/14 41/15 41/25 42/2 42/5 42/10 43/9 48/17 48/25 49/16 50/24 51/3 54/5 54/5 56/1 59/4
**THEM IN [1]** 48/17
**THEMSELVES [1]** 24/6
**THEN [36]** 3/9 3/11 3/15 9/1 9/7 10/22 13/5 14/8 16/5 16/8 16/9 17/16 17/20 17/21 21/4 21/7 21/15 26/2 27/4 30/2 30/25 43/2 43/4 43/22 45/10 46/6 46/10 46/22 46/23 48/12 50/20 53/24 54/6 57/7 62/3 67/3
**THERE [89]**
**THERE'S [23]** 4/17 10/13 11/14 12/25 15/13 17/8 21/15 23/22 26/5 26/20 29/13 33/3 36/4 36/8 39/6 45/8 46/1 51/5 51/6 53/20 54/8 54/9 54/25
**THEREABOUT [1]** 18/7
**THEREFORE [3]** 24/9 39/2 45/3
**THESE [22]** 3/20 3/21 4/21 5/9 6/11 8/12 13/8 15/3 16/22 18/17 23/8 24/18 24/19 29/1 36/3 37/10 40/8 41/14 47/21 48/15 60/24 66/19
**THEY [178]**
**THEY'RE [5]** 6/22 11/12 49/14 65/8 65/21
**THEY'VE [1]** 52/2
**THING [12]** 9/23 10/3 18/4 22/7 22/8 22/23 26/11 28/8 33/17 38/14 44/21 46/8
**THINGS [12]** 17/1 22/22 23/8 23/11 25/21 29/24 38/21 41/18 49/12 51/13 54/18 64/10
**THINK [22]** 5/9 8/22 14/19 18/18 18/23 19/13 19/17 22/2 23/20 26/10 27/1 30/3 30/23 31/16 32/5 37/20 38/22 49/5 61/8 65/10 65/18 66/2
**THINKS [1]** 10/6
**THIRD [1]** 3/9
**THIRDLY [1]** 54/25
**THIRTY [2]** 9/4 18/8
**THIS [124]**
**THOMPSON [3]** 1/21 66/8 67/11
**THOROUGH [7]** 28/18 40/10 40/12 41/2 41/3 50/11 54/23
**THOROUGHLY [3]** 29/9 53/14 54/23
**THOSE [40]** 7/19 7/19 9/9 10/5 10/21 11/8 11/9 12/4 21/3 21/5 21/5 21/9 23/1 23/10 24/10 32/19 34/13 34/15 35/19 35/22 36/19 36/20 37/2 37/5 37/6 37/7 49/15 52/8 53/8 53/15 54/18 55/18 55/20 58/14 59/3 61/14 63/10 63/11 63/19 64/19
**THOUGH [6]** 19/1 19/9 21/22 21/24 40/5 65/9
**THOUGHT [6]** 8/10 10/21 12/4 14/17 52/12 53/7
**THREE [6]** 11/11 25/18 48/12 49/2 60/12 61/13
**THRESHOLD [3]** 25/14 61/10 61/11
**THRESHOLDS [1]** 9/10
**THROUGH [12]** 9/9 10/3 14/6 15/11 25/14 37/22 41/12 41/17 42/6 51/6 51/7 62/7
**THROUGHOUT [15]** 11/11 15/3 15/20 15/25 16/3 17/7 17/10 18/3 18/4 21/21 22/23 23/11 37/9 52/16 66/9
**TILTON [1]** 25/12
**TIME [38]** 2/7 2/24 5/19 6/4 6/18 6/25 7/1 7/10 7/16 8/6 8/9 14/5 14/7 14/20 14/24 16/2 18/7 20/2 20/2 20/17 27/20 28/9 34/22 35/1 40/3 40/7 42/12 46/10 51/12 52/14 53/5 53/10 58/16 58/20 60/10 60/16 65/5 67/1
**TIMELINESS [2]** 32/23 62/18
**TIMES [3]** 6/5 8/23 17/10
**TODAY [9]** 5/19 23/22 34/19 35/20 35/21 40/18 42/13 58/9 65/5
**TODD [6]** 1/4 2/1 2/4 2/12 2/25 31/7
**TODD'S [1]** 4/15
**TOLD [2]** 16/3 20/11
**TOLLING [2]** 7/4 62/17
**TOMORROW [1]** 46/2
**TOO [1]** 46/5
**TOOK [6]** 7/19 12/3 16/25 48/14 61/1 61/4
**TOP [1]** 43/25
**TORTURE [1]** 30/16
**TOTALLY [1]** 41/16
**TOUCHED [1]** 51/8
**TRACKS [1]** 10/10
**TRAINING [1]** 50/10
**TRAITS [1]** 49/15
**TRANSCRIPT [9]** 11/11 11/13 26/6 26/17 26/18 26/19 28/2 29/24 67/7
**TRANSCRIPTS [5]** 15/6 23/7 23/13 27/17 30/23
**TRAUMA [1]** 56/15
**TREE [1]** 50/21
**TRIAL [67]** 3/8 4/3 4/24 5/1 5/7 6/16 8/1 8/3 14/16 14/21 18/15 18/22 19/21 21/19 21/19 21/21 22/1 22/5 22/25 25/23 25/24 26/1 30/5 30/20 32/16 34/3 39/20 39/22 40/12 40/19 40/22 41/1 41/7 41/13 44/11 44/15 48/2 48/7 48/7 48/7 49/9 51/22 51/23 51/25 52/14 53/4 53/17 55/4 55/10 55/22 56/22 56/25 57/3 57/6 57/10 59/11 60/17 63/13 63/22 63/25 64/1 64/8 64/9 64/11 64/12 64/13 64/17
**TRIED [2]** 40/2 43/7
**TRUE [18]** 9/1 13/4 13/12 13/19 13/20 17/15 17/20 17/25 24/7 26/2 29/11 29/16 30/1 30/19 50/7 53/24 58/3 59/18
**TRUST [1]** 51/17
**TRY [5]** 14/13 37/24 43/21 45/2 52/13
**TRYING [4]** 21/1 38/21 44/18 44/20
**TURN [3]** 40/17 47/24 57/17
**TURNED [2]** 25/19 25/22
**TURNS [2]** 17/20 25/20
**TWENTY [1]** 18/8
**TWICE [1]** 53/11
**TWO [16]** 3/12 7/22 9/9 25/17 26/5 31/13 33/3 33/25 36/18 38/3 48/11 52/24 53/1 54/3 54/4 61/9
**TWO-PRONG [1]** 26/5
**TWO-STEP [1]** 38/3
**TYPE [2]** 17/19 33/1
**TYPICALLY [1]** 39/7

