**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**TODD KELVIN WESSINGER,**
**Petitioner,**

**CIVIL ACTION No. 04CV637-JJB-SCR**

**v.**

**DARREL VANNOY, Warden,**
**Louisiana State Penitentiary,**
**Angola, Louisiana, Respondent.**

# PETITIONER'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, FOR AN EVIDENTIARY HEARING ON CAUSE AND PREJUDICE, OR, IN THE ALTERNATIVE, FOR RELIEF FROM JUDGMENT

**Rebecca L. Hudsmith**, LSBA No. 07052
**Cristie Gautreaux Gibbens**, LSBA No. 24102
**Office of Federal Public Defender for the**
**Middle and Western Districts of Louisiana**
102 Versailles Blvd., Suite 816
Lafayette, LA 70501
Telephone: (337) 262-6336
Facsimile: (337) 262-6605

Attorneys for Petitioner Todd Kelvin Wessinger

**TABLE OF CONTENTS**

I. PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

A. State Capital Trial Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

B. State Post-Conviction Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

C. Federal Habeas Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

1. The Federal Evidentiary Hearing Ordered by Judge Brady . . . . . . . . . . . . . . . . . . . 5
2. Judge Brady's Ruling Granting Habeas Relief on Claim XI-C . . . . . . . . . . . . . . . . .7
3. The Fifth Circuit's Reversal Solely on Issue of Cause and Prejudice of *Pro Bono* Post-Conviction Counsel's Ineffectiveness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II. LAW AND ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

A. The Availability of Summary Judgment Relief in this Habeas Proceeding . . . . . . . . .8

1. The Law of the Case Doctrine and the Mandate Rule Support the Availability of Summary Judgment in this Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
2. The Procedural Default of Wessinger's Meritorious Claim XI-C Is Excused Based on Cause and Prejudice of State Process and Policies as Demonstrated by the Uncontested Material Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

B. Alternatively, Wessinger is Entitled to a Federal Evidentiary Hearing on Cause and Prejudice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

C. Alternatively, Wessinger is Entitled to Relief Pursuant to Fed.R.Civ.Proc. 60(b)(6). 19

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

## TABLE OF AUTHORITIES

**Cases**

*Alpha/Omega Ins. Servs., Inc. v. Prudential Ins. Co. of Am.*, 272 F.3d 276 (5th Cir. 2001) . . . .9-10

*Amadeo v. Zant*, 486 U.S. 214 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Banks v. Dretke*, 540 U.S. 668 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Barrientes v. Johnson*, 221 F.3d 741 (5th Cir. 2000), *cert. dismissed*, 531 U.S. 1134 (2001) . . . . 19

*Buck v. Davis*, 137 S.Ct. 759 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*Clark v. Johnson*, 202 F.3d 760 (5th Cir. 2000), *cert. denied*, 531 U.S. 831 (2000) . . . . . . . . . . . . 8

*Coleman v. Thompson*, 501 U.S. 722 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*Eichorn v. AT&T Corp.*, 484 F.3d 644 (3rd Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475 (Fed. Cir. 1998) . . . . . . . . . . . . . . .11

*Gonzales v. Crosby*, 545 U.S. 524 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*In re Coleman*, 768 F.3d 367 (5th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re Sanford Fork & Tool Co.*, 160 U.S. 247 (1895) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Martinez v. Ryan*, 566 U.S. 1 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5-6

*Moore v. Quartermann*, 533 F.3d 338 (5th Cir. 2008) (*en banc*) (*per curiam*) . . . . . . . . . . . . . . .14

*Murray v. Carrier*, 477 U.S. 386 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*Panetti v. Davis*, 863 F.3d 366 (5th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

*Pioneer Invest. Serv. Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380 (1993) . . . . . . . . 13

*Pondexter v. Quarterman*, 537 F.3d 511 (5th Cir. 2008), *cert. denied*, 555 U.S. 1219 (2009) . . . 10

*Reed v. Ross*, 468 U.S. 1 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Seven Elves, Inc. v. Eskenazi*, 635 F.3d 396 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*Sorto v. Davis*, 859 F.3d 356 (5th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10-11

*State v. Wessinger*, 98-1234 (La. 5/28/99), 736 So.3d 162 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*State ex rel. Wessinger*, 2003-3097 (La. 9/3/04), 882 So.2d 605 . . . . . . . . . . . . . . . . . . . . . . . . . .4

*State ex rel. Williams v. State*, 2004-75 (La. 12/1/04), 888 So.2d 792. . . . . . . . . . . . . . . . . . . . . 16

*State ex rel. Williams v. State*, 2004-0575 (La. 1/12/07), 946 So.2d 172 (Mem) . . . . . . . . . . . . . .18

*Thayer v. Chiczewski*, 705 F.3d 237 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Tratree v. BP North America Pipelines, Inc.*, 390 Fed.Appx. 386 (5th Cir. 2010),
*cert. denied*, 562 U.S. 1139 (2011) (unpublished opinion) . . . . . . . . . . . . . . . . . . . . . . . . .9

*United States v. Cote*, 51 F.3d 178 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10, 12

*United States v. Frady*, 456 U.S. 152 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*United States v. Luna*, 264 F.3d 1142 (5th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Wessinger v. Vannoy*, 138 S.Ct. 952 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Wessinger v. Vannoy*, 864 F.3d 387 (5th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7, 16

**Statutes and Rules**

Sixth Amendment to the U.S. Constitution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 6-7

28 U.S.C. § 2254 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28 U.S.C. § 2254(b)(1)(B)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 14

Rule 11 of the Rules Governing Section 2254 Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

Fed.R.App.P 41(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fed.R.Civ.P. 56 (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 6, 20

