# LIUNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

TODD KELVIN WESSINGER

VERSUS

DARREL VANNOY

CIVIL ACTION

NO. 04-637-JWD-EWD

## RULING AND ORDER

This matter comes before the Court on the *Petitioner's Motion for Summary Judgment, or, in the Alternative, for an Evidentiary Hearing on Cause and Prejudice, or, in the Alternative, for Relief from Judgment* (Doc. 234) filed by Petitioner Todd Kelvin Wessinger ("Petitioner" or "Wessinger"). Respondent State of Louisiana ("Respondent") opposes the motion (Doc. 244), and Petitioner has filed a reply (Doc. 245). Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Petitioner's motion is denied.

## I.    Relevant Factual and Procedural Background

The following facts are taken entirely from *Petitioner's Statement of Uncontested Material Facts in Support of Rule 56 Motion for Summary Judgment or, in the Alternative, for Relief from Judgment Under Rule 60(b)(6)* (Doc. 234-2) ("*SUMF*"). Respondent failed to controvert these facts, as required by the local rules.[1] Accordingly, all of the facts set forth in the *SUMF* are "deemed admitted, for purposes of the motion[.]" M.D. La. LR 56(b).

---

[1] Specifically, Middle District of Louisiana Local Civil Rule 56(b) provides:

> **Opposition to Summary Judgment.** Each copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which the opponent contends there exists a genuine issue to be tried. *All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this Rule.*

(emphasis added).

## A. State Capital Trial Proceedings

Petitioner was charged in state court in Baton Rouge, Louisiana with two counts of first degree murder for the November 19, 1995 shooting deaths of Stephanie Guzzardo and David Breakwell. (*SUMF* ¶ 1.) At the time of his first-degree murder trial on these charges, which began on June 16, 1997, Petitioner was represented by Baton Rouge attorneys Greg Rome and Joseph William "Billy" Hecker, who is now deceased, both of whom were appointed as counsel for Petitioner on January 7, 1997, less than six months prior to trial. (*SUMF* ¶ 1.) Jury selection began on June 16, 1997, and eight days later, on June 24, 1997, Petitioner was convicted on both counts. (*SUMF* ¶ 1.)

The next day, June 25th, the same jury returned death sentences on both counts following a defense penalty phase presentation that lasted less than four hours, including cross-examination by the prosecution. (*SUMF* ¶ 2.) Hecker, who was solely responsible for the penalty phase of the trial, did not conduct a mitigation investigation, nor did he employ someone to do so. (*SUMF* ¶ 2.) The Louisiana Supreme Court affirmed the convictions and sentences. (*SUMF* ¶ 2 (citing *State v. Wessinger*, 98-1234 (La. 5/28/99); 736 So.2d 162).

## B. State Post-Conviction Proceedings

On January 3, 2001, the Louisiana Supreme Court formally appointed Soren Gisleson, a first-year associate at the New Orleans, Louisiana law firm of Herman, Herman, Katz & Cotlar, LLP, to represent Petitioner in state post-conviction proceedings following the firm's agreement to accept pro bono representation of a death row inmate. (*SUMF* ¶ 3.)

Prior to formal appointment, on December 27, 2000, Gisleson filed a three-page shell petition in an effort to stop the one-year clock from running. (*SUMF* ¶ 4.) "At a status conference

in February of 2001, the state post-conviction trial court gave Gisleson 60 days, until April 10, 2001, to file a more complete, amended petition." (*SUMF* ¶ 4.)

On March 12, 2001, Gisleson filed a motion with the state post-conviction trial court requesting funding for investigative assistance to establish the factual basis for claims of ineffective assistance of counsel at the guilt and penalty phases of Wessinger's trial. (*SUMF* ¶ 5.) The motion included general allegations that trial counsel's preparation of the penalty phase was "woefully inadequate" and "there is every reason to believe that such investigation would produce information that should have bene [sic] presented to Mr. Wessinger's jury." (*SUMF* ¶ 5.)

On April 5, 2001, Gisleson filed a motion in the state post-conviction trial court to continue the April 10, 2001, filing deadline for the state post-conviction petition. (*SUMF* ¶ 6.)

On April 10, 2001, the state trial court extended the deadline an additional 60 days, until June 11, 2001, to file an amended state post-conviction petition. (*SUMF* ¶ 7.) Also, on April 10, 2001, the state trial court ordered Gisleson to petition the Louisiana Indigent Defender and Assistance Board (LIDAB), which the court found to be responsible for funding the post-conviction investigation, to determine if the board would actually fund the investigation and report back to the court. (*SUMF* ¶ 7.) Further, the state trial court set an April 24, 2001 hearing date if there were "any problems with getting funding," at which time the court told Gisleson, "if you have any evidence to present, you better have it that day because it won't be continued to another day. That issue will be resolved that day." (*SUMF* ¶ 7.)

On April 16, 2001, Gisleson notified the state trial court that the Louisiana Indigent Defense Assistance Board (LIDAB), the Capital Post-Conviction Project of Louisiana (CPCPL) and the Baton Rouge Indigent Defender Board, all of whom he reached out to for funding and assistance, took the position that they were not responsible for providing funding for investigation

in state post-conviction for Petitioner. (*SUMF* ¶ 8.) The Director of the local Baton Rouge Indigent Defense Board stated that if the state trial court ordered him to pay for investigative and expert expenses for Wessinger, as the state trial court did in *State ex rel. Jimmy Ray Williams v. Burl Cain*, No. 7-94-871, 19th Judicial District Court, "nothing would be provided, as his office currently has no funds available." (*SUMF* ¶ 8.)

By letter to the state trial court dated April 11, 2001, the director of LIDAB Edward R. Greenlee wrote that "[t]he only funds available in the LIDAB budget for Capital Post-Conviction cases have been fully dedicated to the Capital Post Conviction Project of Louisiana (CPCPL). Unfortunately, the available funds are insufficient to enable CPCPL to assist financially in any cases where the client is already represented. The funding of the backlog of cases is the responsibility of the local Indigent Defender Boards." (*SUMF* ¶ 9.) Mr. Greenlee also referenced his testimony to this effect in the case of Jimmy Ray Williams. (*SUMF* ¶ 9.)

On April 23, 2001, Gisleson filed a motion to continue the April 24th hearing for three weeks because Petitioner "has been patently unable to secure the testimony of necessary experts or provide experts with the time to review 'bare-boned' facts and evidence of the case" to determine what expert services are needed, the extent of the services needed, and the cost. (*SUMF* ¶ 10.) Gisleson further stated that "Petitioner has been unable to arrange for a single expert to appear or for any affidavits," and, at the time the April 24, 2001, hearing date was set, "undersigned counsel did not appreciate that this much time and difficulty would be encountered." (*SUMF* ¶ 10.)

The state trial court went forward with the April 24, 2001 hearing. (*SUMF* ¶ 11.) The state court denied the request for funding for experts. (*SUMF* ¶ 11.)

On June 5, 2001, a week before the June 11th state post-conviction petition filing deadline, Gisleson filed a motion to withdraw with the Louisiana Supreme Court, seeking to be relieved of

the representation based on his admitted inability "to provide competent representation in post-conviction" proceedings in state court "under the time and resource constraints" with which he was presented. (*SUMF* ¶ 12.) This motion was denied by the Louisiana Supreme Court, with one justice concurring and suggesting that counsel for Petitioner "may seek assistance of counsel of LADAB if he deems that advisable." (*SUMF* ¶ 12.)