## U

**UNAFFECTED [1]** 44/9
**UNAWARE [2]** 26/8 49/24
**UNDER [26]** 4/24 5/1 8/19

**U**

**UNDER... [23]** 15/4 16/17 18/1 19/21 22/12 24/17 30/9 30/13 32/15 34/16 34/16 35/12 36/15 36/17 37/23 43/18 44/11 59/19 61/20 62/1 64/4 64/14 65/14
**UNDERSTAND [3]** 3/5 51/19 58/17
**UNDERSTANDING [1]** 4/19
**UNDERSTANDS [1]** 5/16
**UNEQUIVOCALLY [1]** 50/7
**UNEXHAUSTED [22]** 6/20 6/23 6/24 14/3 31/1 31/25 33/12 33/14 35/14 35/24 36/19 38/4 38/7 41/16 45/9 45/12 57/1 60/14 60/25 61/1 61/5 62/1
**UNFUNDED [2]** 62/16 62/22
**UNITED [2]** 1/1 1/22
**UNIVERSALLY [1]** 50/8
**UNLESS [3]** 21/14 38/8 38/8
**UNLIMITED [5]** 42/5 42/5 65/5 65/5 65/6
**UNNOTICED [1]** 62/19
**UNPREPARED [4]** 29/9 48/15 48/19 50/6
**UNREASONABLE [7]** 24/20 26/23 27/4 27/5 27/5 30/21 30/22
**UNSWORN [1]** 25/21
**UNTIL [3]** 3/25 37/1 66/19
**UP [28]** 2/22 14/5 14/7 15/12 15/17 17/12 19/3 22/4 27/9 29/2 39/16 40/1 40/2 40/15 40/17 40/24 41/8 41/14 41/19 42/16 45/3 47/13 48/9 48/16 54/7 56/12 63/22 64/2
**UPON [2]** 9/14 30/25
**US [10]** 4/19 8/5 8/14 15/24 30/25 35/13 38/9 62/5 66/12 66/13
**USE [1]** 57/10
**USED [2]** 50/21 53/15