Fed.R.Civ.P. 59(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fed.R.Civ.P. 60(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 20

Fed.R.Civ.P. 60(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

Fed.R.Civ.P. 81(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

**Other Authorities**

Vol. 1, Federal Habeas Corpus Practice & Procedure, § 17.3 (7th ed). . . . . . . . . . . . . . . . . . . . . . . 8

Vol. 2, Federal Habeas Corpus Practice & Procedure, § 26.3 (7th ed.) . . . . . . . . . . . . . . . . . . . . . 15

**EXHIBITS**

Affidavit of Joseph Williams P. Hecker dated August 8, 2005 . . . . . . . . . . . . . . . . . . . . Exhibit A

Affidavit of Joseph Williams P. Hecker dated April 20, 2012 . . . . . . . . . . . . . . . . . . . . Exhibit B

Petition for Post-Conviction Relief and Motion for Evidentiary Hearing
dated December 27, 2000 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Exhibit C

*Ex Parte* Motion and Incorporated Memorandum on the Need for Investigative Funding in Order
To file An Amended Petition for Post-Conviction Relief dated March 16, 2001 . Exhibit D

Motion and Incorporated Memorandum to Continue April 10, 2001 Deadline for
Filing Amended Petition for Post-Conviction Relief dated April 6, 2001 . . . . . . .Exhibit E

Motion to Continue the April 24, 2001 Hearing and Motion for Reconsideration of the
Denial of Proceeding *Ex Parte* dated April 10, 2001 . . . . . . . . . . . . . . . . . . . . . . .Exhibit F

Transcript of Motion to Continue April 10, 2001 Deadline for Filing Amended Petition
For Post-Conviction Relief and Ex Parte Motion on the Need for Investigative
Funding in Order to File an Amended Petition for Post-Conviction Relief
dated April 10, 2001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Exhibit G

Notice to Court of Funding Issues dated April 16, 2001 . . . . . . . . . . . . . . . . . . . . . . . . . .Exhibit H

Letter from Edward R. Greenlee dated April 12, 2001 . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit I

Transcript of Status Conference, Motion to Continue the April 24, 2001 Hearing and Motion
For Reconsideration of the Denial of Proceeding Ex Parte dated April 24, 2001. . Exhibit J

Ex Parte Motion to Withdraw as Counsel of Record dated June 5, 2001 . . . . . . . . . . . . . Exhibit K

Status Conference on Postconviction dated September 4, 2003 . . . . . . . . . . . . . . . . . . . . .Exhibit L

Judgment of the U.S. Fifth Circuit in *Wessinger v. Vannoy*, No. 15-70027 dated July 20, 2017 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit M

Ruling in *State of Louisiana ex rel. Jimmie Ray Williams v Cain*, No. 07-94-0871, 19th Judicial District Court for the Parish of East Baton Rouge dated February 4, 2005. . . . .Exhibit N

Second Interlocutory Ruling After Remand from the Louisiana Supreme Court and Per Curiam To the Louisiana Supreme Court in *Williams v. Cain*, No. 07-94-0871, 19th Judicial District Court for the Parish of East Baton Rouge dated March 18, 2005 . . . . Exhibit 0

Per Curiam Denial of Petition for Rehearing in *Wessinger v. Cain*, No. 15-70027 in the U.S. Fifth Circuit dated August 21, 2017 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit P

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**TODD KELVIN WESSINGER,**
**Petitioner,**

**CIVIL ACTION No. 04CV637-JJB-SCR**

**v.**

**DARREL VANNOY, Warden,**
**Louisiana State Penitentiary,**
**Angola, Louisiana, Respondent.**

**PETITIONER'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, FOR AN EVIDENTIARY HEARING ON CAUSE AND PREJUDICE, OR, IN THE ALTERNATIVE, FOR RELIEF FROM JUDGMENT**

NOW INTO COURT, through undersigned counsel, comes the petitioner TODD KELVIN WESSINGER, who hereby submits this memorandum in support of his motion for summary judgment, pursuant to Fed. R.Civ. Proc. 56, on the basis of the violation of his Sixth Amendment right to the effective assistance of counsel at the penalty phase of his first degree murder trial, a federal habeas claim found meritorious by the Honorable James J. Brady after a five-day evidentiary hearing. While Judge Brady found this meritorious claim of constitutional violation procedurally defaulted, he also concluded that the procedural default was excused for cause and prejudice as the result of state post-conviction counsel's ineffectiveness in state post-conviction proceedings. Judge Brady issued a judgment granting habeas relief, vacating petitioner's death sentences and ordering a new penalty phase trial based on the Sixth Amendment violation.

On appeal by the respondent, the Fifth Circuit reversed Judge Brady *solely on the basis* that it did not agree that state post-conviction counsel was ineffective, concluding that state post-conviction counsel did everything he could to secure from multiple state and state-funded entities,

and the state post-conviction court, the necessary funds and assistance to develop ineffectiveness claims in state post-conviction proceedings, but was consistently denied funding and assistance. As a result of the Fifth Circuit's ruling, the procedural default of Wessinger's meritorious claim can no longer be excused based on state post-conviction counsel's ineffectiveness. Nevertheless, based upon the extensive uncontested material facts, the procedural default can and should be excused due to the repeated failure of the state post-conviction process and policies to protect Wessinger's rights and accord him due process. This Court is thus empowered to reach the meritorious constitutional claim absent exhaustion and grant habeas relief.

Alternatively, Wessinger seeks an evidentiary hearing to establish this alternative basis for cause and prejudice to excuse the procedural default of his meritorious constitutional claim. Further, in the alternative, Wessinger seeks relief from judgment pursuant to Fed.R.Civ.Proc. Rule 60(b) under the extraordinary circumstances of this case, including the substantial risks of an injustice and of undermining the public's confidence in the judicial process presented by this case.