Gisleson filed an amended state post-conviction petition by the June 11, 2001, deadline set by the state trial court. (*SUMF* ¶ 13.)

Following the State's filing of its response in February of 2003, Gisleson filed a second amended petition in August of 2003. (*SUMF* ¶ 14.)

At a September 3, 2003 status conference, the state trial court denied relief, dismissing all claims in the first amended post-conviction petition as procedurally barred due to lack of factual support, and denying relief on the merits on the ineffective assistance of trial counsel claims in the second amended post-conviction petition. (*SUMF* ¶ 15.) The Louisiana Supreme Court affirmed. (*SUMF* ¶ 15 (citing *State ex rel. Wessinger v. Cain*, 2003-3097 (La. 9/3/04); 882 So. 2d 605).)

### C. Federal Habeas Proceedings

#### 1. Pre-Decision Happenings

On September 4, 2004, a day after the adverse state post-conviction ruling by the Louisiana Supreme Court, Gisleson filed a habeas petition in federal district court raising the same claims that he raised in the state courts. (*SUMF* ¶ 16.) This habeas petition included the penalty phase ineffective assistance of trial counsel claim that was presented to the state postconviction courts and that was based on trial counsel's penalty phase failures as reflected in the transcript of the penalty phase of the trial. (*SUMF* ¶ 16.)

After additional counsel was appointed by Judge Brady, Petitioner, through new counsel, filed an Amended Petition for Writ of Habeas Corpus. (*SUMF* ¶ 17.) The amended petition included a claim, Claim XI-C, that trial counsel was ineffective at the penalty phase of Wessinger's first degree murder trial. (*SUMF* ¶ 17.) The claim alleged that trial counsel failed to secure the services of a mitigation specialist and did not conduct a social history investigation of Petitioner, and instead called witnesses counsel met for the first time in the hallway outside the courtroom and presented damaging testimony through counsel's own unprepared expert witnesses. (*SUMF* ¶ 17.)

Claim XI-C also alleged what trial counsel would have discovered had he conducted a proper mitigation investigation, including powerful mitigation evidence regarding Petitioner's family history of mental illness, alcohol abuse and violence and Petitioner's own mental illness, none of which ever had been presented to the state courts. (*SUMF* ¶ 18 (citing Doc. 120 at 232–56.).) This mitigation included that Petitioner's maternal and paternal families have a significant history of seizure disorders, mental retardation, cerebral palsy and other neurologic and cognitive impairments and alcohol abuse; that Petitioner struggled with neurologic and psychiatric symptoms that adversely affected his ability to function over the course of his life; that Petitioner experienced repeated and severe seizures as a child and was medicated with Phenobarbital; that Petitioner, who faced great difficulty in school and fell behind his peers academically, suffered ridicule, humiliation and physical abuse by his father, who singled him out for cruel treatment; that neuropsychological testing of Petitioner shows signs of significant psychomotor impairment, right hemisphere abnormality, deficits associated with fetal alcohol spectrum disorder and other signs of cerebral dysfunction and moderate brain impairment; that Petitioner was raised by parents whose world view, handed down to their children, was shaped by the circumstance that they grew

up on Louisiana plantations that remained little changed since slavery, and who constantly struggled to make ends meet in raising their children in poverty in segregated Baton Rouge; that Petitioner was raised by a father, an alcoholic, who was a violent man who hit, pushed, and threatened his wife when he was drunk. (*SUMF* ¶ 18 (citing Doc. 120 at 232–56.).)

In its Memorandum in Opposition to Petition for Writ of Habeas Corpus, respondent alleged that in this penalty phase ineffective assistance of counsel claim "[P]etitioner goes way beyond what he presented to the state courts for consideration of this claim below. As such, he should not be permitted to alter the habeas record by including items and discussions that he did not present to the state courts." (*SUMF* ¶ 19 (citing Doc. 129 at 151).)

### 2. Judge Brady's Decisions

The district court initially denied habeas relief on all claims. (*SUMF* ¶ 20 (citing Doc. 135 at 1.) However, following the Supreme Court's decision in *Martinez v. Ryan*, 566 U.S. 1, 132 Sc. 1309 (2012), Petitioner filed a timely motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure to alter or amend the judgment denying the petition with respect to Claim XI-C. (*SUMF* ¶ 20.) While acknowledging that the penalty phase ineffectiveness Claim XI-C was not fairly presented to the Louisiana state courts and, thus, was procedurally defaulted, Petitioner argued that this was no barrier to review by the federal courts because state post-conviction counsel Gisleson had failed to provide effective representation in state post-conviction proceedings, thereby excusing any procedural default under *Martinez*. (*SUMF* ¶ 20.) Petitioner also argued that the procedural default should be excused because the state refused to provide the requested necessary funding for mitigation and other expert assistance in state post-conviction proceedings, despite post-conviction counsel's request for funding from multiple sources, including the state

postconviction court, such that the state corrective process was ineffective to protect petitioner's rights, citing to 28 U.S.C. § 2254(b)(1)(B)(ii). (*SUMF* ¶ 20 (citing Doc. 141 at 22-24).)

The district court granted the Rule 59(e) motion, concluding that the evidence alleged in support of the penalty phase ineffectiveness claim was materially and significantly different and stronger than what was presented to the state court. (*SUMF* ¶ 21 (citing Doc. 156 at 3).) As a result, Judge Brady concluded that Claim XI-C had not been fairly presented to the state courts during state post-conviction proceedings and was therefore procedurally barred. (*SUMF* ¶ 21 (citing Doc. 156 at 3-4).) Judge Brady also concluded that petitioner's procedural default would not bar merits review if petitioner could show cause and prejudice as contemplated in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). (*SUMF* ¶ 21 (citing Doc. 156 at 4-6).) In reaching this conclusion, Judge Brady stated the following:

> As for how he will prove cause, Wessinger claims his initial-review counsel, Mr. Gisleson, was ineffective during this proceeding because he failed to properly present the ineffective assistance at trial claim in the state court. Gisleson agrees that his performance was deficient, but only because he repeatedly was denied funds and time to properly investigate these claims. There is case law supporting this ineffectiveness through denial of funds theory. See *Gary v. Hall*, 558 F.3d 1229, 1251-1253 (11th Cir. 2009); *Blake v. Kemp*, 758 F.2d 523 (11th Cir. 1985). The Court finds there are questions of law and fact as to whether this theory applies in this case.

(Doc. 156 at 5.) Judge Brady ordered that the Court would handle both inquiries – initial-review counsel's ineffectiveness and trial counsel's penalty phase ineffectiveness – at one hearing. (*SUMF* ¶ 21 (citing Doc. 156 at 6).)

A federal evidentiary hearing was held before Judge Brady on January 12-13, 2015; and March 18-19, and 23, 2015. (*SUMF* ¶ 22.) Petitioner presented the testimony, along with supporting documentation, of pro bono state post-conviction counsel Soren Gisleson; Louisiana state post-conviction expert Gary Clements, Director of CPCPL; Wessinger family members and

friends Joseph Kelly, Troy Wessinger, Leroy Helire, Jr., John Williams, Demetric Alexander, and Sharon Alexander; neuropsychiatrist Dr. George Woods; mitigation expert Russell Stetler; and capital defense expert Baton Rouge attorney Michele Fournet. (*SUMF* ¶ 22.) Respondent did not present any witnesses. (*SUMF* ¶ 22.)