**V**

**VAGUE [2]** 11/22 26/10
**VAGUELY [1]** 34/21
**VARIETY [1]** 44/2
**VERSUS [14]** 1/5 3/3 3/4 12/12 16/17 17/17 31/21 60/4 60/7 60/12 60/14 60/21 60/22 61/25
**VERY [38]** 4/2 4/19 12/3 12/5 13/9 13/10 26/10 26/22 28/9 28/11 29/10 30/9 30/11 30/14 30/15 33/5 33/19 34/10 34/21 35/19 37/12 38/12 39/7 40/10 40/12 41/2 43/18 47/4 47/4 49/16 50/9 51/12 52/10 53/20 57/15 58/3 61/11 65/21
**VICTIM [1]** 30/7
**VIEW [1]** 37/19
**VIEWED [1]** 22/5
**VIRTUALLY [1]** 10/10
**VISIT [1]** 52/20
**VOIR [2]** 3/10 34/8
**VOUCHING [1]** 49/16

**W**

**WAIT [1]** 37/1
**WAITING [1]** 2/9
**WANT [12]** 17/13 20/25 31/24 39/23 40/17 40/18 41/25 42/25 45/25 46/12 46/18 63/11
**WANTED [9]** 19/7 40/13 40/16 41/4 42/2 42/20 47/11 49/5 64/1
**WANTS [3]** 10/7 25/12 54/22
**WAS [284]**
**WASN'T [14]** 16/19 19/9 26/7 26/18 26/19 26/24 27/1 27/19 34/23 39/11 47/17 47/22 53/8 63/10
**WAY [15]** 5/15 6/15 6/16 8/20 13/4 22/4 24/14 24/23 33/7 38/1 40/24 46/13 47/25 59/12 61/5
**WAYS [6]** 8/21 24/24 33/20 37/8 52/9 52/24
**WE [136]**
**WE'LL [4]** 39/15 45/12 52/13 67/3
**WE'RE [15]** 6/21 14/1 15/13 15/19 21/12 22/15 22/24 40/23 43/19 45/11 46/23 46/24 58/8 64/15 66/12
**WE'VE [16]** 8/14 24/9 25/8 27/17 38/6 46/22 46/23 52/5 52/5 53/13 54/17 54/17 55/13 55/15 55/19 57/18
**WEEKS [1]** 31/22
**WELL [50]** 4/8 4/9 4/15 4/16 5/3 5/10 5/18 7/22 7/23 11/20 12/14 14/7 15/9 16/7 18/6 19/22 20/5 20/25 21/22 27/9 28/19 29/15 33/15 35/7 35/10 36/7 36/19 39/14 39/23 40/19 40/20 43/12 43/14 45/11 46/1 46/3 47/1 47/22 49/13 50/1 52/12 52/23 55/11 58/11 59/25 61/8 65/23 66/3 66/14 66/21
**WELL-DEFINED [1]** 59/25
**WELL-DEVELOPED [1]** 61/8
**WENT [2]** 15/11 29/9
**WERE [85]**
**WEREN'T [6]** 40/8 40/8 48/13 52/13 52/14 52/15
**WESSINGER [30]** 1/4 2/1 2/4 2/12 2/25 3/4 4/4 4/21 7/8 13/18 28/9 29/3 31/7 32/24 47/20 48/16 48/24 49/20 50/5 55/6 55/15 55/17 56/3 56/8 59/6 59/12 62/23 63/25 64/1 66/9
**WESSINGER'S [10]** 3/23 4/20 6/14 7/6 41/9 51/2 55/2 57/1 62/25 63/14
**WESSINGERS [1]** 4/13
**WHAT [122]**
**WHAT'S [6]** 11/13 20/13 20/16 24/25 49/5 51/24
**WHATEVER [3]** 16/6 41/20 50/19
**WHATSOEVER [1]** 49/18
**WHEN [25]** 7/4 7/15 8/13 9/12 9/14 15/11 16/1 21/12 22/20 26/21 29/3 29/11 31/19 32/2 39/11 39/22 40/16 42/18 42/24 45/5 57/25 60/10 61/1 61/5 63/22
**WHERE [36]** 5/19 7/7 7/9 7/21 12/24 12/25 15/8 24/3 24/4 26/6 32/15 35/18 36/10 36/16 37/13 37/15 37/21 37/22 37/24 38/19 38/25 40/17 42/9 44/10 45/14 45/18 46/23 47/5 47/17 47/18 48/18 50/22 58/21 62/18 62/20 64/22
**WHEREUPON [2]** 31/11 67/5
**WHETHER [23]** 8/25 12/8 13/6 19/15 19/17 22/10 22/16 25/18 25/23 26/2 26/3 30/6 30/18 42/7 46/20 62/3 62/4 64/11 64/12 64/13 64/16 64/17 64/19
**WHICH [32]** 3/12 4/25 6/15 6/16 7/15 9/3 9/14 10/4 14/4 16/18 18/21 22/14 25/2 25/17 29/15 30/25 32/15 33/17 33/20 35/8 35/23 41/11 50/13 52/9 52/10 52/19 53/23 59/22 60/8 61/17 61/23 62/14
**WHILE [3]** 2/9 54/11 57/22
**WHIM [1]** 8/13
**WHO [15]** 4/5 8/4 48/8 48/9 48/16 50/2 51/9 54/7 55/6 57/14 58/18 58/21 59/7 59/8 60/18
**WHOLE [6]** 5/16 17/8 26/23 26/25 39/4 46/18
**WHOM [1]** 63/2
**WHOSE [1]** 39/1
**WHY [10]** 3/19 3/20 5/8 5/18 7/15 38/23 39/7 51/20 57/24 57/25
**WIFE [1]** 63/20
**WIGGINS [21]** 14/4 28/19 31/1 31/25 34/11 34/11 34/17 34/19 34/19 35/4 38/3 41/8 41/11 41/20 42/15 45/4 45/4 53/23 53/25 58/9 58/10
**WIGGINS' [1]** 61/23
**WILL [16]** 3/15 9/10 10/5 18/19 31/3 31/20 32/18 34/2 44/13 45/12 59/6 59/6 65/14 65/18 65/23 65/23
**WILLIAMS' [1]** 63/10
**WINDOW [1]** 58/20
**WISH [1]** 9/7
**WISHED [2]** 39/18 39/19
**WITHHELD [1]** 5/12
**WITHOUT [12]** 9/24 16/8 33/1 33/1 33/1 34/21 34/22 51/25 55/9 55/10 59/4 59/13
**WITNESS [1]** 32/9
**WITNESSES [32]** 7/22 11/18 28/10 29/4 29/18 29/19 33/24 33/25 34/1 34/2 34/7 34/9 41/3 41/19 47/23 48/8 48/8 48/15 48/23 49/22 51/10 54/7 55/18 55/18 55/24 56/1 56/5 57/11