## I. PROCDURAL BACKGROUND

**A. State Capital Trial Proceedings.** Petitioner was charged in state court in Baton Rouge, Louisiana with two counts of first degree murder for the November 19, 1995 shooting deaths of Stephanie Guzzardo and David Breakwell, and was represented by two attorneys appointed just five months prior to trial. State Appellate Court Record ("SAR") 7, 11 (minutes of court) (made a part of the federal court record as Doc. No. 39). Jury selection began on June 16, 1997, and eight days later, on June 24, 1997, petitioner was convicted on both counts. SAR 12-25 (minutes of court). The next day, June 25th, the same jury returned death sentences on both counts following a defense penalty phase presentation that lasted less than four hours, including cross-examination

by the prosecution. SAR 25-28 (minutes of court). The Louisiana Supreme Court affirmed the convictions and sentences. *State v. Wessinger*, 98-1234 (La. 5/28/99), 736 So.2d 162.

**B. State Post-Conviction Proceedings.** On January 3, 2001, the Louisiana Supreme Court appointed Soren Gisleson, a first-year associate at a New Orleans, Louisiana law firm, to represent petitioner *pro bono* in state post-conviction proceedings. Doc. 121, p. 84, ROA.1848; Doc. 209, pp. 11-12, p. 21, ROA.3822-3823, 3832; Pet. Ex. 7 (exhibit numbers reference petitioner's federal evidentiary hearing exhibits), attached herein as Exhibit K. Gisleson initially filed a three-page shell petition in an effort to stop the one-year clock from running. Doc. 121, p. 86, ROA.1850; Doc. 209, p. 16, ROA.3827; Pet. Ex. 2, attached herein as Exhibit C. After countless unsuccessful efforts to obtain from various state actors and entities funding and assistance to conduct a mitigation investigation into petitioner's life that had not been conducted by trial counsel, *see* Exhibits A through K, attached herein, Gisleson filed an amended state post-conviction petition on June 11, 2001. Doc. 209, p. 46, ROA.3857; Pet. Ex. 6. Following the State's filing of its response in February of 2003, Gisleson filed a second amended petition. Doc. 209, pp. 58-59, ROA.3869-3870; Pet. Ex. 8. Both petitions set forth a claim of Sixth Amendment penalty phase ineffective assistance of trial counsel based upon the trial record and without the benefit of a mitigation investigation, which Gisleson never had the funding or resources to conduct.

At a September 3, 2003 status conference, the state trial court denied relief, dismissing all claims in the first amended post-conviction petition as procedurally barred due to lack of factual support, and denying relief on the merits on the ineffective assistance of trial counsel claims in the second amended post-conviction petition. Doc. 121-1, p. 59, ROA.1919; Doc. 209, p. 64,

ROA.3875; Pet. Ex. 9, attached herein as Exhibit L. The Louisiana Supreme Court affirmed. *State ex rel. Wessinger*, 2003-3097 (La. 9/3/04), 882 So.2d 605.

**C. Federal Habeas Proceedings.** Gisleson filed a habeas petition in federal district court raising the same claim of ineffective assistance of penalty phase trial counsel that he raised in the state court petitions based on trial counsel's penalty phase deficiencies as reflected in the trial record. Doc. 1, p. 1, ROA.28; Doc. 1, pp. 45-47, ROA.72-74.

Judge Brady appointed additional counsel who conducted a mitigation investigation for Wessinger for the very first time and filed an Amended Petition for Writ of Habeas Corpus. Doc. 120, p. 1453, ROA.1453. The amended petition included penalty phase ineffective assistance Claim XI-C, which alleged, *inter alia*, that trial counsel failed to secure the services of a mitigation specialist and did not conduct a mitigation investigation of petitioner, and instead called witnesses counsel met for the first time in the hallway outside the courtroom and presented damaging testimony through counsel's own unprepared expert witnesses. Doc. 120, p. 232, ROA.1684. Claim XI-C also alleged what trial counsel would have discovered had he conducted a proper investigation, including powerful mitigation regarding petitioner's family history of mental illness, alcohol abuse and violence and petitioner's own mental illness, none of which ever had been presented to the state courts. Doc. 120, pp. 232-256, ROA.1684-1708.

In its opposition, Doc. 129, p. 1, ROA.2447, respondent alleged that in this penalty phase ineffective assistance of counsel claim "petitioner goes way beyond what he presented to the state courts for consideration of this claim below. As such, he should not be permitted to alter the habeas record by including items and discussions that he did not present to the state courts." Doc. 129, p. 151, ROA.2597.

**1. The Federal Evidentiary Hearing Ordered by Judge Brady.** The district court initially denied habeas relief on all claims. Doc. 135, p. 1, ROA.2651. Following the Supreme Court's decision in *Martinez v. Ryan*, 566 U.S. 1 (2012), petitioner filed a timely motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure to alter or amend the judgment denying the petition with respect to Claim XI-C. Doc. 139, p. 1, ROA.2732; Doc. 141, p. 1, ROA.2746.[1] While acknowledging that the claim was not fairly presented to the Louisiana state courts and, thus, was procedurally defaulted, petitioner argued that this was no barrier to review by the federal courts because state post-conviction counsel Gisleson had failed to provide effective representation in state post-conviction proceedings, thereby excusing any procedural default under *Martinez*. Doc. 141, pp. 16-22, ROA.2761-2767. Petitioner also argued that the procedural default should be excused because the state refused to provide the requested necessary funding for mitigation and other expert assistance in state post-conviction proceedings, despite post-conviction counsel's request for funding from multiple sources, such that the state corrective process was ineffective to protect petitioner's rights, citing to 28 U.S.C. § 2254(b)(1)(B)(ii). Doc. 141, pp. 22-24, ROA.2767-2769.