On July 27, 2015, Judge Brady issued an order granting Petitioner's claim for habeas relief based on Claim XI-C (ineffective assistance of trial counsel at the penalty phase in violation of the Sixth Amendment). (Doc. 216 at 15.) Judge Brady first found:

> Both experts [who testified at the hearing], Mr. Stetler and Mr. Clements, emphasized the importance of conducting a mitigation investigation, either with the aid of a mitigation specialist or by counsel conducting an investigation beyond the trial court record. It is undisputed that Mr. Gisleson conducted no investigation into mitigation evidence and did not hire a mitigation specialist during his time as counsel for Petitioner's post-conviction proceedings. Mr. Gisleson may have preserved the claim of ineffective assistance of trial counsel at the penalty phase simply by asserting it in his various amended petitions, but his failure to conduct mitigation investigation prevented him from providing any support for these claims. This lack of a mitigation investigation to even determine the merit of Petitioner's claim of ineffective assistance of trial counsel at the penalty phase is below the standard for capital post-conviction proceedings. Under the guidance of the Fifth Circuit in *Canales v. Stephens*, 765 F.3d 551, 569 (5th Cir. 2014), this Court finds that Petitioner's state initial-review counsel's performance fell below an "objective standard of reasonableness" by failing to conduct any mitigation investigation, particularly when the underlying claim is one of ineffective assistance of trial counsel at the penalty phase.

(Doc. 216 at 7.) Turning to the issue of whether "the underlying claim [was] a 'substantial claim of ineffective assistance at trial[,]' *Martinez*, 132 S. Ct. at 1320," (Doc. 216 at 7), Judge Brady concluded, "Based on what Mr. Hecker's acknowledged shortcomings in preparing for the penalty phase of Petitioner's trial, this Court finds that the underlying ineffective assistance of counsel at the penalty phase claim has merit and satisfies the 'substantial' element of *Martinez*." (Doc. 216 at 9.) Judge Brady then concluded:

> This Court has determined that IRC was ineffective in pursuing a substantial claim. Therefore, *Martinez* provides the equitable remedy of having the "cause" element under *Coleman* satisfied. The Court next asks whether Petitioner can demonstrate "actual prejudice" as a result of IRC's failure to exhaust the substantial underlying claim. *Coleman* [*v. Thompson*, 501 U.S. 722, 111 S. Ct. 2546, 2565 (1991)]. With regard to the initial review proceeding, it is clear that Mr. Gisleson's ineffectiveness in failing to conduct any mitigation investigation caused actual prejudice to Petitioner's habeas claim of ineffective assistance of trial counsel at the penalty phase.

(Doc. 216 at 9.)

Judge Brady next explained that "[t]he equitable holding of *Martinez* does not decide Petitioner's underlying claim for habeas relief. Instead, in the interest of equity, it allows this federal habeas court to consider a federal habeas claim that would have otherwise been procedurally defaulted." (Doc. 216 at 9.) Judge Brady next analyzed Mr. Heckler's performance and concluded:

> Mr. Hecker's did not conduct a mitigation investigation. He did not provide anything more than a large number of unprepared witnesses at the penalty phase of trial. None of this was done as part of any strategy according to Mr. Hecker. Mr. Hecker's representation of Petitioner at the penalty phase was deficient and fell below the objectively reasonable norms of capital counsel at a penalty phase.

(Doc. 216 at 12.)

Judge Brady then addressed whether "Mr. Hecker's deficient performance at the penalty phase of trial prejudiced Petitioner such that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " (Doc. 216 at 12 (quoting *Strickland v. Washington*, 466 U.S. 668, 692 (1984)).) Judge Brady reviewed all of the witnesses presented at the hearing, almost all of whom had not been "previously contacted or interviewed regarding Petitioner for purposes of mitigation." (Doc. 216 at 14.) Judge Brady concluded:

The question remains, had these witnesses been contacted and had a mitigation investigation been done to reveal these lay and expert opinions, is there a reasonable probability that the result of the sentencing proceeding would have been different? The Court does not consider the question before it lightly. After considering the mitigation evidence presented at the evidentiary hearing before us, which was not presented to the sentencing jury, this Court finds there is a reasonable probability that the evidence of Petitioner's brain damage and other impairments, as well as his personal and family history would have swayed at least one juror to choose a life sentence.

(Doc. 216 at 14–15.)   Judge Brady thus granted "Petitioner's claim for habeas relief based on

ineffective assistance of trial counsel at the penalty phase in violation of the Sixth Amendment."

(Doc. 216 at 14.)

Critically, Judge Brady issued the following Judgment:

For reasons assigned in the record,
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the petitioner for writ of habeas corpus is hereby GRANTED as to Claim XI-C (Penalty Phase Ineffective Assistance of Counsel) of the Amended Petition for Writ of Habeas Corpus (doc. 120), the death sentences are vacated and this matter is remanded to the 19th Judicial District Court for a new penalty phase trial not inconsistent with this Court's ruling. ***All other claims are denied.***

(Doc. 217 at 1 (emphasis added).)

### 3. The Fifth Circuit's Decision

The Fifth Circuit reversed. (Doc. 230 at 3.)   The appellate court provided an extensive

recitation of the facts; relevant here, the circuit court described Soren Gisleon's post-conviction

work in-part as follows:

Gisleson moved for "funding for any and all types of investigation." While the motion for funds was pending, he asked the Louisiana Indigent Defense Assistance Board ("LIDAB"), the Louisiana Crisis Assistance Center ("LCAC"), the East Baton Rouge Indigent Defense Board, and the Capital Post-Conviction Project of Louisiana ("CPCPL") for funding or assistance, but the organizations all denied his requests. CPCPL referred him to mitigation specialist Deanne Sandel. Sandel provided Gisleson with an affidavit regarding the time, ethical obligations,

investigation, and assistance needed to represent Wessinger in the state post-conviction proceedings.

> The state post-conviction court denied his motion for funds. Gisleson moved to continue the deadline to file the amended petition. Although the state post-conviction court initially denied the motion, it eventually gave him a brief continuance.

(Doc. 230 at 4–5.)

Turning to the analysis, the Fifth Circuit stated, "The State raises several arguments on appeal. Because we conclude that the district court erroneously determined that Gisleson's initial-review representation of Wessinger was deficient, we address only that argument." (Doc. 230 at 7.) The appellate court explained:

> The district court found that Gisleson's "performance fell below an 'objective standard of reasonableness' by failing to conduct any mitigation investigation, particularly when the underlying claim is one of ineffective assistance of trial counsel at the penalty phase." The district court determined that Gisleson was deficient because he did not "hire a mitigation specialist to do a social history or mitigation investigation," "conduct [his] own mitigation investigation," or "consult any mental health experts or any other experts." The district court relied on the testimony of two experts, who testified that Gisleson "did not perform the thorough mitigation investigation required under professional norms" and that a death penalty team should "include[] two attorneys, . . . a mitigation specialist, and a paralegal."

> We hold that the district court erred. "[C]onsidering all the circumstances" and "evaluat[ing] the conduct from [Gisleson's] perspective at the time," as we must, we conclude that Gisleson's performance in raising and developing Wessinger's claim for ineffective assistance of trial counsel at the penalty phase was not deficient. *Strickland*, 466 U.S. at 688–89.