## W

**WITNESSES... [4]** 63/15 63/15 64/6 65/3
**WITNESSES' [1]** 22/25
**WON'T [1]** 66/15
**WORD [1]** 66/2
**WORK [8]** 7/8 7/20 28/23 29/6 40/19 50/13 52/13 67/3
**WORKER [1]** 49/11
**WORKING [1]** 50/23
**WORTH [1]** 12/4
**WORTHWHILE [1]** 10/21
**WOULD [90]**
**WOULDN'T [4]** 15/2 32/7 32/9 47/16
**WRONG [6]** 17/21 24/25 29/25 30/4 63/24 63/24

## Y

**YEAH [1]** 42/6
**YEARS [1]** 50/14
**YES [14]** 7/14 14/10 14/15 16/10 19/2 31/18 31/24 48/5 57/22 60/7 63/6 64/21 64/24 66/22
**YET [1]** 39/11
**YOU [118]**
**YOU'RE [4]** 17/24 22/20 50/22 59/17
**YOU'VE [1]** 65/1
**YOUNG [1]** 55/6
**YOUR [65]** 2/11 2/16 2/21 2/23 3/5 3/14 3/17 3/18 7/14 7/16 10/4 11/22 14/5 14/11 14/15 15/12 15/16 17/6 17/21 19/22 20/12 20/18 22/6 23/3 23/3 23/3 23/21 23/21 23/23 24/13 26/10 31/4 31/18 31/24 32/12 32/13 32/14 32/22 36/17 37/13 37/15 37/17 37/19 38/19 38/21 38/24 39/15 42/17 43/12 45/10 45/23 47/18 48/3 49/12 52/19 54/24 58/17 63/12 63/13 65/1 65/17 65/22 66/5 66/12 66/17