In granting the Rule 59(e) motion, Judge Brady concluded that the evidence alleged in support of ineffectiveness Claim XI-C was materially and significantly different and stronger than what was presented to the state court. Doc. 156, p. 3, ROA.3226. As a result, Judge Brady concluded that Claim XI-C had not been fairly presented to the state courts during state post-conviction proceedings and was therefore procedurally barred. Doc. 156, pp. 3-4, ROA.3226-

[1] Petitioner appealed the district court's denial of relief and a certificate of appealability on the remaining claims, which judgment was affirmed on appeal, *Wessinger v. Vannoy*, No. 12-70008 in the U.S. Fifth Circuit.

3227. Nevertheless, Judge Brady concluded the procedural default would not bar merits review if petitioner could show cause and prejudice as contemplated in *Martinez v. Ryan*, 132 S.Ct. 1309 (2012). Doc. 156, pp. 4-5, ROA.3227-3228; *see also* Doc. 156, pp. 5-6, ROA.3228-3229. Judge Brady ordered that the Court would handle both inquiries – initial-review counsel's ineffectiveness and trial counsel's penalty phase ineffectiveness – at one hearing. Doc. 156, p. 6, ROA.3229.

Judge Brady did not address petitioner's additional argument that the procedural default of Claim XI-C can be excused because the state refused to provide the requested necessary funding for mitigation and other expert assistance in state post-conviction proceedings, despite post-conviction counsel's request for funding from multiple sources, including the state post-conviction court, such that the state corrective process was ineffective to protect petitioner's rights.

The federal evidentiary hearing on the *Martinez* and Sixth Amendment ineffectiveness issues regarding Claim XI-C was held before Judge Brady on January 12-13, 2015, Doc. 186, ROA.3546; Doc. 187, ROA.3547; and March 18-19, and 23, 2015. Docs. 202-204, ROA.3568, ROA.3569, ROA.3570. Petitioner presented the testimony, along with supporting documentation, of *pro bono* state post-conviction counsel Soren Gisleson; Louisiana state post-conviction expert Gary Clements, Director of CPCPL; Wessinger family members and friends Joseph Kelly, Troy Wessinger, Leroy Helire, Jr., John Williams, Demetric Alexander, and Sharon Alexander; neuropsychatrist Dr. George Woods; mitigation expert Russell Stetler; and capital defense expert Baton Rouge attorney Michele Fournet. *See id.* Respondent did not present any witnesses.

**2. Judge Brady's Ruling Granting Habeas Relief on Claim XI-C.** Judge Brady granted petitioner federal habeas relief on the merits of Claim XI-C based on ineffective assistance of trial counsel at the penalty phase in violation of the Sixth Amendment, and excused the procedural

default of the claim based on Gisleson's ineffectiveness in state post-conviction under *Martinez*. Doc. 216, p. 1, ROA.3705; Doc. 217, p. 1, ROA.3720 (Judgment). Judge Brady found that neither trial counsel, Hecker, nor state post-conviction counsel, Gisleson, nor any investigator acting on their behalf, conducted a mitigation investigation and both were ineffective. Doc. 216, pp. 4, 7, 11, ROA.3708, ROA.3711, ROA.3715. The Court also found that, considering the mitigation presented by petitioner at the federal evidentiary hearing, which was not presented to the sentencing jury, "there is a reasonable probability that the evidence of [petitioner's] brain damage and other impairments, as well as his personal and family history would have swayed at least one juror to choose a life sentence." Doc. 216, p. 15, ROA.3719.

**3. The Fifth Circuit's Reversal Solely on the Issue of Cause and Prejudice of *Pro Bono* Post-Conviction Counsel's Ineffectiveness.** On appeal by the respondent, a panel of the Fifth Circuit, with Judge Dennis dissenting, reversed Judge Brady's grant of habeas corpus relief. *Wessinger v. Vannoy*, 864 F.3d 387 (5th Cir. 2017). Significantly, the majority reversed solely on the basis that, contrary to Judge Brady's conclusion, Gisleson's performance in state post-conviction was not deficient. *Id.* at 391-392. The panel noted that Gisleson "repeatedly reached out to various organizations for funding or assistance, and he was repeatedly denied" and "was thorough in his attempt to secure funds or other assistance." *Id.* at 392. Furthermore, Gisleson's failure to "hire a mitigation specialist or consult experts" was "because the state post-conviction court did not grant his motion for funds, not because of any deficiency on his part." *Id.* The panel majority also noted that Gisleson not only filed a motion for funding with the state post-conviction court but also "asked the Louisiana Indigent Defense Assistance Board ("LIDAB"), the Louisiana Crisis Assistance Center ("LCAC"), the East Baton Rouge Indigent Defense Board, and the Capital

Post-Conviction Project of Louisiana ("CPCPL") for funding or assistance, but the organizations all denied his requests." *Id.* at 389. The court's opinion and its judgment reversed Judge Brady's grant of habeas relief, but neither remanded the case nor ordered the habeas petition dismissed. *See* Judgment in No. 15-70027 (5th Cir. 2017), attached herein as Exhibit M.

The Fifth Circuit summarily denied petitioner's rehearing and rehearing *en banc* without reasons. *See* Order in No. 15-70027 (5th Cir. 2017), attached herein as Exhibit P. The United States Supreme Court denied certiorari review, with Justice Sotomayor dissenting from the denial of certiorari based on the meritorious penalty phase ineffective assistance claim raised in federal habeas. *Wessinger v. Vannoy*, 138 S.Ct. 952 (2018).