(Doc. 230 at 8–9.) The Fifth Circuit concluded:

> The district court's decision instead focused on Gisleson's "failure to conduct mitigation investigation [which] prevented him from providing any support" for Wessinger's claim for ineffective assistance of counsel at the penalty phase. We disagree. The state post-conviction court denied Gisleson's motion for funds "for any and all types of investigation." Gisleson also repeatedly reached out to various organizations for funding or assistance, and he was repeatedly denied. Gisleson did

not hire a mitigation specialist or consult experts because the state post-conviction court did not grant his motion for funds, not because of any deficiency on Gisleson's part. He was thorough in his attempt to secure funds or other assistance, and ultimately he managed to secure $5,000 from his firm, which he paid to Recer for her help investigating and filing the second amended petition.

Wessinger previously acknowledged to the district court that he did not develop evidentiary support for his claim during state post-conviction proceedings because of decisions *by the state post-conviction court*, not because Gisleson was deficient. . . .

Even after the evidentiary hearing, Wessinger argued that Gisleson did not develop the claim in state court "because of lack of money, lack of expertise, lack of help, lack of experience and lack of time." Wessinger has not demonstrated that a more experienced attorney would have obtained funding, assistance, or additional time from the state post-conviction court. That Wessinger did not present evidentiary support of his claim to the state postconviction court is not attributable to Gisleson's inexperience or any particular error, but rather to the state post-conviction court's decisions to deny a hearing, discovery, and funds—decisions which are entitled to deference and which Wessinger does not challenge before this court.

Gisleson's performance in raising and developing Wessinger's claim for ineffective assistance of trial counsel at the penalty phase was not deficient. Furthermore, Wessinger failed to satisfy the prejudice inquiry, as he cannot show Gisleson's particular unreasonable errors, rather than decisions by the state post-conviction court, "actually had an adverse effect on the defense." *Strickland*, 466 U.S. at 693. The district court therefore erred in concluding that Wessinger's initial-review counsel was ineffective.

(Doc. 230 at 9–11.)

## II. Summary Judgment Standard

"As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000) (citing Rule 11 of the Rules Governing § 2254 Cases; Fed. R. Civ. P. 81(a)(2)). Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is

no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .   [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S. Ct. 1348 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

"[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure [(that is, beyond doubt)] all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986); *peradventure*, MERRIAM-WEBSTER'S DICTIONARY (2019), available at https://www.merriam-webster.com/dictionary/peradventure.   Phrased another way, "[w]here the summary judgment movant bears the burden of proof at trial, the summary judgment evidence must affirmatively establish the movant's entitlement to prevail as a matter of law." *Universal Sav. Ass'n v. McConnell*, 14 F.3d 52 (5th Cir. 1993) (unreported).

### III.    Discussion

#### A.  Introduction

Preliminarily, the Court finds that an overview of the exhaustion issues underlying this motion will be helpful.  As Judge Brady found in his *Ruling and Order* on Petitioner's Rule 59(e) motion:

> When a habeas petitioner presents "material additional evidentiary support" to the federal court that was not presented to the state court, he has not exhausted his state remedies. *Graham v. Johnson*, 94 F.3d 958, 968 (5th Cir. 1996). When a claim is "significantly different and stronger" than presented to the state court, it is deemed not exhausted. *Brown v. Estelle*, 701 F.2d 494 (5th Cir. 1983); *see also Kunkle v. Dretke*, 352 F.3d 980 (5th Cir. 2003) (addition of psychological report and mother's affidavit detailing family history of mental illness along with concrete instances of abuse of petition presents "significant evidentiary support" such that claim was not exhausted). . . .

> As claim XI-C is procedurally barred, Wessinger is not allowed to bring it unless he can show cause and prejudice for his failure to exhaust it at the state court level. To show cause, Wessinger points to a recent Supreme Court case, *Martinez v. Ryan*, released on March 20, 2012. 132 S. Ct. 1309 (2012). In *Martinez*, the Supreme Court held:

>> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

> *Id*. at 1320. In so holding, the Supreme Court expressly provided a narrow exception to the general rule expressed in *Coleman v. Thompson*, 501 U.S. 722, 754-55 (1991) that the negligence of an attorney in a post-conviction proceeding cannot serve as cause for his failure to exhaust.

(Doc. 156 at 3–4.)   Judge Brady similarly said in his order granting the petition for writ of habeas corpus as to Claim XI-C (Penalty Phase Ineffective assistance of Counsel):

> This Court's previous ruling determined Petitioner's remaining habeas claim is procedurally defaulted (doc. 156, at 4). The Court reached this determination based

on the *Coleman v. Thompson* rule: "[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred." 501 U.S. 722, 750, 111 S. Ct. 2546, 2565 (1991). In *Coleman*, the Court went on to limit the rule barring federal habeas review of such defaulted claims when the prisoner can demonstrate (1) cause for the default and (2) actual prejudice as a result of the failure to exhaust the claims in state court. *Id*.

Prior to the Supreme Court's ruling in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), the negligence of an attorney in post-conviction proceedings did not suffice as "cause" under *Coleman*. However, *Martinez* served as a significant exception when it held the following:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Id*. at 1320. This Court has already noted the jurisprudential rule in Louisiana that ineffective assistance claims are generally best suited for post-conviction proceedings (doc. 156, at 4, citing *State v. Hamilton*, 699 So.2d 29, 31 (La. 1997)). *Martinez* sets forth two more conditions that must be satisfied in order for the procedurally defaulted claim to be heard by this federal habeas court: (1) IRC was ineffective in the initial-review proceeding and (2) the underlying habeas claim of IAC at penalty phase must be a substantial claim.

(Doc. 216 at 1–2.)

With those standards having been laid out, the Court turns to the instant motion. Petitioner moves for three alternative grounds for relief. In the primary one, Petitioner seeks summary judgment on the following grounds:

> While, as a result of the Fifth Circuit's ruling, cause and prejudice for excusing the procedural default of Wessinger's meritorious ineffectiveness claim can no longer be based on state post-conviction counsel's ineffectiveness, it can and should be based on the repeated failure of the state post-conviction process and policies to protect Wessinger's rights and provide him due process and equal protection as a result of the denial of state post-conviction counsel's repeated efforts, directed to multiple state and state-funded entities and the state post-conviction court, to obtain

16

the necessary funds and assistance to develop ineffectiveness claims in state postconviction.

(Doc. 234 at 3.)  The other two alternative grounds will be discussed below.

### B.  The Mandate Rule Issue

#### 1. Parties' Arguments

##### a.  Petitioner's Original Memorandum (Doc. 234-1)

Petitioner opens by arguing that the law of the case doctrine only applies to questions that were "actually decided, rather than all questions in the case that might have been decided but were not." (Doc. 234-1 at 15 (citation omitted).)  Decisions are implicitly decided if they are fully briefed and "necessary predicates to the court's ability to address the issue or issues specifically discussed[,]" but if a issue was not briefed on appeal, it was not decided. (Doc. 234-1 at 15 (citations omitted).)  Similarly, an issue is not waived if the appellee did not fully brief it in support of his affirming the district court judgment.  Moreover, a denial of request for rehearing is not law of the case.  Petitioner also asserts that the mandate rule—which purportedly says a district court "cannot vary [the mandate] or examine it for any other purpose than execution"—is "only controlling as to matters within its compass." (Doc. 234-1 at 16 (citations and quotations omitted).)  The district court can decide matters left open by the mandate.