## II. LAW AND ARGUMENT IN SUPPORT OF RELIEF REQUESTED

**A. The Availability of Summary Judgment Relief in this Habeas Proceeding.** Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies in the context of capital habeas corpus cases brought pursuant to 28 U.S.C. § 2254. *Clark v. Johnson*, 202 F.3d 760, 765 (5th Cir. 2000), *cert. denied*, 531 U.S. 831 (2000) ("As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases."). *See also* Rule 11 of the Rules Governing Section 2254 Cases; Fed.R.Civ.P. 81(a)(4). Rule 56(c) mandates that summary judgment should issue if there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also* Vol. 1, Federal Habeas Corpus Practice & Procedure, § 17.3.

**1. The Law of the Case Doctrine and the Mandate Rule Support the Availability of Summary Judgment in this Case.** The law of the case doctrine generally precludes

reexamination of issues of law or fact decided on appeal, either by the district court on remand or by the appellate court itself on a subsequent appeal. *Alpha/Omega Ins. Servs., Inc. v. Prudential Ins. Co. of Am.*, 272 F.3d 276, 279 (5th Cir. 2001). Nevertheless, the doctrine's reach does have its limits. Thus, "the law of the case doctrine applies only to issues that were actually decided, rather than all questions in the case that might have been decided but were not." *Id.* Issues may be deemed to have been implicitly decided if they were fully briefed to the appellate court and are necessary predicates to the court's ability to address the issue or issues specifically discussed. *Id.* If the parties did not brief the issue on appeal, however, then it was not before the appellate court and was not decided. *Tratree v. BP North America Pipelines, Inc.*, 390 Fed.Appx. 386, *2 (5th Cir. 2010), *cert.denied,* 562 U.S. 1139 (2011) (unpublished opinion).[2]

Likewise, the appellate court's denial of panel rehearing requesting remand does not amount to a decision on the merits of the arguments the motion presented or otherwise constitute the law of the case. *Alpha/Omega Ins. Servs., Inc.*, 272 F.3d at 281. *See also United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995) (the appellate court's denial of the petition for rehearing does not imply any judgment on the merits of the petitioner's request for an order remanding the

[2] Nor is an issue waived that was not briefed on appeal by the appellee in support of the district court's favorable judgment. *See e.g. United States v. Luna*, 264 F.3d 1142, *3 (5th Cir. 2001) (per curiam) (refusing to apply the "issues-not-briefed-are-waived rule" because "the appellee is entitled to rely on the favorable ruling of the court from which the appeal has been taken" and does not select the issues to be appealed; also, the two major underpinnings of the rule, avoiding piecemeal litigation and conserving judicial resources, are less implicated when the party against whom waiver is asserted is the appellee, particularly where substantial public interests are involved). *See also Thayer v. Chiczewski*, 705 F.3d 237, 247 (7th Cir. 2012) ("[T]he failure of an appellee to have raised all possible alternative grounds for affirming the district court's original decision, unlike an appellant's failure to raise all possible grounds for reversal, should not operate as a waiver."); *Eichorn v. AT&T Corp.*, 484 F.3d 644, 657–58 (3d Cir. 2007) (appellee "not required to raise all possible alternative grounds for affirmance to avoid waiving those grounds.").

case). Accordingly, in a Section 2254 capital habeas case, where the petitioner's grant of habeas relief was reversed on a previous appeal, and he had briefed the applicability of an intervening Supreme Court decision in his unsuccessful petitions for rehearing en banc and for a writ of certiorari, the Fifth Circuit held that "such denials do not constitute a decision on the merits" of the issues raised in those petitions. *Pondexter v. Quarterman*, 537 F.3d 511, 523 (5th Cir. 2008), *cert. denied*, 555 U.S. 1219 (2009). Thus, the law of the case did not preclude the petitioner in that case from raising the intervening decision on the current appeal. *Id.*

Another aspect of the law of the case doctrine is the mandate rule, according to which a district court, upon receiving the mandate of an appellate court, "cannot vary it or examine it for any other purpose than execution." *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895). However, the mandate is only controlling "as to matters within its compass." *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939). The district court may "consider and decide any matters left open by the mandate of [the] court." *Sanford*, 160 U.S. at 256. Furthermore, "[t]he opinion delivered by [the] court at the time of rendering its decree may be consulted to ascertain what was intended by its mandate." *Id.* *See also* Fed. R. App. P. 41(a) (appellate court's mandate includes both the judgment and the opinion of the court).

The Fifth Circuit panel opinion readily demonstrates that the Court reversed the district court's grant of federal habeas relief based solely on its conclusion, contrary to Judge Brady's, that Gisleson was not ineffective in state post-conviction proceedings. Under the law of the case, Gisleson's ineffectiveness cannot provide cause under *Martinez* for Wessinger's procedural default of his meritorious, but procedurally defaulted claim of penalty phase trial counsel's ineffectiveness. However, the panel did not reverse the district court's rulings that Wessinger's

Claim XI-C penalty phase ineffectiveness claim filed in his amended petition properly related back to and amended the original timely habeas petition and was a meritorious claim of violation of Wessinger's Sixth Amendment rights for which habeas relief should be granted, all district court rulings which were briefed and argued on appeal and which remain intact. Thus, the law of the case doctrine does not prevent this Court from considering in the present motion, which relies upon cause for excusing the procedural default of Wessinger's meritorious Sixth Amendment claim of ineffective assistance of penalty phase trial counsel based upon the inadequacies of the state court process and policies, which was not reached by the district court nor decided by the Fifth Circuit.