Here, according to Petitioner, the Fifth Circuit based its conclusion only on the fact that Judge Brady erred in finding that Gisleson was ineffective in state post-conviction proceedings.  Petitioner explains:

> Under the law of the case, Gisleson's ineffectiveness cannot provide cause under *Martinez* for Wessinger's procedural default of his meritorious, but procedurally defaulted claim of penalty phase trial counsel's ineffectiveness. However, the panel did not reverse the district court's rulings that Wessinger's Claim XI-C penalty phase ineffectiveness claim filed in his amended petition properly related back to and amended the original timely habeas petition and was a meritorious claim of violation of Wessinger's Sixth Amendment rights for which habeas relief should

be granted, all district court rulings which were briefed and argued on appeal and which remain intact. Thus, the law of the case doctrine does not prevent this Court from considering in the present motion, which relies upon cause for excusing the procedural default of Wessinger's meritorious Sixth Amendment claim of ineffective assistance of penalty phase trial counsel based upon the inadequacies of the state court process and policies, which was not reached by the district court nor decided by the Fifth Circuit.

(Doc. 234-1 at 16–17.) The same reasoning applies to the mandate rule; the fact that the Fifth Circuit simply "reversed" Judge Brady and did not say "reversed and remanded" does not warrant a different result. Petitioner concludes:

The Fifth Circuit panel reversed Judge Brady's ruling on the limited issue of cause under *Martinez*, and on no other basis. The appellate court's judgment of reversal did not order the dismissal the habeas petition or otherwise rule on the merits of the habeas petition so as to bar further proceedings in this Court. Thus, authority is now vested in this Court to consider the basis for excusing the procedural default of petitioner's ineffectiveness claim set forth in this motion and not previously addressed by this Court or the Fifth Circuit.

(Doc. 234-1 at 18.)

### b. Respondent's Opposition (Doc. 244)

Respondent begins with a lengthy recitation of the procedural history. Respondent argues that, after Judge Brady's Rule 59(e) ruling, "[b]oth parties focused on the applicability of the *Martinez* case, and neither addressed any alternative theories for proving cause and prejudice, because Judge Brady's ruling was limited to the *Martinez* claim and necessarily excluded any other proffered basis for establishing cause and prejudice." (Doc. 242-1 at 4.) Respondent then highlights that Petitioner purportedly said in briefing before the district court that his claim was "ineffective assistance of his initial review counsel at the state level, as recognized by the Supreme Court in *Martinez*[.]" (Doc. 242-1 at 5 (quoting Doc. 156 at 4–5).) Respondent then reviews the Fifth Circuit decision, emphasizing that Petitioner "failed to establish cause (initial-review

counsel's deficient performance) or prejudice (counsel's errors had an adverse effect on the defense)." (Doc. 242-1 at 6.)  After all of this, Respondent argues:

> Based on this finding, the Fifth Circuit has already determined the issue related to cause and prejudice which petitioner attempts to re-litigate in the instant motions. Further, the net result of the Fifth Circuit's ruling was one of two possible results. First, the district court was incorrect when it vacated its initial ruling on the merits, in which case, the original judgment on the merits remains in effect. Alternatively, Judge Brady's ruling that this claim is procedurally barred is still in effect, and petitioner has failed to establish cause and prejudice to overcome that procedural bar and the jurisprudence related to the procedural bar.

(Doc. 242-1 at 6.)

Respondent argues that Petitioner "ignores" Judge Brady's ruling, "which established the only basis available to petitioner by which the federal courts could consider his procedurally defaulted claim," and "misinterprets" the Fifth Circuit's decision, which essentially reinstates Judge Brady's prior rulings finding Petitioner's claims procedurally barred. (Doc. 244 at 8.) Respondent emphasizes that, though Judge Brady found questions of fact and law on the issue of "ineffectiveness through denial of funds," petitioner did not brief any of these issues. (Doc. 244 at 9.)  Further, the Fifth Circuit's ruling precludes any second review by this Court.  Respondent asserts, "Petitioner should not be allowed to argue a basis for cause and prejudice that he has either failed to raise previously or has waived by abandonment." (Doc. 244 at 13.)  Petitioner never established this as a viable ground for overcoming the procedural bar, but, to the extent he raised it, he did "not pursue it" but rather "relied on the *Martinez* method until that failed." (Doc. 244 at 13.)

According to Respondent, Petitioner argues that the "procedural default of Claim XI-C can be excused because the state refused to provide the requested necessary funding for mitigation and other expert assistance . . . such that the state corrective process was ineffective to protect petitioner's rights[,]" but Respondent attacks this argument (Doc. 244 at 14.)  First, according to

Respondent, Petitioner failed to demonstrate how state corrective process could satisfy the cause and prejudice requirements at his first evidentiary hearing. Second, Judge Brady's ruling demonstrates that he was aware of Petitioner's alternative theory, yet Petitioner did not discuss the issue in pre-hearing or post-hearing briefing; he instead relied on the *Martinez* claim. Having failed to brief the issue, the Court should deem it waived or find that Judge Brady "implicit[ly] reject[ed]" it. (Doc. 244 at 15.) Respondent then distinguishes Petitioner's cases which allegedly find that a state's systematic failure to provide relief can excuse an unexhausted claim.

### c. Petitioner's Reply (Doc. 245)

Petitioner argues that Judge Brady's rulings on the Rule 59(e) motion and in which he granted habeas relief neither "referenced, much less rejected, the failure of the state corrective process as a basis for cause and prejudice." (Doc. 245 at 2.) Further, Judge Brady's opinion granting habeas relief specifically mentioned the fact that state post-conviction counsel sought funding and assistance, "all to no avail." (Doc. 245 at 2 (citing Doc. 216 at 3–4).) Judge Brady's decisions do not constitute a "decision, implicit or otherwise, that the extraordinary circumstances and policies in existence in Louisiana at the time – that denied state post-conviction counsel the necessary resources and tools to represent Wessinger effectively – were faultless or that the state corrective process was effective to protect Wessinger's rights." (Doc. 245 at 2.) Further, "res judicata does not apply in federal habeas corpus[.]" (Doc. 245 at 2.) Petitioner concludes, "The State of Louisiana should not be allowed, through its own processes and policies, to make it impossible for state post-conviction counsel to do his job and then hold petitioner accountable with his life for state post-conviction counsel's unavoidable failures." (Doc. 245 at 3.)

## 2. Applicable Law

### a. Law of the Case Doctrine

" 'The law of the case doctrine, as formulated in this circuit, generally precludes reexamination of issues of law or fact decided on appeal, either by the district court on remand or by the appellate court itself on a subsequent appeal.' " *Alpha/Omega Ins. Servs., Inc. v. Prudential Ins. Co. of Am.*, 272 F.3d 276, 279 (5th Cir. 2001) (quoting *Todd Shipyards Corp. v. Auto Transp.*, 763 F.2d 745, 750 (5th Cir. 1985)). "As [the Fifth Circuit has] noted, it is premised 'on the salutary and sound public policy that litigation should come to an end.' " *Id.* (quoting *Terrell v. Household Goods Carriers' Bureau*, 494 F.2d 16, 19 (5th Cir. 1974) (quoting *White v. Murtha*, 377 F.2d 428, 431 (5th Cir. 1967))).