Similarly, the mandate rule does not foreclose this Court's consideration of the present motion. While the Fifth Circuit judgment in this case simply reads "reversed" and not "reversed and remanded," attached herein as Exhibit M, under the mandate rule a judgment that does not specifically provide for a remand is not incompatible with further proceedings in the district court. For example, in *Sprague,* the Supreme Court addressed the scope of its mandate from an earlier decision. The district court had found that it lacked the power to award attorneys' fees because the earlier Supreme Court opinion did not specifically provide for such relief, and the judgment was simply "reversed" and not "reversed and remanded." *Sprague,* 307 U.S. at 170. The Supreme Court held that the district court erred because attorneys' fees were not at issue on the original appeal. *Id.* at 168-69. *See also Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475, 1483 (Fed. Cir. 1998) (even though earlier appellate judgment consisted of the single word "reversed," and not "reversed and remanded," the appellate court judgment nevertheless "vests jurisdiction in the district court to carry out some further proceedings" and "the nature of the district court's remaining tasks is discerned not simply from the language of the judgment, but from the judgment

in combination with the accompanying opinion," thus the district court should have considered Exxon's motion for a new trial on infringement under the doctrine of equivalents after the appellate court reversed an earlier jury verdict in Exxon's favor on literal infringement); *United States v. Cote*, 51 F.3d 178, 181-182 (9th Cir. 1995) (where prior appellate judgment simply "reversed" defendants' convictions based on district court's failure to instruct the jurors on an essential element of the crime charged, and then the appellate court summarily denied the Government's petition for rehearing and request for a remand, once the mandate issues, "jurisdiction over a criminal case revests in the district court," which retained authority to retry the defendants since the mandate did not contain an order dismissing the case or an order directing acquittal, and double jeopardy did not bar retrial).

The Fifth Circuit panel reversed Judge Brady's ruling on the limited issue of cause under *Martinez*, and on no other basis. The appellate court's judgment of reversal did not order the dismissal the habeas petition or otherwise rule on the merits of the habeas petition so as to bar further proceedings in this Court. Thus, authority is now vested in this Court to consider the basis for excusing the procedural default of petitioner's ineffectiveness claim set forth in this motion and not previously addressed by this Court or the Fifth Circuit.

**2. The Procedural Default of Wessinger's Meritorious Claim XI-C is Excused Based on Cause and Prejudice of State Process as Demonstrated by the Uncontested Material Facts.** A petitioner is barred from raising a defaulted claim as a basis for federal habeas corpus relief unless he can excuse the default by demonstrating cause for the default and actual prejudice as a result of the alleged violation of federal law. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Cause for a procedural default exists if the petitioner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. *Id.* at 752-53.

The concepts of "objective factor" and "external" impediment are best understood with reference to the two underlying purposes of the independent and adequate state procedural grounds doctrine. As the Supreme Court has explained, the procedural default rule is designed to discourage petitioners and their lawyers from sandbagging, *i.e.*, making tactical decisions to forego a procedural opportunity to raise a claim in the state courts in order to raise the claim later, for the first time, in federal court. *See Murray v. Carrier,* 477 U.S. 386, 490 (2004) ("possibility of 'sandbagging'" is principal reason for procedural default doctrine). The doctrine is also designed to assure that state officials and the state courts actually gave the petitioner a fair "procedural opportunity" to present the claim. *Reed v. Ross*, 468 U.S. 1, 14 (1984).

When a default is attributable to some objective factor that is external to the defense, the courts can be assured that the default was not the result of a strategic, tactical, or "sandbagging" choice by the petitioner or his counsel and that the opportunity afforded the petitioner to raise the claim in the state courts was not sufficiently fair. Objective, external factors capable of excusing a default may include all "'extraordinary circumstances' suggesting that the party [including counsel] is faultless" in causing the default or that the party was "prevented from complying by forces beyond its control." *Pioneer Invest. Serv. Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 387-88 (1993) (discussing various rules and doctrines excusing late filings). This includes the actions of the state, state courts, or other officials that hindered compliance with the procedural rule or made compliance impracticable. *See, e.g., Banks v. Dretke,* 540 U.S. 668, 691-98 (2004) ("a petitioner shows 'cause' when the reason for his failure to develop facts in state-

court proceedings was the State's suppression of the relevant evidence"). *See also* 28 U.S.C. § 2254(b)(1)(B)(ii) (failure to exhaust a claim is excused when "circumstances exist that render [the state corrective process] ineffective to protect the rights of the applicant").

Several Fifth Circuit decisions serve to illustrate the cause element of cause and prejudice excusing a default. For example, in *Panetti v. Davis*, 863 F.3d 366, 374 (5th Cir. 2017), the Fifth Circuit concluded that where the state court's application of a state law made it impossible for petitioner to raise a timely and complete competency to be executed claim and he was denied due process, the circumstances existed that rendered the state process ineffective to protect the rights of the applicant, and the federal court was empowered to reach the claim absent exhaustion. *See also Sorto v. Davis*, 859 F.3d 356, 364-365 (5th Cir. 2017) (where the Texas law governing subsequent writ applications placed a *pro bono* subsequent attorney in "the unfortunate position of having to choose whether to personally bear the costs of expert and investigative assistance, raise the costs himself from private charitable sources, file a writ application without such assistance that will almost surely fall short of the statutory burden, or file no writ application at all despite his good faith suspicions," the state corrective process was ineffective to protect petitioner's rights and the district court should have excused exhaustion); *Moore v. Quartermann*, 533 F.3d 338, 341 (5th Cir. 2008) (*en banc*) (*per curiam*) (Moore had cause for misunderstanding the state's successive writ procedures with respect to claims brought under *Atkins v. Virginia*, and "could not exhaust a remedy that the TCCA [Texas Court of Criminal Appeals] had not yet articulated; this 'cause' was external to Moore and beyond his control"). This aspect of cause can be satisfied by a case-specific showing of improper, unexpected, or preclusive state action that actually and for good reason prevented or discouraged counsel from raising a federal claim in state

court. *Id.* *See also* R. Hertz and J. Liebman, *Federal Habeas Corpus Practice and Procedure*, Vol. 2, §26.3 (7th ed.).