"The doctrine's reach does have its limits." *Id.* "For example, unlike res judicata, the law of the case doctrine applies only to issues that were actually decided, rather than all questions in the case that might have been decided, but were not." *Id.* (citing *Morrow v. Dillard*, 580 F.2d 1284, 1290 (5th Cir. 1978)). "But, the issues need not have been explicitly decided; the doctrine also applies to those issues decided by 'necessary implication.' " *Id.* (quoting *In re Felt*, 255 F.3d 220, 225 (5th Cir. 2001)). "In other words, even when issues have not been expressly addressed in a prior decision, if those matters were 'fully briefed to the appellate court and . . . necessary predicates to the [court's] ability to address the issue or issues specifically discussed, [those issues] are deemed to have been decided tacitly or implicitly, and their disposition is law of the case.' " *Id.* (quoting *In re Felt*, 255 F.3d at 225).

Additionally, the Fifth Circuit's "denial of a motion for panel rehearing does not amount to a decision on the merits." *Alpha/Omega Ins. Servs.*, 272 F.3d at 281 (citing *Fernandez v. Chardon*, 681 F.2d 42, 51 n.7 (1st Cir. 1982) ("[T]he denial of a petition for rehearing can have

no greater precedential effect than the denial of a petition for certiorari, which is to say none."), *aff'd*, 462 U.S. 650, 103 S. Ct. 2611, 77 L. Ed. 2d 74 (1983); *Crider v. Keohane*, 526 F. Supp. 727, 728 (W.D. Ok. 1981) ("[T]he failure of the Petition for Rehearing does not imply any judgment on the merits of this issue.")).

"The law of the case doctrine, however, is an exercise of judicial discretion which 'merely expresses the practice of courts generally to refuse to reopen what has been decided,' not a limit on judicial power." *United States v. Lee*, 358 F.3d 315, 320 (5th Cir. 2004) (quoting *Messinger v. Anderson*, 225 U.S. 436, 444, 32 S. Ct. 739, 56 L.Ed. 1152 (1912); *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002) ("*Matthews II*")). "The doctrine, therefore, 'is not "inviolate," ' but rather permits an appellate court or a district court on remand to deviate from a ruling made by a court of appeal in an earlier stage of the same case in certain exceptional circumstances." *Id.* (quoting *Matthews II*, 312 F.3d at 657 (citing *United States v. Becerra*, 155 F.3d 740, 752 (5th Cir. 1998))). "Three exceptions to the law of the case doctrine permit a court to depart from a ruling made in a prior appeal in the same case: '(1) The evidence at a subsequent trial is substantially different; (2) there has been an intervening change of law by a controlling authority; and (3) the earlier decision is clearly erroneous and would work a manifest injustice.' " *Id.* at 320 n.3 (quoting *Matthews II*, 312 F.3d at 657 (quoting *Becerra*, 155 F.3d at 752-53)).

### b. The Mandate Rule

"These principles apply equally to the mandate rule, 'which is but a specific application of the general doctrine of law of the case.' " *Lee*, 358 F.3d at 321 (quoting *Matthews II,* 312 F.3d at 657). "Absent exceptional circumstances, the mandate rule compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." *Id.* (citing *United States v. Bell,* 988 F.2d 247, 251 (1st Cir. 1993)).

"Moreover, the rule bars litigation of issues decided by the district court but foregone on appeal or otherwise waived, for example because they were not raised in the district court." *Id.* (citing *Bell*, 988 F.2d at 250). "Accordingly, a lower court on remand ' "must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of that court." ' " *Id.* (quoting *Matthews II,* 312 F.3d at 657 (quoting *Becerra,* 155 F.3d at 753) (internal alterations and quotation marks omitted))). "In implementing the mandate, the district court must 'tak[e] into account the appellate court's opinion and the circumstances it embraces.' " *Id.* (quoting *Sobley v. Southern Natural Gas Co.,* 302 F.3d 325, 333 (5th Cir. 2002) (citing *Tollett v. City of Kemah,* 285 F.3d 357, 364 (5th Cir. 2002) (internal citation omitted))). To determine whether this Court can, on remand, address the issues currently before it, "this court must determine the scope of [the Fifth Circuit] mandate in [its] opinion" reversing Judge Brady's granting of the petition for writ of habeas corpus. *Lee*, 358 F.3d at 321 (citing *Matthews II,* 312 F.3d at 658; *Moore v. Anderson,* 222 F.3d 280, 283 (7th Cir. 2000) (stating that a "careful reading of the reviewing court's opinion" is required "[t]o determine what issues were actually decided by the mandate")).

Critically, "the [mandate] rule bars litigation of issues decided by the district court but foregone on appeal or otherwise waived, for example because they were not raised in the district court." *Lee*, 358 F.3d at 321 (citing *Bell*, 988 F.2d at 250). "Accordingly, a district court cannot 'reconsider its own rulings made before appeal and not raised on appeal.' " *United States v. Bazemore*, 839 F.3d 379, 385 (5th Cir. 2016) (per curiam) (quoting 18B Charles Alan Wright et al., *Federal Practice and Procedure* § 4478.3 (2d ed. 2016)). That is, "[o]n remand, the only issues properly before the district court were those that arose from the remand." *United States v. Griffith*, 522 F.3d 607, 610 (5th Cir. 2008) (citing *Lee*, 358 F.3d at 323). " ' All other issues not arising out of this court's ruling and not raised in the appeals court, *which could have been brought*

*in the original appeal*, are not proper for reconsideration by the district court below.' " *Id.* (quoting *Lee*, 358 F.3d at 323 (emphasis in *Lee*)).

Numerous cases illustrate how the mandate rule applies. For instance, in *Bell*, defendant was sentenced as an armed career criminal. *Bell*, 988 F.2d at 249. At the sentencing, defendant made no objection to the fact that he had been convicted "of a half-dozen violent crimes listed in the PSI Report," and, indeed, statements by defendant and defense counsel ratified the accuracy of the PSI. *Id.* Defendant was sentenced in excess of 30 years, and he appealed. *Id.* The First Circuit reversed, finding that "where the offense of conviction is the offense of being a convicted felon in knowing possession of a firearm, the conviction is not for a 'crime of violence' and that, therefore, the career offender provision of the federal sentencing guidelines does not apply." *Id.* On remand, defendant challenged for the first time his prior convictions and his status under the Armed Career Criminal Act ("ACCA"). *Id.* The district court ruled the objection untimely, and defendant again appealed. *Id.* at 249-50.

Looking at the mandate rule, the Second Circuit affirmed, explaining:

It is readily evident, therefore, that neither the letter nor the spirit of our mandate is consistent with the turnaround that Bell proposes today: starting the sentencing pavane from scratch following remand. Rather than obligating the district court to examine the validity of Bell's previous convictions, our mandate, read in the most plausible manner, constrained the district court from considering on remand a collateral challenge that defendant had, from all appearances, deliberately bypassed.