With regard to the "prejudice" half of the "cause and prejudice" exception to the procedural default doctrine, the Supreme Court has not yet provided a precise definition. *See, e.g., Amadeo v. Zant*, 486 U.S. 214, 221 (1988) (the Supreme Court's "decisions . . . have not attempted to establish conclusively the contours of the [cause and prejudice] standard," leaving open for resolution in future decisions the precise definition of the standard). However, the Supreme Court has said that prejudice requires more than a possibility of prejudice, and that the error must have "worked to [the petitioner's] *actual* and substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in the original).

The uncontested material facts fully support that, under the extraordinary circumstances in existence in Louisiana at the time *pro bono* post-conviction counsel, Gisleson, represented petitioner in state post-conviction proceedings, Gisleson and the petitioner were faultless – but the state policies and corrective process were not -- in the failure to investigate and present in state post-conviction proceedings the Sixth Amendment claim of penalty phase trial counsel ineffectiveness raised in the amended federal habeas petition before this Court and found meritorious by Judge Brady. As Gisleson testified, and as the federal and state records fully support, forces beyond his control prevented him from conducting the necessary mitigation investigation in state post-conviction proceedings. As a result, Wessinger was unable to present in state post-conviction proceedings the penalty phase claim that was ultimately presented for the first time in federal court once adequate resources were made available.

Moreover, there is no question that, based on the uncontested material facts supported by this record, the default was not the result of a strategic, tactical, or sandbagging choice by Gisleson or petitioner. To the contrary, Gisleson testified at length about his efforts to obtain assistance and funding for a mitigation investigation from state entities and how he was denied those critical resources based on a state policy adopted by LIDAB that prevented CPCPL, the only state entity with any funding for investigative assistance for Louisiana death row inmates in state post-conviction, from providing its funding or expertise to *pro bono* counsel. This state policy, and the resulting unavailability of any funding for petitioner from any source, was in effect in 2001 when Gisleson filed his first amended petition and remained in effect in 2003 when he filed his second amended petition. As the Fifth Circuit concluded, the federal habeas record does not support "that a more experienced attorney would have obtained funding, assistance, or additional time from the state post-conviction court" under these circumstances. *Wessinger v. Vannoy*, 864 F.3d at 393.

Significantly, in 2004, after the Louisiana Supreme Court denied writs in Wessinger's state post-conviction proceedings and he had proceeded to federal court, that same court addressed the case of another death row inmate represented by *pro bono* counsel in state post-conviction proceedings who was unable to obtain funding assistance under the same policy and circumstances applicable to Wessinger. *State ex rel Williams v. State*, 2004-75 (La. 12/1/04), 888 So.2d 792. The Louisiana Supreme Court explained that the Louisiana Indigent Defense Assistance Board (LIDAB) was created by the legislature in 1997 as an agency within the executive branch. *Id.* at 4. In 1999, the legislature delegated to LIDAB the power and responsibility of appointing appellate and post-conviction counsel in death penalty cases and providing reasonably necessary services in those proceedings. *Id.* LIDAB formed the Capital Post Conviction Project of Louisiana

(CPCPL), which provides direct representation to some inmates in capital post-conviction proceedings through its staff attorneys or by recruiting *pro bono* attorneys and acting as resource counsel. *Id.* at 5. CPCPL's budget is funded by LIDAB. *Id.* at 6. At a hearing in the district court below, CPCPL's director Denise LeBouef testified that CPCPL cannot spend money for experts for defendants represented by *pro bono* counsel because the budget has no money for cases where the defendant is not represented by CPCPL and because LIDAB does not allow funding for experts where the defendant is not represented by CPCPL. *Id.* The Louisiana Supreme Court concluded that "there may be statutory violations in the manner in which the funding is allocated by LIDAB to indigent and capital defendants in post-conviction proceedings." *Id.* at 8. According to the court, "[w]e are particularly interested in the question concerning LIDAB's adoption of a resolution to prohibit the provision of funds for expert witnesses to civil law firms handling capital post-conviction cases on a *pro bono* basis in light of the statutory requirements contained in La.Rev.Stat. 15:151.2E(2) and F." *Id.* at 8-9. The case was remanded by the Louisiana Supreme Court to the state district court for an evidentiary hearing on these funding issues. *Id.*

On remand, LIDAB was held to have violated its statutory authority when it passed a resolution denying funding for experts to *pro bono* counsel, the very policy that was relied upon by state actors to deny Gisleson's access to funding for Wessinger. *State ex rel Williams v. State*, No. 07-94-0871 (Feb. 4, 2005), attached herein as Exhibit N. The state district court also held that "to permit the State to proceed forward would be a fundamentally unfair proceeding at this time. The petitioner has a right to reasonably necessary funds to assist him for effective representation of his claims." *Id.* A subsequent ruling on March 18, 2005, laid out a detailed timeline for the mandated creation of a separate fund by LIDAB to provide funding to *pro bono* counsel. *Williams*

*v. Cain*, No. 07-94-0871 (March 18, 2005), attached herein as Exhibit O. Ultimately, the Louisiana Supreme Court acknowledged that LIDAB had "recently adopted new rules applicable to this case," and defendant "notified this Court on November 17, 2006 that he has received the requested funding from the LIDAB." *State ex rel Williams v. State*, 2004-0575 (La. 1/12/07), 946 So.2d 172 (Mem).