The black letter rule governing this point is that a legal decision made at one stage of a civil or criminal case, unchallenged in a subsequent appeal despite the existence of ample opportunity to do so, becomes the law of the case for future stages of the same litigation, and the aggrieved party is deemed to have forfeited any right to challenge that particular decision at a subsequent date. *See Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.,* 810 F.2d 243, 250 (D.C. Cir. 1987); *see also United States v. Duchi,* 944 F.2d 391, 393 (8th Cir. 1991) (standing for the proposition that arguments in the alternative, like other challenges, must be brought before an appellate court lest an ensuing ruling become the law of the case). Abandoning this prudential principle would threaten the important policy

> considerations underlying the law of the case doctrine, such as "stability in the decisionmaking process, predictability of results, proper working relationships between trial and appellate courts, and judicial economy." *United States v. Rivera-Martinez,* 931 F.2d 148, 151 (1st Cir.), *cert. denied,* 502 U.S. 862, 112 S. Ct. 184, 116 L. Ed. 2d 145 (1991).

*Bell*, 988 F.2d at 250. The Second Circuit concluded:

> The law of the case doctrine dictates that all litigation must sometime come to an end. *See Arizona v. California*, 460 U.S. 605, 619, 103 S. Ct. 1382, 1391, 75 L. Ed. 2d 318 (1983). Here, appellant has provided us with no valid reason to depart from this policy and overturn the district court's refusal to resuscitate an issue previously agreed upon and decided in the case.

*Bell*, 988 F.2d at 252.

*Bell* was cited with approval in *Lee,* where the Fifth Circuit found that a mandate did not "prohibit[] the district court from reconsidering and imposing a discretionary upward departure[.]" *Id.* at 320. The appellate court based this reasoning on the fact that the "district court reconsidered an unappealed sentencing issue-a discretionary upward departure- that could *not* have been raised in the initial appeal." *Id.* at 323 (emphasis in original). Further, the issue was not waived; "the record in this case amply justifies the government's earlier silence quite simply because the enhancement at issue was not appealable in the initial appeal." *Id.* at 324. "[O]ur mandate rule does not require that a party raise unappealable sentencing issues in anticipation of every possible contingency that may make such issues germane at a later stage of the proceedings." *Id.* Lastly, the issue "arose out of the correction of the sentence [ordered by the Fifth Circuit]," *id.* at 320 n.3, which is to say it was "made newly relevant by the court of appeal's decision-whether by the reasoning or the result," *id.* at 326 (alterations, quotations, and citations omitted).

*Griffith* in turn relied on *Lee* to find that the mandate rule barred some, though not all, issues. *Griffith*, 522 F.3d at 610–11. The Fifth Circuit first explained:

> On remand, the only issues properly before the district court were those that arose from the remand. [*Lee,* 358 F.3d at 323]. "All other issues not arising out of this

court's ruling and not raised in the appeals court, *which could have been brought in the original appeal,* are not proper for reconsideration by the district court below." *Id.* It follows that an objection to a sentence must be appealed for the district court, on remand, to have authority to revisit it.

*Id.* at 610. The appellate court next found that several objections "fit squarely within the waiver doctrine announced in *Lee*." *Id.* The circuit court explained:

> Neither defendant has demonstrated why he was unable to appeal his issue in the initial appeal. Each did appeal the leadership enhancements, which we reversed. [(citation omitted)]. It does not follow that because they appealed one aspect of the sentence, they preserved every other objection for review on remand. In fact, because they had already objected in the district court on those very grounds, they had every incentive and opportunity to appeal the sentence on those grounds as well. Because they did not, the arguments are waived.

*Id.* Defendant also "waived the issue of a decrease for his limited participation in the conspiracy, because he did not raise it in" the Fifth Circuit on the first appeal." *Id.* "The issue is deemed waived on this appeal as well, unless 'there was no reason to raise it in the initial appeal.' " *Id.* (quoting *Lee*, 358 F.3d at 324). Here, "[t]here were certainly reasons to raise the issue of a decrease in the initial appeal[,] so "[t]he arguments presented by [those defendants were] waived according to the mandate rule announced in *Lee*." *Id.* at 610-11. However, the mandate rule did not bar two other defendants from requesting decreases; the appellate court explained, "Because neither defendant's prospective conspiracy sentences was germane to the original appeal, wholly because there was nothing related to sentencing to appeal, the mandate rule does not apply." *Id.* at 611.

Lastly, in *United States v. Bagley*, 639 F. App'x 231 (5th Cir. 2016) (per curiam), the Fifth Circuit had "vacated the district court's restitution order and remanded for modification consistent with [its] opinion." *Id.* at 231. "On remand, the district court resentenced [defendant] de novo and imposed a fine in lieu of restitution." *Id.* Relying on *United States v. Marmolejo*, 139 F.3d 528, 531 (5th Cir. 1998) (which was examined closely by the *Lee* court), the Fifth Circuit found that the district court violated the rule of mandate, explaining:

[T]he district court initially decided not to impose a fine due to Bagley's inability to pay. The issue of a fine was not raised on appeal and our prior opinion did not discuss it. While the district court may have thought that restitution was closely related to the issue of a fine, our decision did not open the door for the court to reconsider an issue not raised by the parties or ruled on by this Court on appeal.

*Id.* at 233.

### 3. Application

Though the Court is sympathetic to Petitioner's position, it is bound to apply the mandate rule as interpreted by the Fifth Circuit. Petitioner's motion must thus be denied.

The Court finds that the decision turns on Judge Brady's judgment and the Fifth Circuit opinion. Judge Brady specifically granted the petition for writ of habeas corpus solely "as to Claim XI-C (Penalty Phase Ineffective Assistance of Counsel)" but expressly stated, "***All other claims are denied***." (Doc. 217.) Thus, Judge Brady rejected "[a]ll other claims," including the "ineffectiveness through denial of funds theory" that was raised in the Rule 59 motion but not fully litigated at the hearing. Petitioner did not appeal that part of the judgment despite having the ability to do so. Indeed, Petitioner had every reason to appeal that part of Judge Brady's judgment, as he needed to preserve the issue in the event that the Fifth Circuit reversed the granting of the habeas petition. And the appeal could have been as simple as arguing that Judge Brady was premature to dismiss this alternate ground given the fact that the record had not been developed on the issue.

The Fifth Circuit ultimately did reverse Judge Brady, focusing solely on the conclusion that "the district court erroneously determined that Gisleson's initial-review representation of Wessinger was deficient" (Doc. 230 at 7) and "REVERS[ING] the district court's grant of habeas relief." (Doc. 230 at 11.) Again, the Fifth Circuit did not address the ineffective state corrective process now advanced by Petitioner precisely because it was not raised by him on appeal, despite

compelling reasons to do so. And, further, the letter and spirit of the Fifth Circuit's decision was to reverse solely on the above ground and to leave in place Judge Brady's judgment denying relief for "[a]ll other claims[.]" (Doc. 217.)