As did the Texas legislature in *Panetti*, the Louisiana courts ultimately addressed and remedied the illegal policies that prohibited Gisleson from obtaining the necessary funding and conducting the required mitigation investigation in state post-conviction. However, absent relief from this Court by addressing and granting relief on Wessinger's meritorious ineffectiveness claim in the absence of exhaustion, Wessinger, through no fault of his own or of his *pro bono* counsel, cannot benefit from the favorable court rulings and new rules reversing the illegal LIDAB policy of denying funding to death row inmates represented by *pro bono* counsel. Under the circumstances, Wessinger's state post-conviction proceedings were "fundamentally unfair" and ineffective to protect Wessinger's rights, including to due process and equal protection. As in *Panetti*, due to objective factors external to the defense, *pro bono* counsel's efforts to raise a penalty phase ineffectiveness claim in state post-conviction proceedings were impeded, resulting in cause and prejudice excusing the procedural default of the meritorious penalty phase ineffectiveness Claim XI-C entitling him to relief.

**B. Alternatively, Wessinger is Entitled to a Federal Evidentiary Hearing on Cause and Prejudice.** The determination of whether cause and prejudice exist to excuse the procedural default of a claim raised in federal habeas presents a federal question on which the federal courts have a duty to make an independent determination. If this Court concludes that controlling and

controverted factual issues exist surrounding the circumstances of the default and the excuses for it, despite the extensive federal record in this case, then a federal evidentiary hearing must be held to resolve these factual issues. *See Barrientes v. Johnson*, 221 F.3d 741, 768-69 (5th Cir. 2000), *cert. dismissed*, 531 U.S. 1134 (2001) (petitioner is entitled to evidentiary hearing on "cause" and "prejudice" because affidavits show "compelling[ly]" that government officials frustrated counsel's "diligent" efforts to obtain information needed for claims).

**C. Alternatively, Wessinger is Entitled to Relief Pursuant to Fed.R.Civ.Proc. 60(b)(6).** As set forth above, there is no final judgment dismissing the habeas petition following Judge Brady's judgment, Doc. 217, granting habeas relief on meritorious Claim XI-C, which was reversed solely on the basis of his conclusion regarding Gisleson's ineffectiveness. Out of an abundance of caution, petitioner moves for relief in the alternative under Rule 60(b), which allows a party to seek relief from a final judgment and to request reopening of his case under a limited set of circumstances, including when the movant shows "any other reasons that justifies relief" from the operation of the judgment. Fed.R.Civ.Proc. 60(b)(6). While the court must be cognizant of the interests of finality of the judgment, "[t]hat policy consideration, standing alone, is unpersuasive in the interpretation of a provision whose whole purpose is to make an exception to finality." *Gonzales v. Crosby*, 545 U.S. 524, 529 (2005); *see also Buck v. Davis*, 137 S.Ct. 759, 779 (2017) ("But the 'whole purpose' of Rule 60(b) 'is to make an exception to finality.'"); *Seven Elves, Inc. v. Eskenazi*, 635 F.3d 396, 401 (5th Cir. 1981) ("By is very nature, the rule seeks to strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the incessant command of the courts' conscience that justice be done in light of all the facts."). The central concern of Rule 60(b)(6) is that justice is done. *Id.* at 402.

A proper Rule 60(b) motion "attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings." *Gonzalez*, 545 U.S. at 532. Such a defect will usually concern "procedural failures." *In re Coleman*, 768 F.3d 367, 372 (5th Cir. 2014). A movant entitled to relief must "show extraordinary circumstances justifying the reopening of a final judgment." *Id.* at 535. The court may consider a wide range of factors, including, in an appropriate case, the risk of injustice to the parties and even the risk of undermining the public's confidence in the judicial process. *See Buck*, 137 S.Ct. at 777-78.

This case presents the necessary extraordinary circumstances and procedural failures. Petitioner, whose underlying claim of ineffective assistance was found meritorious, seeks relief from the procedural default of that claim due to the failures of the state policies and corrective process and policies and through no fault of his own. As Justice Sotomayor recognized, in the admitted absence of a mitigation investigation in this case either at trial or in post-conviction, "Wessinger will remain on death row without a jury ever considering the significant mitigation that is now apparent," a result that is "deeply unjust and unfair." *Wessinger v. Vannoy*, 138 S.Ct. 952, 954 (2018), Sotomayor, J., dissenting.

## III. CONCLUSION

WHEREFORE, for all the foregoing reasons, petitioner Todd Wessinger respectfully prays that this Court excuse the procedural default of meritorious Claim IX-C and grant summary judgment pursuant to Fed.R.Civ.Proc. 56(c) and habeas relief on that claim; alternatively, prays that this Court grant an evidentiary hearing to establish the basis for cause and prejudice to excuse the procedural default; alternatively, prays for relief from judgment pursuant to Fed.R.Civ.Proc. 60(b); and prays for all such further relief to which he is entitled.

RESPECTFULLY SUBMITTED,

/s/ Rebecca L. Hudsmith
**Rebecca L. Hudsmith**, LSBA No. 07052
**Cristie Gautreaux Gibbens**, LSBA No. 24102
**Office of Federal Public Defender**
102 Versailles Blvd., Suite 816
Lafayette, LA 70501
Phone: (337) 262-6336; Fax: (337) 262-6605

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing has been served on all counsel of record by operation of the Court's electronic filing system on this 30th day of August, 2019.

/s/ Rebecca L. Hudsmith
**Rebecca L. Hudsmith**
Federal Public Defender
Louisiana Bar No. 07052
102 Versailles Blvd., Suite 816
Lafayette, LA 70501
Phone: (337) 262-6336
Fax: (337) 262-6605