Consequently, this Court finds that, under Fifth Circuit case law, it is barred by the mandate rule from considering Petitioner's latest theory. *See Marmolejo*, 139 F.3d at 531 (affirming district court's refusal "to hear new evidence presented on the issue of acceptance of responsibility and obstruction of justice" because "the resentencing court can consider whatever this court directs-no more, no less. All other issues not arising out of this court's ruling and not raised before the appeals court, which could have been brought in the original appeal, are not proper for reconsideration by the district court below."); *United States v. Skelton*, 252 F.3d 1356 (5th Cir. 2001) (unpublished per curiam) (affirming sentence because appellate court was "not persuaded that Skelton could not have raised in his initial appeal the issue of whether affirmance of his conviction on less than all counts required reconsideration of the determination that Skelton's offense substantially jeopardized the soundness of Westheimer Bank."); *United States v. Alvarez*, 575 F. App'x 522, 526 (5th Cir. 2014) (per curiam) ("The district court's interpretation of our remand was correct. Consequently we will not consider Alvarez's objections to his PSR and Guidelines calculations that could have been made at the time of his original sentencing but were not."); *Bagley*, 639 F. App'x at 233 (finding, where Fifth Circuit initially reversed imposition of restitution, that the district court was barred on remand from imposing a fine because, "[w]hile the district court may have thought that restitution was closely related to the issue of a fine, our decision did not open the door for the court to reconsider an issue not raised by the parties or ruled on by this Court on appeal"); *Bazemore*, 839 F.3d at 392 ("Bazemore objected that his proffer agreement precluded the Government from using this information, but the district court expressly overruled that

objection. Bazemore failed to challenge that ruling when he appealed his first sentence. His failure to do so bars him from making this argument now[,]" as "Bazemore had every reason to raise this alleged error when appealing his first sentence."); *see also Bell*, 988 F.2d at 250 ("The black letter rule governing this point is that a legal decision made at one stage of a civil or criminal case, unchallenged in a subsequent appeal despite the existence of ample opportunity to do so, becomes the law of the case for future stages of the same litigation, and the aggrieved party is deemed to have forfeited any right to challenge that particular decision at a subsequent date."); *cf. Lee*, 358 F.3d at 323–26 (finding mandate rule was no bar when, unlike the instant case, "unappealed sentencing issue . . . could *not* have been raised in the initial appeal" and was "made newly relevant by the court of appeal's decision-whether by the reasoning or the result" (emphasis in original)); *General Universal Sys., Inc. v. HAL, Inc*., 500 F.3d 444, 454 (5th Cir. 2007) ("Because GUS failed to brief, and thus waived, any arguments against the Customer Defendants on appeal, the district court's judgment finally disposed of any claims against those defendants. As a result, our remand in the prior opinion [reversing summary judgment and remanding as to single claim against other defendant] did not include any claims against the Customer Defendants. Therefore, we affirm the magistrate judge's grant of summary judgment to the Customer Defendants.").  Petitioner's motion is thus denied.

### C.  Other Grounds for Relief

Petitioner also seeks, as alternatives, a federal evidentiary hearing on the issues of cause and prejudice and for relief under Federal Rule of Civil Procedure 60(b)(6), which relieves a party from a final judgment for "any other reason that justifies relief."  Respondent argues that Petitioner already received one hearing and is not entitled to another.  Further, Respondent asserts that the Rule 60(b)(6) motion should be denied because, *inter alia*, it is untimely.

For the same reasons articulated above, the Court denies Petitioner's alternative grounds for relief. The Court finds that Petitioner is not entitled to a federal evidentiary hearing on cause and prejudice, as, again, this is foreclosed by the mandate rule.

The same result is warranted as to Petitioner's motion under Rule 60(b)(6). Preliminarily, the Court agrees with Respondent that this motion is untimely. "A motion under Rule 60(b)(6) must be made within a reasonable time, unless good cause can be shown for the delay." *Clark v. Davis*, 850 F.3d 770, 780 (5th Cir.), *cert. denied*, 138 S. Ct. 358, 199 L. Ed. 2d 266 (2017) (citations and quotations omitted). "Reasonableness turns on the 'particular facts and circumstances of the case.' " *Id.* (quoting *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 38 F.3d 1404, 1410 (5th Cir. 1994)). The Fifth Circuit "consider[s] 'whether the party opposing the motion has been prejudiced by the delay in seeking relief and . . . whether the moving party had some good reason for his failure to take appropriate action sooner.' " *Id.* (quoting *Lairsey v. Advance Abrasives Co.*, 542 F.2d 928, 930 (5th Cir. 1976) (quoting 11 Wright & Miller, *Federal Practice & Procedure* § 2866, at 228-29)). "[T]imeliness . . . is measured as of the point in time when the moving party has grounds to make [a Rule 60(b)] motion, regardless of the time that has elapsed since the entry of judgment." *Id.* (citing *First RepublicBank Fort Worth v. Norglass, Inc.*, 958 F.2d 117, 120 (5th Cir. 1992)).

Here, the Supreme Court denied the petition for writ of certiorari on March 6, 2018, and Petitioner filed the instant motion on August 30, 2019. This delay is seventeen months. Petitioner has provided no "good reason for his failure to take appropriate action sooner." *Clark*, 850 F.3d at 780. The Court agrees with Respondent that, in this case, seventeen months is not "within a reasonable time." *See Clark*, 850 F.3d at 782 (finding delays of twelve and sixteen months were untimely under Rule 60(b)(6)). As the Fifth Circuit stated in *Clark*:

> This court and others have concluded that periods of delay similar to or shorter than the period at issue here can constitute unreasonable delay under Rule 60(b). [*See, e.g., Tamayo v. Stephens*, 740 F.3d 986, 991 (5th Cir. 2014) (per curiam) (eight months after change in law was untimely); *Trottie v. Stephens*, 581 Fed. Appx. 436, 438 (5th Cir. 2014) (per curiam) (three years from district court denial of petition and over a year from denial of a COA not timely); *Buck v. Thaler*, 452 Fed. Appx. 423, 429-30 (5th Cir. 2011) (per curiam) (over a year after denial of certiorari and no extenuating circumstances not within reasonable time); *cf. Lewis v. Lewis*, 326 Fed. Appx. 420, 420 (9th Cir. 2009) (mem.) (unpublished) (six-month delay without any explanation not reasonable); *Tredway v. Parke*, 79 F.3d 1150, at *1 (7th Cir. 1996) (unpublished) (five-month delay was unreasonable when motion only challenged court's prior analysis).] In *Tamayo v. Stephens*, [740 F.3d 986, 991 (5th Cir. 2014) we affirmed the district court's judgment, which held that a Rule 60(b) motion, filed nearly eight months after the pertinent change in decisional law, was untimely. [*Tamayo*, 740 F.3d 986, 991 (5th Cir. 2014).] In *Pruett v. Stephens*, the petitioner waited more than nineteen months after *Trevino* was decided to file his Rule 60(b) motion. [*Pruett*, 608 Fed. Appx. at 186.] We concluded that the district court did not abuse its discretion in holding the motion was not filed within a reasonable time. [*Id.*]

*Clark*, 850 F.3d at 782 & nn.63–66. For the same reasons, the Court finds that Petitioner's motion for relief under Rule 60(b)(6) is untimely.

Nevertheless, even putting that aside, the Court finds that, given the above findings on the mandate rule, relief under Rule 60(b)(6) is not warranted. On this additional ground, Petitioner's motion is denied.

## IV.    Conclusion

Accordingly,

**IT IS ORDERED** that the *Petitioner's Motion for Summary Judgment, or, in the Alternative, for an Evidentiary Hearing on Cause and Prejudice, or, in the Alternative, for Relief from Judgment* (Doc. 234) filed by Petitioner Todd Kelvin Wessinger is **DENIED.**

Signed in Baton Rouge, Louisiana, on <u>December 19, 2019</u>.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDÊÊ DISTRICT OF LOUISIANA**